**SANJIV N. SINGH, APLC**
Sanjiv N. Singh (State Bar No. 193525)
ssingh@sanjivnsingh.com
1700 South El Camino Real, Suite 503
San Mateo, CA 94402
Telephone: (650) 389-2255

**BURNS CHAREST LLP**
Darren P. Nicholson (*pro hac vice* to be filed)
dnicholson@burnscharest.com
Hannah M. Crowe (*pro hac vice* to be filed)
hcrowe@burnscharest.com
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANA MARIA MARCELA TAVANTZIS, as an individual, and as Legal Guardian of JESUS PLASENCIA, an incapacitated person,<br><br>Plaintiffs,<br><br>vs.<br><br>AMERICAN AIRLINES, INC.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMPLAINT

1. Plaintiffs, Ana Maria Marcela Tavantzis, as an individual, and as Durable Power of Attorney of Jesus Alfredo Plasencia, an Incapacitated Person ("Plaintiffs"), by their undersigned counsel, bring their Complaint against Defendant American Airlines, Inc. ("Defendant") and allege as follows:

## INTRODUCTION

2. This civil action arises out of personal injuries that Plaintiff Jesus Plasencia ("Plasencia") suffered from an accident that occurred while he was a passenger aboard an international flight operated by American Airlines from Miami, Florida to Madrid, Spain.

3. Shortly after boarding the flight and while the airplane was still at the gate, Plasencia briefly lost motor-control and the ability to speak, both signs of a Transient Ischemic Attack (TIA) or symptoms of stroke. TIAs, strokes, or any symptoms concerning for either condition are well recognized in the medical community as constituting a serious neurological emergency that requires immediate medical intervention. As set forth in further detail below, these conditions are among the standard medical emergencies for which commercial airline crew and staff are required to follow set protocols and seek the assistance of qualified first responders or health care providers.

4. Plasencia's wife and traveling companion, Plaintiff Ana Maria Marcela Tavantzis ("Tavantzis"), observed Plasencia's symptoms, became very concerned, and alerted American Airlines personnel (including a flight attendant and the pilot) about what happened. Based on her lay knowledge from stroke awareness campaigns and common sense, she explicitly expressed concerns to American Airlines personnel that she believed Plasencia may have "suffered a stroke."

5. Rather than follow established American Airlines protocols and contact either the available medical consult line for guidance or medical personnel available on-site and/or on the flight, the pilot dismissed Tavantzis's concerns, joked with Plasencia, and cleared him for take-off.

6. With the pilot's misguided reassurance, Plasencia and Tavantzis remained on the flight and medical professionals were not consulted.

7. Following this clearly erroneous and reckless decision by the pilot and flight crew, and while flying over the Atlantic Ocean, Plasencia suffered a severe, life-altering stroke.

8. After many hours, Plasencia arrived in Spain and was transported by ambulance to the nearest hospital, where he remained in critical condition for more than three weeks before returning to the United States via air ambulance.

9. Had American Airlines personnel simply followed established airline protocols, medical professionals would have been consulted, a serious neurological emergency would have been identified, and Plasencia would have been transported to any numbers of hospitals in Miami for inpatient observation and treatment. Critically, this would have allowed for the administration of a tissue plasminogen activator ("tPA"), clot dissolving medication that significantly improves the outcomes for stroke victims <u>when timely administered</u>, and the performance of a mechanical thrombectomy.

10. Today—nearly two years after the flight—Plasencia can neither speak, write, nor communicate effectively, much less walk, feed, bathe, clothe, or toilet without assistance. Plasencia's previous hobbies, including cooking, metal sculpting, kayaking, and biking, are all beyond his reach.

11. Plasencia depends entirely on daily, significant, around-the-clock, in-home care and intensive rehabilitation.

**PARTIES**

12. Plaintiffs Ana Maria Marcela Tavantzis and Jesus Plasencia have been, at all relevant times, married and residents of the State of California, residing in the County of Santa Cruz. Tavantzis and Plasencia are citizens of the United States.

13. Ana Maria Marcela Tavantzis ("Tavantzis") has been appointed as the Attorney in Fact of her spouse, Jesus Plasencia ("Plasencia") by a certain Durable Power

of Attorney dated November 19, 2019, executed under the Uniform Durable Power of Attorney Act in Section 4000 of the California Probate Code.

14. Defendant American Airlines, Inc. ("American Airlines") is incorporated under the laws of the State of Delaware, has its principal place of business in the State of Texas, and does extensive business within the State of California, including having one of its ten national hubs within the State of California and conducting business from airports in Northern California where Plaintiffs reside as set forth below.

15. On and before November 8, 2021, Defendant American Airlines was in the business of selling tickets for international carriage of passengers.

16. On and before November 8, 2021, Defendant American Airlines operated services for the carriage of passengers by air and conducted its business of carriage of passengers by air from premises leased or owned by American Airlines itself, or by another carrier with which it has a commercial agreement, at the San Francisco International Airport ("SFO") in San Francisco, California.

## JURISDICTION

17. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because a federal question is presented pursuant to the Convention for the Unification of Certain Rules for International Carriage by Air done at Montreal on May 28, 1999 (hereinafter "Montreal Convention").

18. Venue is proper in this District pursuant to Article 33 of the Montreal Convention because Plaintiffs have, at all relevant times, resided in the County of Santa Cruz in the State of California.

## DIVISIONAL ASSIGNMENT

19. Assignment of this action to the San Jose Division is proper pursuant to Article 33 of the Montreal Convention because Plaintiffs have, at all relevant times, resided in the County of Santa Cruz.

## FACTUAL ALLEGATIONS

20. On November 8, 2021, Plaintiffs embarked on a flight itinerary under American Airlines Reservation Number 2044732, which was purchased in California and flew Plaintiffs from San Francisco International Airport ("SFO") to Miami International Airport ("MIA") on American Airlines Flight 369, and then continued from MIA to Adolfo Suarez Madrid-Barajas Airport ("MAD") on American Airlines Flight 68 (hereinafter "AA Flight 68").

21. At all relevant times, AA Flight 68 was operated and controlled by Defendant American Airlines, acting by and through its authorized employees and/or agents.

22. Plaintiffs were fare-paying passengers ticketed to travel aboard AA Flight 68, and were seated in seats 28J and 28L, respectively.

23. After Plaintiffs boarded AA Flight 68 and while other passengers were in the process of boarding, Plasencia experienced a sudden inability to pick up his phone and began speaking gibberish.

24. Tavantzis became concerned that Plasencia was having a stroke.

25. Tavantzis verbally yelled for help and pressed her call button.

26. A flight attendant arrived to assess the situation, wherein Tavantzis expressly told the flight attendant she believed her husband was having a stroke and expressly told the flight attendant what she had observed. The flight attendant then alerted the pilot, who came to further assess the situation. Upon speaking with Tavantzis, and while calling the pilot to evaluate the situation, the flight attendant did not seek medical assistance from any response system, other passengers, or elsewhere.

27. By the time of the initial interaction with the flight crew, Plasencia had transiently rebounded, regained his ability to speak, and was unaware that anything had happened.

28. Tavantzis made it clear in her description to the crew that Plasencia had experienced difficulty with speaking and with picking up his phone.

29. Tavantzis explicitly and repeatedly expressed to the flight attendant and to the pilot her belief that Plasencia had "suffered a stroke."

30. Despite Tavantzis's expressly stated concerns and their awareness of the incident, neither the pilot nor the flight attendant followed American Airlines protocol to contact the airline medical response team or seek medical assistance from the passengers with medical training. The pilot did not appear to take Tavantzis's concerns about a potential stroke seriously and joked with Plasencia about their hair loss in older age.

31. The pilot cleared Plasencia to fly.

32. Tavantzis relied upon the misguided assurance from the pilot that Plasencia was safe to fly and stayed on the flight with Plasencia.

33. Upon information and belief, the crew and pilot did not follow American Airlines written protocols. For example, American Airlines pilots must follow the policies and procedures established in an operations manual called "Part 1."

34. Upon information and belief, a copy of the Part 1 manual is required on all American Airlines international flights and was on AA Flight 68.

35. Upon information and belief, the Part 1 manual includes policies and procedures that American Airlines pilots and other airline personnel must follow if a passenger presents with a medical issue or emergency.

36. Upon information and belief, the Part 1 manual includes policies and procedures that American Airlines pilots and other airline personnel must follow if a passenger presents with suspected stroke.

37. Upon information and belief, the policies and procedures in the Part 1 manual are intended to ensure the safety of all passengers on board American Airlines flights.

38. Upon information and belief, American Airlines contracts with a third-party service to provide 24-7 access to medical personnel via satellite phone ("Medical Hotline") who can be consulted at any time regarding any medical issues that may arise on American Airlines flights.

39. Upon information and belief, the Part 1 manual includes instructions for how the Medical Hotline can be accessed.

40. Upon information and belief, the Part 1 manual also empowers pilots to ask for the assistance of medical personnel on a flight if a passenger presents with a medical emergency.

41. Upon information and belief, multiple medical professionals were passengers aboard AA Flight 68, stood ready to assist if alerted of any medical crisis, and would have easily recognized the signs and seriousness of Plasencia's symptoms suggesting TIA or evolving stroke..

42. Upon information and belief, at least one passenger on AA Flight 68 was a travel physician with 30 years of experience. This individual had substantial work experience with travel emergencies and was qualified to rapidly assess an early stroke.

43. Contrary to American Airlines policies and procedures, including those in the Part 1 manual, the pilot on AA Flight 68 did not call the Medical Hotline before takeoff.

44. Contrary to American Airlines policies and procedures, including those in the Part 1 manual, the pilot on AA Flight 68 did not seek assistance from medical personnel on the flight before takeoff.

45. Contrary to American Airlines policies and procedures, including those in the Part 1 manual, the pilot on AA Flight 68 did not seek assistance from medical personnel on the ground at MIA before takeoff.

46. Contrary to American Airlines policies and procedures, including those in the Part 1 manual, the pilot's decision to clear Plasencia to fly put all passengers on AA Flight 68 at risk.

47. Following the pilot's misguided assessment of Plasencia's condition and uninformed determination that he was safe to fly, AA Flight 68 took off from MIA to MAD with both Plasencia and Tavantzis on board.

48. While AA Flight 68 was in the air above the Atlantic Ocean, Plasencia suffered a left middle cerebral artery occlusion caused by a thrombus or clot, which is commonly referred to as a left-MCA stroke.

49. Upon information and belief, during the flight, the pilot was informed that Plasencia suffered a stroke and that there was a medical emergency.

50. After the pilot was informed of the in-flight medical emergency, the pilot requested the assistance of any trained medical professionals on board AA Flight 68 via overhead announcement shortly before landing in MAD.

51. Multiple physicians and medical personnel rendered aid to Plasencia during the flight. These physicians commented that AA Flight 68 was not equipped with the necessary equipment to render effective aid (*e.g.*, blood pressure cuff).

52. After the pilot was informed of the in-flight medical emergency, upon information and belief, the pilot determined to continue the flight as scheduled to MAD.

53. AA Flight 68 landed at MAD, its scheduled destination, at approximately 8:55am on November 9, 2021, many hours after Plasencia suffered his in-flight stroke.

54. Plasencia was emergently transported from MAD to Ramón y Cajal Hospital in Madrid, and then on to La Paz University Hospital.

55. By the time Plasencia arrived at Ramón y Cajal Hospital, it was too late to administer tPA, which would have drastically altered his prognosis.

56. Plasencia and Tavantzis remained in Madrid for twenty-three days before returning to the United States via air-ambulance for Plasencia to seek further treatment in Plaintiffs' home state of California.

57. Before boarding AA Flight 68, Plaintiffs were active and vibrant retirees who enjoyed spending time traveling and working on community philanthropy projects.

58. Plasencia was a retired chef who had been the executive chef at a well-known local restaurant and an avid metal sculptor, golfer, mountain biker, and traveler.

  

59. Plasencia and Tavantzis were both known for their community involvement and generosity.

60. Local newspapers reported on Plasencia's and Tavantzis's accomplishments and charity work, including Plasencia's employment as executive chef of The Pacheco Club in Monterey, his position as a board member of Pajaro Valley Loaves & Fishes, and Plasencia's and Tavantzis's hosting of an annual "pop-up dinner to benefit the nonprofit food pantry and kitchen." "Jesse and his wife Marcela Tavantzis are fabulous hosts of this fun event . . . We are so appreciative of their continued support of our organization."

# Chef to host benefit dinner for PV Loaves & Fishes

By: STAFF REPORT  📅 May 29, 2017

WATSONVILLE — Chef Jesse Plasencia, executive chef of The Pacheco Club in Monterey, and past board member of Pajaro Valley Loaves & Fishes, will host a pop-up dinner to benefit the nonprofit food pantry and kitchen at El Alteño Restaurant, 323 Main St. in Watsonville, on Thursday.

Plasencia organized the first "El Alteño Benefit Dinner" in 2009 to commemorate the 20th anniversary of Pajaro Valley Loaves and Fishes. The benefit dinner is made possible by the support of the community. Food donations from local farmers and businesses reduce costs, and local wines are featured. Chefs and volunteers begin preparing the food for the dinner two days prior to the benefit and the use of a mobile walk-in refrigerator is donated, for storage of prepped food.

On the day of the event, the front- and back-of-the-house volunteer staff is primarily composed of Pajaro Valley Loaves & Fishes supporters and City of Watsonville employees.

The benefit dinner features two seating times for dine-in or take-out: first seating from 5:30-6 p.m., second seating from 7:30-8 p.m.; express to-go meals available 4:30-5 p.m. The dinner ($60 per ticket) includes a choice of two salads and three entrées — this year, pan-seared salmon, local vegetable lasagna, and roasted bone-in rack of pork.

In addition, Plasencia and his team — this year, including Chef Tene Shake and Chef Patrick Sigler — offer hand-crafted appetizers and desserts, priced at $7 to $12 each.

All food proceeds benefit Pajaro Valley Loaves & Fishes' food pantry and lunch programs, serving local families and individuals struggling with hunger.

"Jesse and his wife Marcela Tavantzis are fabulous hosts of this fun event," said Executive Director Brooke Sampson. "We are so appreciative of their continued support of our organization. We also thank the owners of El Alteño for generously donating the beautiful restaurant space again this year, to make this event possible."

61. After embarking on AA Flight 68, however, Plasencia's and Tavantzis's lives were forever altered.

62. Due to the left-MCA stroke Plasencia suffered while on board AA Flight 68 and the preventable delay in receiving effective treatment, Plasencia is unable to speak beyond single words, cannot write or communicate effectively, and cannot feed, clothe,

or toilet himself. Plasencia has lost significant cognitive ability, has severe apraxia and aphasia, has impaired right-side vision, has lost his ability to use the right side of his body, suffers tongue paralysis, and cannot walk without significant assistance. Plasencia does not recall the names of his spouse or his siblings and has severe cognitive and memory impairment.

63. Rather than enjoying an active and productive retirement, Plasencia remains—to this day—dependent on 24-7 in-home care and requires substantial rehabilitation.




64. Tavantzis, as Plasencia's wife, is Plasencia's primary caregiver and devotes significant time and energy to facilitating his limited rehabilitation.




## COUNT I – NEGLIGENCE

65. Plasencia's injury took place on board AA Flight 68.

66. At all relevant times, AA Flight 68 was operated and controlled by Defendant American Airlines through its employees, agents, and/or servants.

67. At all relevant times, AA Flight 68 was operated as a common carrier engaged in the business of transporting fare paying passengers.

68. As a common carrier, American Airlines, including its agents, servants, and employees, owed the highest duty of care to its passengers, including Plasencia and Tavantzis.

69. Federal regulations govern the conduct and procedures of common carriers like Defendant American Airlines.

70. For example, 14 CFR 121.801 requires crew members to have instruction in emergency medical procedures. *See*, 14 CFR 121.805(b)(1).

71. Active FAA Advisory Circular 121-34B, which was active in 2021 and in effect since 2006, expressly recommends that common carriers like Defendant American Airlines incorporate crew training programs that address "the ability to contact and coordinate with ground based medical care providers" and identifies "stroke" as one of the basic conditions with which crew members should have familiarity. *See* https://www.faa.gov/documentLibrary/media/Advisory_Circular/AC121-34B.pdf.

72. Upon information and belief, American Airlines flight attendants and pilots have specific protocols they must follow when a passenger is experiencing a medical emergency or otherwise appears unwell or in need of medical assistance.

73. Upon information and belief, American Airlines pilots are trained on and required to follow the policies and procedures established in the "Part 1" manual.

74. Upon information and belief, an airline-specific medical consult or hotline is available for American Airlines personnel to contact should a passenger or crew member experience a medical emergency before, during, or after a flight.

75. It is alleged that American Airlines, through its authorized employees and/or agents, was negligent in one or more of the following respects concerning its operation of AA Flight 68:

    a. Failure to follow established American Airlines protocol, including but not limited to the failure to consult the airline medical consult line when a passenger presented with symptoms of a medical emergency pre-departure;

    b. Failure to request pre-departure assistance from any of the multiple available, medically trained professionals who were aboard AA Flight 68;

    c. Failure to request pre-departure assistance from the EMS services located onsite at MIA;

    d. Failure to deplane Plasencia and Tavantzis prior to takeoff so that Plasencia could be transported to a nearby medical facility to receive ameliorative care within the treatment window; and

    e. Failure to divert AA Flight 68 from its scheduled destination to a closer destination.

76. Proper adherence to American Airlines protocols would have ensured routine, early management of Plasencia's condition and the administration of stroke interventions.

77. Specifically, had medical personnel been contacted as required by American Airlines own protocols, Plasencia would have been deplaned and transported to a nearby medical facility to receive timely treatment.[1]

78. Pursuant to Article 17(1) of the Montreal Convention, American Airlines "is liable for damage sustained in case of . . . bodily injury of a passenger upon condition

---

[1] For example, Jackson Memorial Hospital is located less than 30 minutes away from MIA and has a renowned stroke center. *See* https://jacksonhealth.org/service/stroke/.

only that the accident which caused the . . . injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking."

79. Under the provisions of Article 17 of the Montreal Convention, American Airlines' conduct, including but not limited to the negligent acts and omissions set forth above, constitutes an accident, in that it was an unexpected or unusual event or happening external to the passenger, Plasencia, and was causally liked to Plasencia's injuries.

## COUNT II – LOSS OF CONSORTIUM

80. Plaintiffs hereby allege and incorporate all paragraphs in the preceding section by reference herein.

81. Pursuant to Article 29 of the Montreal Convention, domestic law controls the issue of whether loss of consortium is cognizable. *See also Kruger v. United Airlines, Inc.*, 481 F. Supp. 2d 1005, 1009 (N.D. Cal. 2007).

82. California law permits compensatory damages for loss of consortium. *See, e.g.*, *Carlson v. Wald*, 151 Cal.App.3d 598, 602 (1984).

83. At all relevant times, Tavantzis and Plasencia have been lawfully married within the state of California.

84. As alleged herein, Plasencia was injured from an accident that occurred while he was a passenger on AA Flight 68.

85. As alleged herein, Plasencia is unable to speak beyond single words, cannot write or communicate effectively, and cannot feed, clothe, or toilet himself. Plasencia has lost significant cognitive ability, has severe apraxia, has impaired right-side vision, has lost his ability to use the right side of his body, suffers tongue paralysis, and cannot walk without significant assistance. Plasencia is entirely dependent on 24-7 in-home care and cannot participate in any of the activities that Plasencia and Tavantzis previously enjoyed together (*e.g.*, traveling).

86. As a direct result of Plasencia's injuries caused by the accident that occurred on AA Flight 68, Tavantzis has suffered a loss of consortium.

## **DAMAGES**

87.  Plaintiffs hereby allege and incorporate all paragraphs in the preceding sections by reference herein.

88.  As a direct and proximate result of the aforesaid accident, Plasencia became seriously and permanently injured.

89.  As a direct and proximate result of the aforesaid accident, Plaintiffs Plasencia and Tavantzis were both caused to suffer great pain, distress, agony, and mental anguish.

90.  As a direct and proximate result of the aforesaid accident, Plaintiffs Plasencia and Tavantzis were both caused to suffer great economic loss and, in the future, shall continue to suffer great economic loss.

91.  As a direct and proximate result of the aforesaid accident, Plaintiffs were forced to expend great sums of money on medical treatment and in the future shall continue to expend great sums of money on medical treatment necessary for Plasencia's care.

92.  As a direct and proximate result of the aforesaid accident, Plasencia is entitled to compensation for past and future lost earnings, past and future lost accumulations, past and future medical expenses, and mental anguish and suffering.

93.  As a direct and proximate result of the aforesaid accident Tavantzis as an individual, is entitled to compensation for past and future loss of services, comfort, society, companionship, moral support, loss of consortium, and mental anguish and suffering.

94.  Plaintiffs Tavantzis, as an individual, and as Attorney in Fact for Plasencia, an Incapacitated Person, hereby demands judgment against Defendant American Airlines, Inc. in an amount to be determined at trial, together with attorneys' fees, interest, costs, and disbursements of this action.

## DEMAND FOR JURY TRIAL

95. Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims and issues so triable.

Dated: October 31, 2023        Respectfully submitted,

/s/     Sanjiv N. Singh
Sanjiv N. Singh (State Bar No. 193525)
ssingh@sanjivnsingh.com
**SANJIV N. SINGH, APLC**
1700 South El Camino Real, Suite 503
San Mateo, CA 94402
Telephone: (650) 389-2255

Darren P. Nicholson (*pro hac vice* to be filed)
dnicholson@burnscharest.com
Hannah M. Crowe (*pro hac vice* to be filed)
hcrowe@burnscharest.com
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550

*Attorneys for Plaintiffs*