TIMOTHY K. DAVELER (SBN 332986)
Timothy.daveler@bipc.com
BUCHANAN INGERSOLL & ROONEY LLP
One America Plaza
600 West Broadway, Suite 1100
San Diego, CA 92101
Telephone: 619 239 8700
Fax: 619 702 3898

KELLY H. KOLB (admitted *Pro Hac Vice*)
kelly.kolb@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
401 E. Las Olas Blvd., Suite 2250
Fort Lauderdale, FL 33301
Telephone: 954-468-2300
Lead Counsel

Attorneys for Defendant AMERICAN AIRLINES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA MARIA MARCELA TAVANTZIS, as an individual, and as Legal Guardian of JESUS PLASENCIA, an incapacitated person,<br><br>     Plaintiffs,<br><br> vs.<br><br>AMERICAN AIRLINES, INC.,<br><br>     Defendant. | Case No.: 5:23-cv-05607-BLF<br><br>Assigned to: Hon. Beth Labson Freeman<br><br>**DEFENDANT AMERICAN AIRLINES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM**<br><br>Date: June 13, 2024<br>Time: 9:00 a.m.<br>Crtrm: 3 – 5th Floor<br>Judge: Hon. Beth L. Freeman<br><br>Complaint Filed: October 31, 2023 |

DEFENDANT AMERICAN AIRLINES, INC.'S MEMORANDUM OF LAW ISO ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM

CASE NO. 5:23-cv-05607-BLF

## <u>**TABLE OF CONTENTS**</u>

PRELIMINARY STATEMENT ........................................................................1

RELEVANT FACTUAL ALLEGATIONS ......................................................1

ARGUMENTS............................................................................................3

Legal Standard Under Rule 12(b)(2)...................................... 3

Legal Standard Under Rule 12(b)(6)...................................... 4

This Court Does Not Have General Jurisdiction Over AA..................... 5

This Court Does Not Have Specific Jurisdiction Over AA .................... 5

Count III Breach of Contract Claims Must be Dismissed Pursuant to Rule 12(b)(6) .................................................................. 12

CONCLUSION...............................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In Re: Air Crash at San Francisco, California, on July 6, 2013,*
2017 WL 3484643 (N.D. Cal. August 14, 2017) ................................................ 11

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ..................................... 4

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ..................................... 4

*BNSF Ry. Co. v. Tyrrell,*
581 U.S. 402 (2017) .............................................................................................. 5

*Bradley v T-Mobile US, Inc.,*
2020 WL 1233924 (N.D. Cal. March 13, 2020) ................................................. 6

*Bristol-Myers Squibb Co. v. Superior Court,*
582 U.S. 255 (2017) .............................................................................................. 3

*Burton v Air France- KLM,*
2020 WL 7212566 (D. Oregon Dec. 7, 2020) ........................................... 6, 8, 11

*Cardenas v American Airlines, Inc.,*
2018 WL 6503658 (S.D. Cal. December 11, 2018) ............................................. 8

*Conservation Force v. Salazar,*
646 F.3d 1240 (9th Cir. 2011) ............................................................................. 4

*Crane v Rave Restaurant Group, Inc.,*
552 F.Supp.3d 692 (E.D. Tex. 2021, modification of judgment
denied) ................................................................................................................ 13

*Daimler AG v. Bauman*
(2014) 571 U.S. 117 ......................................................................................... 3, 5

*Data Disc, Inc. v Systems Technology Assoc., Inc.,*
557 F.2d 1280 (9th Cir. 1977) ............................................................................. 4

*Del Toro v Atlas Logistics,*
2013 WL 796593 (E.D. Cal. March 4, 2013) .................................................... 12

*Farmer v Ben E. Keith Co.,*
919 S.W.2d 171 (Tex.App. – Ft. Worth, 1996, no writ) .................................... 13

*Fisher v Qantas Airways Ltd.,*
521 F.Supp.3d 847 (D. Ariz. 2021) .................................................................... 11

*GeoSolutions B.V. v. Sina.com Online,*
2023 WL 7107284 (N.D. Cal. Oct. 27, 2023) ..................................................... 6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011).............................................................................5

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd*,
    328 F.3d 1122 (9th Cir. 2003) ...........................................................3

*Holland Am. Line, Inc. v Wartsila N. Am., Inc.*,
    485 F.3d 450 (9th Cir. 2007) .............................................................6

*Mehr v Federation Internationale de Football Assoc.*,
    115 F.Supp.3d 1035 (N.D. Cal. 2015) ...............................................6

*Meirer v. Scandinavian Airlines System*,
    2021 WL 148240 (N.D. Cal. Jan. 15, 2021)............................4, 10, 14

*Miller v. Contl. Airlines*,
    260 F. Supp. 2d 931 (N.D. Cal. 2003) ..............................................14

*Narayanan v British Airways*,
    747 F.3d 1125 (9th Cir. 2014) ..........................................................14

*National Union Fire Ins. Co. of Pittsburgh, PA v UPS Supply Chain
    Solutions, Inc.*,
    116 F.4th 66 (2nd Cir. 2023) ............................................................12

*Payrovi v. LG Chem America, Inc.*,
    491 F.Supp.3d 597 (N.D. Cal. 2020).............................................3, 4, 7

*Pebble Beach Co. v Caddy*
    (9th Cir. 2006) 435 F.3d 1151 ...........................................................3

*Ruhrgas AG v. Marathon Oil Co.*
    526 U.S. 574 (1999)............................................................................3

*Sanders v. Brown*,
    504 F.3d 903 (9th Cir. 2007) .............................................................4

*Schwarzenegger v. Fred Martin Motor Co*,
    374 F.3d 797 (9th Cir. 2004) .............................................................3

*Sher v. Johnson*
    911 F.2d 1357 (9th Cir. 1990) ...........................................................3

*Matter of Star and Crescent Boat Co., Inc., v Sunsplash Marina, et. al.*,
    549 F.Supp.3d 1145 (S.D. Fla. 2021)...........................................4, 6, 7

*Stinger v Stewart & Stevenson Services, Inc.*,
    830 S.W.2d 715 (Tex.App.- Houston 14th District, 1992, writ
    denied) ..............................................................................................13

*Vallarta v. United Airlines, Inc.*,
    497 F.Supp.3d 790 (N.D. Cal. 2000).............................................5, 10

**Statutes**

Cal. Code Civ. Proc. §410.10 ...................................................................3, 5

**Rules and Regulations**

Fed. R. Civ. P. 12(b)(2) ...............................................................1, 3, 12, 14

Rule 12(b)(6)................................................................................1, 4, 12, 14

**Other Authorities**

*Montreal Convention*, Art. 29 ...................................................................14

## PRELIMINARY STATEMENT

Defendant, American Airlines, Inc. ("**AA**"), submits this Memorandum of Law in support of its Rule 12(b)(2) Motion to Dismiss Plaintiffs' First Amended Complaint ("**FAC**", Docket No. 24) for lack of personal jurisdiction and in support of its Rule 12(b)(6) Motion to Dismiss Count III (Breach of Contract under Texas Law) for failure to state a claim upon which relief can be granted.

## RELEVANT FACTUAL ALLEGATIONS

On November 8, 2021, Jesus Alfredo Plasencia ("**Plasencia**") and his wife, Ana Maria Marcela Tavantzis ("**Tavantzis**"), departed San Francisco International Airport on AA Flight 369, landing at Miami International Airport hours later without incident. (FAC, ¶¶ 21-22). Plasencia and Tavantzis then boarded AA Flight 68 with scheduled departure from Miami International Airport to Madrid, Spain. ("**AA Flight 68**"). (FAC, ¶¶ 22, 37-38).

While onboard but prior to departure of AA Flight 68 from Miami, Plaintiffs allege Plasencia suffered "signs of a Transient Ischemic Attack or symptoms of a stroke." (FAC, ¶¶ 3, 37-39). Tavantzis then allegedly paged a flight attendant on AA Flight 68 and expressed concerns that she believed Placencia may have "suffered a stroke." (FAC, ¶¶ 4, 40-41, 44).

The flight crew and pilot of AA Flight 68 observed Plasencia but saw no signs of any medical emergency since "by the time [the flight crew interacted with Plasencia], Plasencia had transiently rebounded, regained his ability to speak and was unaware that anything had happened." (FAC, ¶ 42). Accordingly, the pilot of AA Flight 68 allegedly "cleared [Plasencia] for take-off from Miami International Airport. (FAC, ¶¶ 5, 46). While AA Flight 68 was airborne between Miami and Madrid, Spain, Plasencia allegedly suffered a stroke. (FAC, ¶¶ 7, 63).

Plaintiffs allege that through various acts and/or omissions occurring either in Miami, Florida or in international airspace over the Atlantic Ocean during AA Flight

1

DEFENDANT AMERICAN AIRLINES, INC.'S MEMORANDUM OF LAW ISO ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM

CASE NO. 5:23-cv-05607-BLF

68, AA: (1) failed to have Plasencia medically evaluated onboard the aircraft in Miami; (2) failed to follow industry and AA protocols for handling suspected strokes; (3) failed to involuntarily deplane Plasencia so he could be transported to a Miami, Florida hospital for medical evaluation; and (4) failed to divert AA Flight 68 prior to arrival in Madrid, Spain to an unidentified other destination. (FAC, ¶¶ 3-7, 9, 48-49, 56-61, 67, 102, 104).

Plaintiffs assert claims under the Unification of Certain Rules for International Carriage by Air, art. 55, May 28, 1999, SA. Treaty Doc. No. 106-45, ICAO Doc. No. 9740, 2242 U.N.T.S. 350 ("**Montreal Convention**") for "the bodily injury of Plasencia that occurred on AA Flight 68" – the Miami to Madrid, Spain flight. (FAC, ¶¶ 17, 107, Counts I & II). In addition, Plaintiffs now allege that AA's Conditions of Carriage incorporated the terms of the Montreal Convention upon which they base two Breach of Contract claims (FAC, Count III) under Texas Law – one for failing to make discretionary payments to the Plaintiffs allegedly required by the Montreal Convention, and a second for previously contesting personal jurisdiction which, Plaintiffs allege, AA consented to by its incorporation of the terms of the Montreal Convention into its Conditions of Carriage. (FAC, ¶¶ 18, 19, 30, 31).

Attempting to establish the propriety of this Court's exercise of personal jurisdiction over AA, Plaintiffs allege: (1) Plaintiffs were at all relevant times residents of State of California (FAC, ¶¶ 12, 19, 23); (2) AA "issued tickets in California for [Plaintiffs'] international travel" and "sold the tickets to California residents" (FAC, ¶ 18); (3) Plaintiffs' travel originated from California  (FAC, ¶¶ 18, 21, 28, 36, 88-90); (4) AA has extensive business contacts with California (FAC, ¶¶ 14, 16); and (5) AA "contracted that California Courts would have personal jurisdiction over it." (FAC, ¶ 18).

Plaintiffs concede that AA is a nonresident entity in that it is a Delaware corporation, with its principal place of business in Texas. (FAC, ¶ 14).  Plaintiffs assert

1   no other allegations to support this Court's exercise of either general or specific

2   personal jurisdiction over AA for the alleged acts plead in the Complaint.

3                                      **ARGUMENTS**

4                        **Legal Standard Under Rule 12(b)(2)**

5           It is hornbook law that a federal court must have personal jurisdiction over a

6   defendant before the court may adjudicate the merits of a case. *Ruhrgas AG v.*

7   *Marathon Oil Co.* 526 U.S. 574, 584 (1999). It is Plaintiffs' burden to demonstrate that

8   this Court's exercise of personal jurisdiction over AA is proper. *Pebble Beach Co. v*

9   *Caddy*, 435 F.3d 1151, 1154 (9th Cir. 2006).  Stated another way, when a defendant

10  seeks dismissal for lack of personal jurisdiction, the plaintiff bears the burden of

11  demonstrating that the court may lawfully exercise personal jurisdiction over the

12  defendant. See *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd,* 328 F.3d

13  1122, 1128–29 (9th Cir. 2003).

14          Two limitations restrict a court's power to exercise personal jurisdiction over a

15  nonresident defendant: the Constitutional principles of Due Process and the applicable

16  state personal jurisdiction rules.  *Payrovi v. LG Chem America, Inc.*, 491 F.Supp.3d

17  597, 602 (N.D. Cal. 2020) citing *Sher v. Johnson* 911 F.2d 1357, 1360 (9th Cir. 1990).

18  California's long arm statute allows the exercise of personal jurisdiction to the full

19  extent permissible under the U.S. Constitution. *Daimler AG v. Bauman*, 571 U.S. 117,

20  125 (2014); see also, Cal. Code Civ. Proc. §410.10 ("[A] court of this state may

21  exercise jurisdiction on any basis not inconsistent with the Constitution of this state or

22  of the United States.").  Thus, the jurisdictional analysis under California's long arm

23  statute is the same as that under the federal Due Process standard.  *Schwarzenegger v.*

24  *Fred Martin Motor Co*, 374 F.3d 797, 801-02 (9th Cir. 2004).

25          Personal jurisdiction can be specific or general *Bristol-Myers Squibb Co. v.*

26  *Superior Court*, 582 U.S. 255, 262 (2017).

27

28

1    This Court may consider evidence presented in the form of affidavits,

2    declarations or otherwise to assist in its determination of jurisdictional issues. *Meirer*

3    *v. Scandinavian Airlines System*, 2021 WL 148240, at *1 (N.D. Cal. Jan. 15, 2021),

4    citing *Data Disc, Inc. v Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir.

5    1977). When, as here, jurisdictional allegations are contradicted by such evidence, "the

6    Court may not assume the truth of [those] allegations." *Payrovi,* 491 F.Supp.3d at 602,

7    citing *Data Disc, Inc.*, 557 F.2d at 1284. Instead, the "Plaintiff must provide evidence

8    to support its jurisdictional allegation[s]." *Matter of Star and Crescent Boat Co., Inc.,*

9    *v Sunsplash Marina, et. al.*, 549 F.Supp.3d 1145, 1154 (S.D. Fla. 2021), citing *Data*

10   *Disc, Inc.*, 557 F.2d at 1284.

11                    **Legal Standard Under Rule 12(b)(6)**

12   "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure

13   to state a claim upon which relief can be granted tests the legal sufficiency of a claim."

14   *Conservation Force v. Salazar,* 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation

15   marks and citation omitted). While a complaint need not contain detailed factual

16   allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim

17   to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct.

18   1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570,

19   127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible when it "allows

20   the court to draw the reasonable inference that the defendant is liable for the

21   misconduct alleged." *Id.*

22   The Court's consideration is generally limited to the allegations of the

23   Complaint, although the Court can also consider a document on which the Complaint

24   relies or to which it refers. See *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

25   While the Court is to accept as true all factual allegations in the Complaint, legally

26   conclusory statements, not supported by actual factual allegations, need not be

27   accepted. *Iqbal,* 556 U.S. at 678–79, 129 S.Ct. 1937.

28

4

DEFENDANT AMERICAN AIRLINES, INC.'S MEMORANDUM OF LAW ISO ITS MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM

CASE NO. 5:23-cv-05607-BLF

## This Court Does Not Have General Jurisdiction Over AA

Despite the wording of California Code of Civil Procedure ("**CCP**") §410.10 - allowing a California court's exercise of personal jurisdiction over an out-of-state corporate defendant with "continuous and systematic" California contacts - general jurisdiction over a corporation is limited to its place of incorporation and its principal place of business...in all but the "exceptional case." *Daimler*, 571 U.S. at 136-139 and n. 19. see also *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017).

Plaintiffs concede AA is a Delaware corporation with its principal place of business in Texas. (FAC, ¶14). Thus, Plaintiffs' allegations that AA has "one of its ten national hubs within California" and "does extensive business within the State of California" (FAC, ¶ 14) are insufficient as a matter of law to allow this Court's exercise of general personal jurisdiction over AA. *Daimler*, 571 U.S. at 139 note 19 ("even a company's…substantial, continuous and systematic course of business is alone insufficient to render it at home in a forum."). Further, that AA has one of its ten nationwide hubs in California hardly qualifies this case as an exceptional case since "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id*. at 799, citing *Daimler*, 571 U.S. at 139 and note 20.

Further, as discussed below, the Montreal Convention does not confer personal jurisdiction, but instead speaks only to subject matter jurisdiction. Thus, this Court may not exercise general personal jurisdiction over AA. Accord, *Vallarta v. United Airlines, Inc.,* 497 F.Supp.3d 790, 797-799 (N.D. Cal. 2000) (no general jurisdiction over United, a Delaware corporation with its principal place of business in Illinois; no exceptional case even though Plaintiff was California resident representing the class who purchased travel insurance on United's website in California).

## This Court Does Not Have Specific Jurisdiction Over AA

Specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop*

5

DEFENDANT AMERICAN AIRLINES, INC.'S MEMORANDUM OF LAW ISO ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM
CASE NO. 5:23-cv-05607-BLF

*Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). It is "different" in that it "covers defendants less intimately connected with a State" and "only as to a narrower class of claims." *GeoSolutions B.V. v. Sina.com Online*, 2023 WL 7107284 at *2 (N.D. Cal. Oct. 27, 2023). Specific jurisdiction is proper only when the plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum state. *Bradley v T-Mobile US, Inc.,* 2020 WL 1233924 at *6 (N.D. Cal. March 13, 2020).

The Ninth Circuit has established a three-part test to determine whether a court has specific jurisdiction over a non-resident defendant:

> (1) The non-resident defendant has "purposefully directed" its activities toward the forum or "purposefully availed itself" of the privileges of conducting activities in the forum;
>
> (2) The claim arises out of or relates to those forum-related activities; and
>
> (3) The assertion of personal jurisdiction is reasonable and fair.

*Bradley,* 2020 WL 1233924, at *6. Plaintiffs bear the burden of proof on the first two prongs, and if they fail to meet their burden on either prong, specific personal jurisdiction is not established and this action must be dismissed. *Id.*

While the "purposefully directed" and "purposefully availed" concepts are distinct concepts, where the plaintiff's claims sound in contract or negligence, and not intentional tort, specific jurisdiction is determined by application of the "purposefully availed" concept. *Matter of Star and Crescent Boat Co., Inc.,* 549 F.Supp.3d at 1162, citing *Holland Am. Line, Inc. v Wartsila N. Am., Inc*., 485 F.3d 450, 460 (9th Cir. 2007). See also, *Mehr v Federation Internationale de Football Assoc*., 115 F.Supp.3d 1035, 1049 (N.D. Cal. 2015). And see, *Burton v Air France- KLM*, 2020 WL 7212566 at *3 (D. Oregon Dec. 7, 2020). AA does not contest that it purposefully availed itself of the privileges of conducting activities in California. However, the Amended Complaint fails to factually allege a sufficient connection between Plaintiffs' Montreal Convention and breach of contract claims and AA's California activities to allow this

1  Court's exercise of specific personal jurisdiction.

2      To establish the requisite causal connection between AA's activities in

3  California and their injuries, Plaintiffs must plead facts establishing that their claims

4  "arise from" AA's California business activities. *Matter of Star and Crescent Boat Co.,*

5  *Inc.,* 549 F.Supp.3d at 1167.  In determining whether a claim arises out of a defendant's

6  forum-related conduct, the Ninth Circuit follows the 'but for' test." *Id.* In other words,

7  Plaintiffs "must show that [they] would not have suffered an injury 'but for'

8  [Defendant]'s forum-related conduct." *Payrovi,* 491 F.Supp.3d at 607.

9      Plaintiffs allege only the following forum related conduct of AA: (1) "American

10  Airlines issued tickets in California" (FAC, ¶18); (2) "American…sold the tickets to

11  California residents" (FAC, ¶18); (3) Plaintiffs' travel originated from California

12  (FAC, ¶18); and (4) AA "contracted that California Courts would have personal

13  jurisdiction over it." (FAC, ¶ 18).

14              <u>AA Did Not Sell or Issue Tickets to Plaintiffs</u>

15      Plaintiffs' conclusory allegation that they purchased tickets from AA and that

16  AA issued tickets to them is rebutted by FAC Exhibits 1 and 2, and by the Declaration

17  of Debra Shaffer - attached hereto as Ex. A. First, as clearly reflected by pages 1-2 of

18  Ex. 1 (FAC, Ex. 1 – Doc. 24 at pp. 24-25), Plaintiffs were issued "Boarding Passes"

19  by AA at the commencement of Flight 369 in California – not tickets. The distinction

20  between a "boarding pass" and a "ticket" is made clear by a more complete copy of

21  AA's Conditions of Carriage, attached hereto as Ex. B. A "ticket" is comprised of the

22  "*passenger ticket*, bag check and *boarding pass* which incorporate [the] conditions of

23  carriage…" Thus, the "boarding passes" attached to the FAC as Ex. 1 are not Plaintiffs'

24  "tickets." Plaintiffs do not allege that the issuance of their "boarding passes" for the

25  uneventful Flight 369 caused, contributed to or was the but for cause of their tort

26  injuries incurred hours later and thousand of miles away on Flight 68, or their breach

27  of contract damages. Further, issuance of the boarding passes is "too attenuated" to

28

those injuries and damages to satisfy the "but for" test. *Cardenas v American Airlines, Inc.*, 2018 WL 6503658 at *4 (S.D. Cal. December 11, 2018) (California commencement of Plaintiff's California to Texas to Washington, D.C. flights was too attenuated to Texas based tortious refusal to allow Plaintiff to continue on her flights to allow exercise of special jurisdiction over airline in California).

Second, Plaintiffs' allegation that they purchased their tickets from AA is conclusively rebutted by FAC, Ex. 1 (FAC, Ex. 1 – Doc. 24 at p. 26) and by the Declaration of Debra Shaffer - attached hereto as Ex. A. FAC, Ex. 1 demonstrates that Plaintiffs purchased their tickets from "Gate1 Travel" - a third party travel agent based in Pennsylvania - not AA. In addition, Plaintiffs' ticket (attached as Ex. C) reflects that the ticket was issued by Gate1 Travel, not AA.

Third, as reflected by the Declaration of Debra Shaffer - attached hereto as Ex. A, Plaintiffs' tickets do not show any credit card or other payment from Plaintiffs, an indication that AA was paid by Gate1 Travel, not Plaintiffs.

Plaintiffs do not allege any connection between Gate1 Travel and AA at all, much less one sufficient to allow the exercise of specific jurisdiction over AA. See, *Burton*, 2020 WL 7212566 at *5 (conclusory allegations of agency connection between airline and travel agent were insufficient to allow exercise of specific jurisdiction over the airline).

<u>Origination of Plaintiffs' Travel in California is</u>

<u>Insufficient to Confer Specific Jurisdiction</u>

Plaintiffs' claims are not connected to and do not arise out of the operation of AA Flight 369 from San Francisco to Miami. AA is not alleged to have acted negligently during this flight and Plaintiffs are not alleged to have suffered any injury on this flight. Instead, Plaintiffs' injury is alleged to have occurred on AA Flight 68 which departed Miami International Airport, as evidenced by their allegations, *inter alia*, in the FAC:

- "AA is liable for damage sustained by Plaintiffs in the bodily injury of Placencia that occurred on **AA Flight 68**." (FAC, ¶ 107, emphasis added).

- "After Plaintiffs boarded **AA Flight 68** …, Placensia experienced a sudden inability to pick up his phone and began speaking gibberish." (FAC, ¶ 38, emphasis added).

- "[m]ultiple medical professionals were passengers aboard **AA Flight 68**, stood ready to assist if alerted to any medical crisis, and would have easily recognized the signs and seriousness of Plasencia's symptoms suggesting TIA or evolving stroke." (FAC, ¶ 56, emphasis added).

- "[t]he pilot on **AA Flight 68** did not seek assistance from medical personnel on the flight before takeoff. (FAC, ¶ 59, emphasis added).

- "[t]he pilot on **AA Flight 68** did not seek assistance from medical personnel on the ground at MIA before takeoff." (FAC, ¶ 60, emphasis added).

- "Following the pilot's misguided assessment of Placencia's condition and uninformed determination that he was safe to fly, **AA Flight 68** took off from MIA to MAD with both Plasencia and Tavantzis on board. (FAC, ¶ 62, emphasis added).

- "While in flight above the Atlantic Ocean [on **AA Flight 68**], Plasencia suffered a left middle cerebral artery occlusion caused by a thrombosis or clot, which is commonly referred to as a left-MCA stroke." (FAC, ¶ 63, emphasis added).

- "Multiple physicians and medical personnel rendered aid to Plasencia during the [**AA Flight 68**]. These physicians commented that **AA Flight 68** was not equipped with the necessary equipment to render effective aid (*e.g.*, blood pressure cuff)." (FAC, ¶ 66, emphasis added).

- "**AA Flight 68** was not equipped with a sphygmomanometer (*i.e.*, blood pressure cuff)." (FAC, ¶ 67, emphasis added).

1    • "**AA Flight 68** landed at MAD, its scheduled destination, at

2 approximately 8:55 am on November 9, 2021, many hours after Plascencia suffered

3 his in-flight stroke." (FAC, ¶ 69, emphasis added).

4    • "After embarking on their American Airlines voyage [on **AA Flight 68**]**,**

5 [ ], [Plaintiffs] lives were forever altered." (FAC, ¶ 77 emphasis added.)

6    • "Due to the left-MCA stroke Plasencia suffered while on board **AA Flight**

7 **68** and the preventable delay in receiving effective treatment, Plasencia is unable to

8 speak…write… feed… clothe… toilet himself…"  (FAC, ¶ 78, emphasis added.)

9    • "As a direct result of Plasencia's injuries caused by the accident that

10 occurred [on **AA Flight 68**], Tavantzis has suffered a loss of consortium." (FAC, ¶

11 114, emphasis added.)

12    Given Plaintiffs' allegations that their injuries occurred in Miami and/or over

13 the Atlantic Ocean and on a flight other than their flight which originated in California,

14 there is no conceivable but for causative link between their claimed injuries and the

15 commencement of their travel in California. Thus, specific jurisdiction over AA is not

16 supported by the allegation that Plaintiffs traveled from California to Miami, Florida

17 on AA Flight 369. See, *Meirer*, 2021 WL 148240 at *1-2 (no specific jurisdiction in

18 California over airline which failed to divert – to Iceland - international flight from

19 California to Copenhagen to allow plaintiff to seek medical treatment for suspected

20 stroke occurring while airborne close to Iceland). *Vallarta v United Airlines, Inc.,* 497

21 F.Supp.3d 790, 800 (N.D. Cal. 2020) (no specific personal jurisdiction over claims

22 based on defendant's forum related conduct causing injuries outside the forum).

23    <u>AA Did Not Contract for California Courts to Have Personal Jurisdiction</u>

24    Plaintiffs allege that AA's "Conditions of Carriage…incorporates the Montreal

25 Convention in its entirety, including Article 33, which permits passengers to file claims

26 for damages where [AA has] "a place of business and in which the contract was made"

27

28

Defendant American Airlines, Inc.'s Memorandum of Law ISO its Motion to Dismiss Plaintiffs' First Amended Complaint for Lack of Personal Jurisdiction and For Failure to State A Claim

Case No. 5:23-cv-05607-BLF

1  or where "the passenger has his or her principal and permanent residence." (FAC, ¶¶18,

2  30-32). Plaintiffs are incorrect on both points.

3      First, as reflected by FAC, Ex. 2 (Doc. 24, p. 31), AA's Conditions of Carriage

4  do not "incorporate the Montreal Convention in its entirety" – or at all. Instead, the

5  Conditions of Carriage states that liability on international flights is governed by the

6  Montreal Convention, and it provides an informational link to AA's summary of

7  *certain* provisions of the Convention.  While FAC, Ex. 3 accurately depicts that

8  summary, the summary does not incorporate the entirety of the Montreal Convention.

9  Further, neither the Conditions of Carriage nor AA's summary mention Article 33 of

10  the Convention at all.

11      Second, assuming the Conditions of Carriage did incorporate the Montreal

12  Convention in its entirety, no provision of the Convention establishes *personal*

13  *jurisdiction* since Article 33 of the Convention speaks only to *subject matter*

14  jurisdiction. *In Re: Air Crash at San Francisco, California, on July 6, 2013*, 2017 WL

15  3484643 at *3 (N.D. Cal. August 14, 2017) (discussing Art. 33 as determining subject

16  matter jurisdiction); *Burton*, 2020 WL 7212566 at *7 ("It is well settled that Article 33

17  of the Montreal Convention…refer[s] to jurisdiction in the treaty sense, meaning

18  whether *any court in this country* has jurisdiction over the case…which courts have

19  referred to…as [a] subject matter clause[].").

20      This conclusion derives from the fact that Article 33's reference to "the (various)

21  territories of one of the State Parties" where a Montreal Convention claim could be

22  filed, refers to "a *country or nation* that has ratified the Montreal Convention [so that]

23  rather than conferring personal jurisdiction over a foreign airline in all 50 states of the

24  United States, the Montreal Convention, rather straightforwardly, confers subject

25  matter jurisdiction in *the territory* of a State Party to the Convention" – i.e., *some court*

26  in the United States in this case, "rather than [every court or] a particular court" within

27  the United States. *Fisher v Qantas Airways Ltd*., 521 F.Supp.3d 847, 855 (D. Ariz.

28

2021).  More precisely, while Article 33 identifies the countries in which a claim under the Convention can be pursued, "it does not guarantee plaintiffs the unconditional right to litigate those claims in those nations' courts." *National Union Fire Ins. Co. of Pittsburgh, PA v UPS Supply Chain Solutions, Inc.*, 116 F.4th 66, 73-75 (2nd Cir. 2023). That determination is, according to Article 33(4), is left to the procedures in place in each State Party – i.e., personal jurisdiction rules. *Id.*  Thus, AA did not contractually consent to personal jurisdiction in California by its reference to the Montreal Convention in its Conditions of Carriage.

Lastly, assuming AA did enter into a contract with Plaintiffs in California, as opposed to Texas, "the formation of a contractual relationship with a resident is not, in itself, sufficient to create specific jurisdiction over a non-resident." *Del Toro v Atlas Logistics,* 2013 WL 796593 at * 4 (E.D. Cal. March 4, 2013).

Since this Court does not have general or specific personal jurisdiction over AA for Plaintiffs' claims, dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(2) is appropriate.

## **Count III Breach of Contract Claims Must be Dismissed Pursuant to Rule 12(b)(6)**

Assuming arguendo this Court finds it can permissibly exercise personal jurisdiction over AA, this Court must nevertheless dismiss Plaintiffs' breach of contract claims since they fail to assert a claim upon which relief can be granted.

### Plaintiffs' Contractual Repudiation Claim

Plaintiffs' claim that AA repudiated its Contract of Carriage by previously challenging this Court's personal jurisdiction fails to state a claim because: (1) AA's Conditions of Carriage does not incorporate the Montreal Convention in its entirety as shown above; (2) even if it did, the Montreal Convention does not fix personal jurisdiction, as argued above; and (3) AA's Conditions of Carriage does not otherwise stipulate to the exercise of personal jurisdiction by a California court.

<u>Plaintiffs' Contractual Non-Performance Claim</u>

Plaintiffs' contractual non-performance claim that AA's failure to make discretionary payments under the interim payment provisions of the Montreal Convention is based on the following language – "In cases of bodily injury or death, the carrier shall make an advance payment where the carrier determines it is necessary to meet the immediate economic needs of, and hardship suffered by, a passenger." (FAC, ¶ 120). This claim fails for the same, and additional, reasons as Plaintiffs' contractual repudiation claim.

First, AA's Conditions of Carriage does not incorporate these or any other terms of Montreal Convention, as argued above.

Second, such a payment would only be required (according to Plaintiffs) if AA had made the "determination" that such a payment was "necessary" for Plaintiffs to meet their immediate economic needs and even then, only in an amount if any determined by AA "in its sole discretion." As shown by the Declaration of Debra Shaffer attached hereto as Ex. A, AA made no determination that a payment in any amount was necessary to assist Plaintiffs with immediate economic needs as available information indicated his needs were being adequately met by available sources.

Third, the failure to make such discretionary payment is not, under Texas law, a breach of contract. *Farmer v Ben E. Keith Co.*, 919 S.W.2d 171, 177 (Tex.App. – Ft. Worth, 1996, no writ) (employer's failure to make discretionary payment to employee was not a breach of contact); *Stinger v Stewart & Stevenson Services, Inc.*, 830 S.W.2d 715, 720 (Tex.App.- Houston 14th District, 1992, writ denied) (contract stating "you will be paid" did not convert otherwise discretionary payment into mandatory contractual provision; failure to make discretionary payment not contractual breach). See also, *Crane v Rave Restaurant Group, Inc.,* 552 F.Supp.3d 692, 703- (E.D. Tex. 2021, modification of judgment denied) ("just because a provision contains the word

1  'shall' does not mean the object of the provision – here, the executive bonus plan
2  bonuses- is mandatory" where the amount of the bonus was discretionary).

3      Fourth, the true nature of this claim is betrayed by Plaintiffs' claim that the
4  damages flowing from this "breach" are the same as the "full value of Plaintiffs'
5  …special drawing rights" under the Montreal Convention. (FAC, ¶¶122-123, 125).
6  Thus, this claim is little more than a re-framed Montreal Convention claim
7  masquerading as a contract claim. As such, it is pre-empted by the Convention.
8  *Montreal Convention*, Art. 29 ("In the carriage of passengers … any action for
9  damages, however founded, whether under this Convention or in contract or in tort or
10  otherwise, can only be brought subject to the conditions and such limits as are set out
11  in this Convention…."). See also, *Meirer,* 2021 WL 148240 at *3 (common carrier
12  strict liability and negligence claims asserted by inflight stroke victim were preempted
13  and dismissed since the Convention "provides the exclusive remedy for international
14  passengers…") (emphasis original), citing *Narayanan v British Airways*, 747 F.3d
15  1125, 1127 n. 2 (9th Cir. 2014); *Miller v. Contl. Airlines*, 260 F. Supp. 2d 931, 940
16  (N.D. Cal. 2003) (passenger's claims for negligence, common carrier strict liability,
17  product liability, breach of warranty and negligent infliction of emotional distress, and
18  her spouse's loss of consortium claim dismissed as preempted by the Convention).

19      AA requests, therefore, that Plaintiffs' breach of contract claims be dismissed
20  pursuant to Rule 12(b)(6).

21              **CONCLUSION**

22      For the foregoing reasons, American Airlines, Inc. requests that this Court
23  dismiss Plaintiffs' claims in their entirety for lack of personal jurisdiction pursuant to
24  Rule 12(b)(2). Should the Court conclude that it may properly exercise personal
25  jurisdiction over American Airlines, Inc., Plaintiffs' breach of contract claims should
26  be dismissed pursuant to Rule 12(b)(6).

27

28

1  DATED:  January 16, 2024          BUCHANAN INGERSOLL & ROONEY LLP

2

3
                                      *By:*  /s/ Kelly H. Kolb
4                                           KELLY H. KOLB
                                            TIMOTHY K. DAVELER
5                                           Attorneys for Defendant
                                            AMERICAN AIRLINES, INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT AMERICAN AIRLINES, INC.'S MEMORANDUM OF LAW ISO ITS MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM

Exhibit A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

ANA MARIA MARCELA TAVANTZIS, as an individual, and as Legal Guardian of JESUS PLASENCIA, an incapacitated person,

                Plaintiffs,

    vs.

AMERICAN AIRLINES, INC.,

                Defendant.

Case No.:  5:23-cv-05607-BLF

Assigned to: Hon. Beth Labson Freeman

**DECLARATION OF DEBRA SHAFFER IN SUPPORT OF DEFENDANT AMERICAN AIRLINES, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM**

Date:    June 13, 2024
Time:    9:00 a.m.
Crtrm:  3 – 5th Floor
Judge:  Hon. Beth L. Freeman

Complaint Filed: October 31, 2023

## <u>DECLARATION OF DEBRA SHAFFER</u>

I, Debra Shaffer, under penalty of perjury, declare and state:

1.    "My name is Debra Shaffer I am over 18 years of age and I am giving this declaration freely and voluntarily. I have personal knowledge of all matters set forth herein unless otherwise stated and all statements set forth are true and correct.

2.    I have been employed with American Airlines, Inc. ("**AA**") as a Senior Claims Analyst since 2014.  My duties generally include full investigation of matters asserted against AA which can include review of AA's internal reservation, ticketing, and payments business records pertaining to the flight involved with the matter.

3.      I have reviewed the First Amended Complaint, with exhibits, in the above styled lawsuit. I have reviewed AA's Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' First Amended Complaint for Lack of Personal Jurisdiction and for Failure to State a Claim ("**Motion to Dismiss**").

4.      A true and correct and more complete copy of the version of AA's Conditions of Carriage attached to the First Amended Complaint as Ex. 2 is attached to the Motion to Dismiss as Ex. B.

5.      The documents attached to the First Amended Complaint as Exhibit 1 (pages 1-2) are not AA Tickets, but are boarding passes. A true and correct copy of the Plaintiffs' actual Ticket for the flights at issue in this lawsuit is attached to the Motion to Dismiss as Ex. C, which is a record of information made at or near the time by, or from information transmitted by, someone with knowledge of the reservation, data and flights shown in the Ticket. The Ticket is kept in the regular course of business of AA and it was the regular practice of AA to make and keep the Ticket.

6.      The second line of the attached Ticket shows that AA did not issue the Ticket. In the code "TKT-00117654005458-59, "001" reflects the ticket stock used by a third-party travel agency to issue the Ticket to the Plaintiffs. The remaining numbers in that code identify the third party ticket agency issuing the Ticket.

7.     I have examined AA's revenue accounting system data pertaining to this Ticket. That data does not show a credit card number, indicating that the Plaintiffs did not pay AA for the Ticket. It appears, that AA was paid by the third-party travel agency for the Ticket.

8.     At no time did AA determine that Plaintiffs were in need of immediate economic assistance arising from the circumstances they allege in the First Amended Complaint. From the information provided to us, it was obvious that the Plaintiffs' immediate economic needs were being met by other available sources. Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing statement is true and correct and within my personal knowledge.

Executed:  January 16, 2024.

_Debra Shaffer_
Debra Shaffer, Senior Claims Analyst

Exhibit B

The Wayback Machine - https://web.archive.org/web/20211027203912/https://www.aa.com/i18n/customer-service/support/conditions-of-carriage.jsp

 American Airlines

Home    LOG IN     English ▼    Search AA.com®

PLAN TRAVEL    TRAVEL INFORMATION    AADVANTAGE

⌂ Home  ›  Legal, privacy & copyright  ›  Conditions of carriage

# Conditions of carriage

Updated September 24, 2021

## The contract between you, the passenger, and us, American Airlines

At American Airlines, we fly over borders – across the country and the world – to connect people and communities. Providing this service and making the world a smaller, more inclusive place, is a huge part of who we are.

Flying with American »

All transportation of passengers and bags provided by American Airlines is subject to the terms of these Conditions of Carriage, in addition to any:

- Terms printed on any ticket, ticket jacket or ticket receipt
- Published fare rules; and
- Applicable tariffs filed by American Airlines in accordance with U.S. Department of Transportation regulations.

All terms, fare rules, and tariffs are incorporated herein by reference and constitute part of your agreement with American Airlines.

American Airlines General Rules of the International Tariff 🗗

### You

Passenger responsibilities »

Children traveling »

Customers with special needs »

### Your flight

Check-in and arrival »

Changes to schedules / operations »

Events beyond our control »

Oversold flights »

Delays, cancellations and diversions »

### Your ticket, bags & refunds

Baggage »

Baggage liability (domestic flights) »

Liability for international flights »

Ticket types and refunds »

Ticket validity »

## Contact us

Good or bad, we want to hear from you. Please contact us with your comments, concerns and feedback. Our Customer Relations team is here for you and will respond promptly.

Call Customer Relations: 682-278-9000

Email Customer Relations »

Facebook 🗗

Twitter 🗗

⊙ Contact details

⊙ The words we use

Here's what we mean by things like 'domestic' and 'FAA.' If you can't find something or have questions, please get in touch.

Contact American »

### American Airlines

Under the name "American Airlines" we operate mainline flights as American Airlines and regional codeshare flights (doing business as American Eagle) operated by:

- Envoy Air Inc.
- Mesa Airlines Inc.

- Piedmont Airlines Inc.
- PSA Airlines Inc.

- Republic Airways Inc.
- SkyWest Airlines Inc.

We also offer codeshare flights operated by:

- Air Tahiti Nui
- Alaska Airlines, Inc.
- British Airways



- Cathay Pacific
- China Southern Airlines
- El Al
- Fiji Airways
- Finnair
- GOL Linhas Aéreas
- Hawaiian Airlines, Inc.

- Horizon Air Industries, Inc.
  (doing business as Alaska Airlines)
- Hyannis Air Service, Inc.
  (doing business as Cape Air)
- Iberia Airlines
- Japan Airlines
- JetBlue Airways
- Jetstar

- Jetstar Japan
- Qantas
- Qatar Airways
- Royal Air Maroc
- Royal Jordanian Airlines
- Silver Airways
- Vueling

| What we say | What it means |
|---|---|
| American Ticket Office | A ticket sales office of American Airlines, Inc. / American Eagle or one of our appointed travel agents |
| Assistive device | Equipment used by passengers with special needs (Disabled Passenger or Qualified Individual with a Disability) to hear, see, communicate, maneuver or perform daily functions; includes medical devices and medications |
| Baggage | Personal property that's either checked in or carried on the plane |
| Codeshare | Codeshare agreements allow us to sell seats on flights operated by other airlines, giving American customers access to more flights and destinations; partners include British Airways, Iberia, Alaska Airlines and more |
| Customs and Border Protection (CBP) | CBP is our country's primary border control organization. It regulates and facilitates international trade, collects import duties, and enforces U.S. regulations, including trade, customs and immigration |
| Disabled Passenger or Qualified Individual with a Disability | An individual who has a physical or mental impairment that, permanently or temporarily, substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment as further defined in the U.S. Department of Transportation regulations in 14 C.F.R. Section 382.3 |
| Domestic | The 50 federated states and the District of Columbia, Puerto Rico and the U.S. Virgin Islands, also see 'U.S.' |
| Federal Aviation Administration (FAA) | An agency of the U.S. Department of Transportation that regulates all aspects of civil aviation in the U.S. including operation of airports, air traffic and the certifying personnel and aircraft |
| Fare | The price you pay for your ticket; also, the rules associated with that ticket including whether it's refundable |
| Flight segment | A flight segment is a nonstop point-to-point flight that consists of one takeoff and one touchdown |
| International | Outside the 50 federated states and the District of Columbia, Puerto Rico and the U.S. Virgin Islands; also, outside of your home country |
| Montreal Convention and Warsaw Convention | International agreements that set the rules for airlines' liability when we carry passengers, baggage and goods internationally |
| Oversold flight | When the number of checked-in passengers exceeds the number of seats |
| Stopover | A planned stop in a city/airport for over 4 hours |
| Ticket | Passenger ticket, bag check and boarding pass which incorporate these conditions of carriage, including tickets issued electronically |
| Transportation Security Administration (TSA) | An agency of the U.S. Department of Homeland Security with authority over the security of the traveling public in the U.S. |
| U.S. | The 50 federated states and the District of Columbia, Puerto Rico and the U.S. Virgin Islands |
| U.S. Department of Transportation (DOT) | A federal Cabinet department of the U.S. government that regulates aspects of air transportation |



You

As a passenger, you're required to act in way that's consistent with ensuring the safety of everyone on board. This includes complying with the laws and travel requirements of the countries we fly to, from or over. Traveling can be stressful, and we appreciate your patience and courtesy for other passengers and American Airlines team members.

⌄ Passenger responsibilities

⌄ Children traveling

⌄ Customers with special needs

## Your flight

When it comes to checking in and arriving at the airport, earlier is better. Give yourself extra time if you're checking bags or traveling internationally.

Before you head to the airport, you can check for travel alerts that impact the cities in your trip and get flight status information like gates and times.

Travel alerts »

Get flight status information »

Download the American Airlines app to get real time updates about your travel.

American Airlines app »

⌄ Check-in and arrival

⌄ Our responsibilities when there are schedule / operations changes

⌄ Events beyond our control (Force Majeure)

⌄ Oversold flights

⌄ Delays, cancellations and diversions

## Your ticket, bags and refunds

⌄ Baggage

⌄ Baggage liability (domestic flights)

⌃ Liability for international flights

For international travel, the Warsaw Convention and the Montreal Convention govern liability for personal injury, death or damage. The terms and conditions are set by these international conventions and are not subject to change or modification by American Airlines. These conventions set compensation amounts for death, injury and baggage loss and damage. The full linked page is incorporated herein by reference. 

Montreal Convention and Warsaw Conventions »

⌄ Ticket types and refunds

⌄ Ticket validity

## You may also like...

Customer service and contingency plans »

Contact American »

Baggage »

⊕ Back to top

Help

Contact American

Receipts and refunds

FAQs

Agency reference

Cargo 🗗

Bag and optional fees

Customer service and contingency plans

Conditions of carriage

About American

About us

Careers 🗗

Investor relations 🗗

Newsroom 🗗

Legal, privacy, copyright

Environmental, social and governance

Combating human trafficking

Browser compatibility

Web accessibility

Extras

Business programs

Gift cards 🗗

American Airlines credit card

Trip insurance



Earn 50,000 bonus miles.
Terms apply. 🗗

**Buy**Miles
Save up to 35%
through October 31 🗗


Up to 35% savings
plus AAdvantage® miles 🗗



🗗 Link opens in new window. Site may not meet accessibility guidelines. AA.com®

Exhibit C

```
VCRH*0017654005458«
*--------------------------------------------------------*
* H I S T O R I C A L   T I C K E T              *
*--------------------------------------------------------*
VIRTUAL COUPON RECORD
TKT-0017654005458-59  ISSUED-20OCT21   CTY-PHL    STA-39782131
AGNT-A0464RSGS       PNR- PURGED/18NOV21        CTRY-US
                             CRS -1A 18765
NAME-PLASENCIA PLASENCIA/JESUS ALF
TTL NBR OF CPNS- 5
CPN A/L FLT   CLS DATE    BRDOFF TIME PNR   BAG   STATUS
 1O AA 369   O 08NOV21 SFOMIA 801A OK   1PC   USED
                 F/B-OLNTXRA/S179
 2X AA 68    O 08NOV21 MIAMAD 636P OK   1PC   USED
                 F/B-OLNTXRA/S179
 3    ARNK                        VOID
                 F/B-VOID
 4O AA 67    O 18NOV21 BCNJFK 1040A OK   1PC   OK
                 F/B-OLX8T7M5/TOA1
 5X AA 2305  O 18NOV21 JFKSFO 500P OK   1PC   OK
                 F/B-OLX8T7M5/TOA1


FARE CALC S-08NOV21SFO AA X/E/MIA AA MAD M/IT OLNTXRA/S179 /-
     BCN IB SFO M/IT OLX8T7M5U/TOA1 END XF SFO4.5MIA4.5  ¥
```

