**SANJIV N. SINGH, APLC**
Sanjiv N. Singh (State Bar No. 193525)
ssingh@sanjivnsingh.com
1700 South El Camino Real, Suite 503
San Mateo, CA 94402
Telephone: (650) 389-2255

**BURNS CHAREST LLP**
Darren P. Nicholson (*pro hac vice*)
dnicholson@burnscharest.com
Hannah M. Crowe (*pro hac vice*)
hcrowe@burnscharest.com
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA MARIA MARCELA TAVANTZIS, as an individual, and as Legal Guardian of JESUS PLASENCIA, an incapacitated person, <br><br> Plaintiffs, <br><br> vs. <br><br> AMERICAN AIRLINES, INC., <br><br> Defendant. | Case No.: 5:23-cv-05607-BLF <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM** <br><br> Date: June 13, 2024 <br> Time: 9:00 a.m. <br> Crtrm: 3 – 5th Floor <br> Judge: Hon. Beth L. Freeman <br><br> Complaint Filed: October 31, 2023 |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................i

TABLE OF AUTHORITIES ....................................................................... iii

INTRODUCTION ....................................................................................1

FACTUAL BACKGROUND ........................................................................2

LEGAL STANDARD ................................................................................4

   A.   Standard of Review Under Rule 12(b)(2) ...............................................4

   B.   Standard of Review Under Rule 12(b)(6) ...............................................4

ARGUMENT ..........................................................................................5

   A.   This Court Has Specific Jurisdiction Over American Airlines, and Defendant Has Waived Any Argument to the Contrary. .......................................5

      1.   This Court Has Specific Jurisdiction Over American. .........................5

         a)  Plaintiffs' Claims Arise out of American's California Activities Because Plaintiffs Were Injured While Traveling from California to Spain. ...............................................................6

         b)  American Issued and Operated an International Itinerary for Plaintiffs to Travel from California to Spain. ..........................6

         c)  American's Operation of Plaintiffs' Itinerary from California Confers Specific Jurisdiction over the Airline. ....................8

      2.   American Waived Personal Jurisdiction by Incorporating the Montreal Convention into its Conditions of Carriage. ..................11

   B.   Plaintiffs Sufficiently Plead Breach of Contract Claims by Alleging that American Contested Jurisdiction and Failed to Tender Advance Payment in Violation of the Parties' Contract. .......................................13

      1.   Plaintiffs Allege Facts to Support Their Repudiation Claim. ...........14

      2.   Plaintiffs Allege Facts to Support Their Nonperformance Claim. ....14

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

3.     The Court May Exclude Defendant's Evidence or Treat its Rule
       12(b)(6) Motion as a Rule 56 Motion for Summary Judgment. ...................18

CONCLUSION ............................................................................................................19

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................. 5

*Association for L.A. Deputy Sheriffs v. County of Los Angeles,*
   648 F.3d 986 (9th Cir. 2011) .................................................... 5

*B&Z Galvanized Indus., Inc. v. Innovative Fabrication, LLC,*
   2021 WL 6496808 (C.D. Cal. Mar. 3, 2021) .......................... 11

*Ballard v. Savage,*
   65 F.3d 1495 (9th Cir. 1995) .................................................... 4

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................. 4

*Bugarin v. All Nippon Airways Co.,*
   513 F. Supp. 3d 1172 (N.D. Cal. 2021) ............................... 4, 6

*Burton v Air France- KLM,*
   2020 WL 7212566 (D. Oregon Dec. 7, 2020) ....................... 7, 8

*Cardenas v. American Airlines,*
   2018 WL 6503658 (S.D. Cal. December 11, 2018) .................. 7

*Cattaneo v. Am. Airlines, Inc.,*
   2015 WL 5610017 (N.D. Cal. Sept. 24, 2015) ........................ 10

*Cattaneo v. Am. Airlines, Inc.,*
   2015 WL 9192408 (N.D. Cal. Apr. 23, 2015) ..................... 9, 10

*Coyle v. P.T. Garuda Indonesia,*
   363 F.3d 979 (9th Cir. 2004) .................................................... 9

*Crane v. Rave Rest. Group, Inc.,*
   552 F. Supp. 3d 692 (E.D. Tex. 2021) ................................... 17

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014) ................................................................. 4

*Diab v. Brit. Airways, PLC,*
   2020 WL 6870607 (E.D. Pa. Nov. 23, 2020) ......................... 13

*Erickson v. Pardus,*
   551 U.S. 89 (2007) ................................................................... 4

*Farmer v. Ben E. Keith Co.,*
   919 S.W.2d 171 (Tex. App.—Fort Worth 1996, no writ) ....... 16

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
    896 F.2d 1542 (9th Cir. 1990)...................................................................15, 18

*In re Nigeria Charter Flights Contract Litig.*,
    520 F. Supp. 2d 447 (E.D.N.Y. 2007)..............................................................18

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982) ..........................................................................................11

*Johnson v. Riverside Healthcare Sys., LP*,
    534 F.3d 1116 (9th Cir. 2008)........................................................................4, 14

*Kruger v. United Air Lines, Inc.*,
    2007 WL 3232443 (N.D. Cal. Nov. 1, 2007)...................................................9, 10

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) .........................................................................15, 18

*Loomis v. Slendertone Distribution, Inc.*,
    420 F. Supp. 3d 1046 (S.D. Cal. 2019) ................................................................4

*Meirer v. Scandinavian Airlines Sys.*,
    2021 WL 148240 (N.D. Cal. Jan. 15, 2021) ......................................................11

*Menken v. Emm*,
    503 F.3d 1050 (9th Cir. 2007)..............................................................................6

*Mewawalla v. Middleman*,
    601 F. Supp. 3d 574 (N.D. Cal. 2022) ..............................................................11

*Mullaney v. Delta Air Lines, Inc.*,
    2009 WL 1584899 (S.D.N.Y. June 3, 2009) .....................................................18

*Nankin v. Continental Airlines, Inc.*,
    2010 WL 342632 (C.D. Cal. Jan. 29, 2010).................................................17, 18

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015)..............................................................................4

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004)................................................................................5

*Stinger v. Stewart & Stevenson Servs., Inc.*,
    830 S.W.2d 715 (Tex. App.—Houston [14th Dist.] 1992, writ
    denied) ...............................................................................................................16

*Vallarta v. United Airlines, Inc.*,
    497 F. Supp. 3d 790 (N.D. Cal. 2020) ..............................................................11

*Weiss v. El Al Israel Airlines, Ltd.*,
    433 F. Supp. 2d 361 (S.D.N.Y. 2006) ...............................................................18

iv

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

*Zhang v. Air China Ltd.*,
   866 F. Supp. 2d 1162 (N.D. Cal. 2012) ....................................................9, 10

**Rules**

Cal. Code Civ. Proc. § 410.10 ............................................................4

Fed. R. Civ. P. 12(d)...............................................................15, 18, 19

Fed. R. Civ. P. 8(a)(2) ............................................................4

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

Plaintiffs file this Opposition to Defendant American Airlines Inc.'s ("Defendant" or "American") Motion to Dismiss Plaintiffs' First Amended Complaint for Lack of Personal Jurisdiction and for Failure to State a Claim [Dkt. 31] and its Memorandum of Law in Support [Dkt. 31-1] (the "Motion") and respectfully show the Court as follows:

## INTRODUCTION

American's Motion is without merit. This case is governed by the Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on May 28, 1999 ("Montreal Convention" or "Convention"). In theory, the Convention was designed with a series of trade-offs to promote consistency and reduce (or eliminate) protracted litigation involving international travel. Among other things, the Convention provides a strict liability regime for carriers up to a certain dollar amount, requires them to carry liability insurance, and eliminates their exposure to punitive damages. Montreal Convention, Art. 21(1); 29; 50. In exchange, passengers are provided with a measure of security and, in the event of litigation, are expressly permitted to bring suit in the "place of business through which the contract has been made" or "in the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence." Montreal Convention, Art. 33(1)-(2). But as its Motion demonstrates, American uses ticketing and litigation tactics to try to claim the benefits of the Convention while rejecting its burdens.

First, this Court has specific personal jurisdiction over American because the airline purposely availed itself to jurisdiction in California by issuing and operating an itinerary for Plaintiffs to travel internationally from San Francisco to Madrid. First Amended Complaint ("FAC") ¶¶ 21–28. American's Conditions of Carriage expressly incorporate the Convention, contractually binding the parties to it. ¶ 31.[1] But for their contractual arrangement with American Airlines, Plaintiffs would have never been on an American aircraft. The fact that there are multiple flights in the itinerary is irrelevant, as

---

[1] "¶" references are to paragraphs of the First Amended Complaint, Dkt. 24 ("FAC").

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

is the fact that Plaintiffs used a travel agency to book their flights. As this Court has previously held, it is the passenger's overall itinerary and not each individual flight segment that governs the applicability of the Convention. The same is true for the exercise of specific personal jurisdiction. Having expressly issued and operated an international itinerary under the Convention originating from San Francisco, American purposely availed itself to the benefits of the Convention for **all** portions of that itinerary, including domestic flight segments. This affirmative selection of the Convention, not the Convention itself, constitutes the purposeful availment to specific personal jurisdiction in California for Convention related claims. To hold otherwise is to turn the concept of purposeful availment and the law of personal jurisdiction on its head.

Second, the Motion's argument to dismiss Plaintiffs' Count III Breach of Contract for failure to state a claim fairs no better. American violated its contract with Plaintiffs by contesting jurisdiction in this Court and by failing to tender an advance payment to Plaintiffs under the terms mandated by its own Conditions of Carriage. Plaintiffs' Amended Complaint adequately alleges facts to support both of these claims—at the pleadings stage and beyond. Moreover, American attempts to improperly introduce evidence in the form of an airline employee declaration to challenge Plaintiffs' contract claims on Rule 12(b)(6) grounds. The Court may either exclude this premature evidence or convert Defendant's Rule 12(b)(6) motion into a Rule 56 motion for summary judgment and afford Plaintiffs discovery and the opportunity to properly contest it. But more fundamentally, American's submission of evidence to buttress a motion to dismiss "without leave to amend" (Dkt. 31-2) coupled with its motion to stay all discovery (Dkt. 36-1) is emblematic of American's "heads I win, tails you lose" approach to claims.

Defendant's Motion should be denied in its entirety.

## FACTUAL BACKGROUND

On November 8, 2021, Plaintiffs embarked on a flight itinerary under American Airlines Confirmation Number DDREBL to fly internationally from San Francisco International Airport to Adolfo Suarez Madrid-Barajas Airport. ¶ 21. Plaintiffs are

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

California residents who purchased tickets in California to fly internationally from California to Spain. ¶¶ 23–24. Plaintiffs' itinerary included American Airlines Flight 369 from SFO to Miami International Airport, an approximate two-hour layover in MIA, and American Airlines Flight 68 from MIA to MAD. ¶ 22. With respect to Plaintiffs, American operated Flights 369 and 68 as a single operation. ¶ 36; FAC Exhibit 4 at 11–12; 54. While traveling on this itinerary, Plaintiffs were seriously and permanently injured. ¶¶ 77–79.

Plaintiffs' international voyage with American was subject to the airline's Conditions of Carriage. ¶ 29; FAC Exhibits 2–3. American's Conditions of Carriage incorporate both the Montreal Convention and the American Airlines General Rules of the International Tariff. ¶¶ 31–34; FAC Exhibit 2 at 1; 4 ("All transportation of passengers and bags provided by American Airlines is subject to the terms of these Conditions of Carriage . . . All terms, fare rules, and tariffs are incorporated herein by reference and constitute part of your agreement with American Airlines . . . For international travel, the Warsaw Convention and the Montreal Convention govern liability for personal injury, death or damage. The terms and conditions are set by these international conventions and are not subject to change or modification by American Airlines.") (emphasis added); FAC Exhibit 4.

Under the terms of Plaintiffs' "agreement with American Airlines" (FAC Exhibit 2 at 1), "in cases of bodily injury or death, the carrier shall make an advance payment where the carrier determines it is necessary to meet the immediate economic needs of, and hardship suffered by, a passenger . . . Unless a dispute arises over the identity of the person to whom an advance payment shall be made, the Carrier shall, without delay, make the advance payment to the Passenger in an amount or amounts determined by the Carrier." ¶ 120; FAC Exhibit 3 at 1; FAC Exhibit 4 at 55. Pursuant to the parties' contract, Plaintiffs' provided Defendant with detailed information that unequivocally established Plaintiffs' immediate economic needs and financial hardship. ¶¶ 81–84. Defendant determined that the full value of the special drawing rights was necessary to meet

Plaintiffs' needs but failed to make any advance payment in violation of the parties' contract. ¶¶ 85–87.

**LEGAL STANDARD**

**A.     Standard of Review Under Rule 12(b)(2).**

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff must demonstrate that jurisdiction is appropriate. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). In resolving a motion challenging personal jurisdiction at the pleadings stage and absent an evidentiary hearing, a plaintiff need "only make a prima facie showing." *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1064 (S.D. Cal. 2019). "In assessing personal jurisdiction, the plaintiff 'need only demonstrate facts that if true would support jurisdiction over the defendant.'" *Id.* (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)). Any factual disputes "must be resolved in the plaintiff's favor." *Bugarin v. All Nippon Airways Co.*, 513 F. Supp. 3d 1172, 1185 (N.D. Cal. 2021). A federal court in California can exercise personal jurisdiction over a non-resident defendant to the full extent permissible under the U.S. Constitution. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); Cal. Code Civ. Proc. § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").

**B.     Standard of Review Under Rule 12(b)(6).**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). While they have done so here, Plaintiffs are <u>not</u> required to plead "detailed factual allegations" to state their claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Erickson*, 551 U.S. at 93. Plaintiffs need only set forth enough facts to state claims that are facially plausible. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1123 (9th Cir. 2008). "Indeed, it may appear on the face of the pleadings that recovery is very remote and unlikely but that is not the test." *Id.* (citation omitted). The test calls for "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (citation omitted). The Court accepts all allegations as true, considers them as a whole, and draws all reasonable inferences in the plaintiff's favor. *Association for L.A. Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011).

## ARGUMENT

### A. This Court Has Specific Jurisdiction Over American Airlines, and Defendant Has Waived Any Argument to the Contrary.

This Court has specific jurisdiction over American because Plaintiffs' injuries arise out of the airline's California activities—specifically, its operation of Plaintiffs' international itinerary from California to Madrid. Moreover, American has waived personal jurisdiction by explicitly incorporating the Montreal Convention—which authorizes Plaintiffs to file suit in the forum where the parties' contract was made or where Plaintiffs reside—into Plaintiffs' contract via American's Conditions of Carriage.

### 1. This Court Has Specific Jurisdiction Over American.

The Ninth Circuit uses a three-prong test to determine whether a court can exercise specific jurisdiction over a non-resident defendant: (1) the defendant must purposefully direct activities to the state; (2) the claim must arise out of or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden on the first two prongs; then, the burden "shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* Here, the Court has specific jurisdiction because 1) American concedes that "it purposefully availed itself of the privileges of conducting activities in California" (Dkt. 31-1 at 6) by operating international travel like Plaintiffs' itinerary from the state (the first prong); and 2) the Amended Complaint establishes that Plaintiffs' claims arise out of American's California activities (the second prong).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

### a) Plaintiffs' Claims Arise out of American's California Activities Because Plaintiffs Were Injured While Traveling from California to Spain.

To determine if a plaintiff's claim arises out of or relates to the defendant's forum-related activities, "the Ninth Circuit follows the 'but for' test." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007) (citation omitted). Under the "but for" test, Plaintiffs must show that they would not have been injured "but for" Defendant's California-related conduct. Plaintiffs easily meet this standard here. American issued tickets to California residents for international travel from California and operated Plaintiffs' itinerary out of SFO. ¶¶ 21–28; FAC Exhibit 1. While traveling, Plaintiffs were seriously and permanently injured. ¶¶ 77–79. <u>But for</u> American Airlines operating Plaintiffs' international trip from California, Plaintiffs would not have been injured. *See, e.g.*, *Bugarin*, 513 F. Supp. 3d at 1187 ("Bugarin argues that "but for" ANA's forum-related activities, in particular <u>operating</u> the flight for which she purchased a ticket and entering into a contractual relationship with her through the COC, she would not have suffered injury. The Court agrees.") (emphasis added).

### b) American Issued and Operated an International Itinerary for Plaintiffs to Travel from California to Spain.

In an attempt to break the causal link between its California activities and Plaintiffs' claims, American argues that it "did not sell or issue tickets to Plaintiffs" because Plaintiffs booked their trip through a travel agency. Dkt. 31-1 at 7–8. Defendant's focus on the agency is a meaningless distraction. American does not allege that the travel agent acted outside the scope of its authority in selling Plaintiffs tickets on behalf of American, nor does it dispute that American entered into a contractual relationship with Plaintiffs. American also does not dispute the fact that it operated a single international itinerary for Plaintiffs to travel from California to Spain—the crucial factual allegation that authorizes jurisdiction. Moreover, Plaintiffs' allegations and evidence establish that American not only <u>operated</u>, but also <u>issued</u> Plaintiffs' California-based itinerary. For example, Exhibit 1 to the Amended Complaint shows that Plaintiffs' California-Spain itinerary was issued

6

under a single <u>American Airlines confirmation number</u>: DDREBL. Dkt. 24, Exhibit 1 at 3 ("Airline confirmation number(s): American Airlines DDREBL"). And Defendant's evidence does not refute this; rather, it <u>confirms</u> that Plaintiffs' trip from California to Spain was all part of one connected American itinerary. Dkt. 31-1, Exhibit C (listing flights from SFO to MIA, MIA to MAD, BCN to JFK, and JFK to SFO as part of single "historical ticket"). American's issuance and operation of the international itinerary, not the location of its aircraft, is the salient jurisdictional inquiry.

Defendant only (mis)cites two cases to support its proposition that it did not issue Plaintiffs' tickets, neither of which have any bearing on this case:

∗    *Cardenas v. American Airlines*, 2018 WL 6503658 (S.D. Cal. December 11, 2018). Defendant cites *Cardenas* for the proposition that "the issuance of the boarding passes is 'too attenuated' to [Plaintiffs'] injuries and damages to satisfy the 'but for' test." Dkt. 31-1 at 7–8. But *Cardenas* involved a personal jurisdiction challenge by an American Airlines <u>employee</u>—Anthony Redelfs—who got into an altercation with a passenger in Texas. The passenger, an Arizona resident, sued Redelfs in California. The court determined it did not have personal jurisdiction over the security officer—<u>not the airline</u>—because he lived in Colorado and had fought with the passenger in Texas. Further, the *Cardenas* San Diego to Washington D.C. trip (with a Dallas layover) was a <u>domestic</u> itinerary not governed by the Montreal Convention or Defendant's International Tariff. American does not contest that its International Tariff No. AA1 governs all <u>international</u> travel and explicitly states that international carriage between multiple locations "<u>is regarded as a single operation</u>." FAC Exhibit 4 at 11–12. Therefore, any "attenuation" between the *Cardenas* plaintiff's California port of origin and subsequent <u>domestic</u> destinations cannot be extrapolated to the <u>international</u> context that is governed by a very different set of rules and laws.

∗    *Burton v Air France- KLM*, 2020 WL 7212566 (D. Oregon Dec. 7, 2020). Defendant cites *Burton* for the proposition that "conclusory allegations of agency connection between airline and travel agent were insufficient to allow exercise of specific

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

jurisdiction over the airline." Dkt. 31-1 at 8. Of course, Plaintiffs do not rely on any allegations of agency connection to establish jurisdiction. Moreover, the facts and legal issues in *Burton* make it inapposite to this case. The *Burton* plaintiff traveled on Air France from Montreal, Canada to Paris, France. After the plaintiff was hurt by a piece of luggage falling from the overhead bin, she sued Air France in Oregon state court. The airline removed the case and successfully argued that the Oregon federal court lacked personal jurisdiction over it. The court agreed. Because Air France "does not operate any flights into or out of Oregon," it had not "purposefully avail[ed] [it]self of the privileges of conducting activities in the forum" sufficient to satisfy the first prong of the Ninth Circuit specific jurisdiction test—the very prong that American Airlines has already conceded here. Dkt. 31-1 at 6 ("AA does not contest that it purposefully availed itself of the privileges of conducting activities in California."). Here, not only does American avail itself of the privileges of doing business in California by operating flights into and out of the state (prong one), American also operated from California the very international itinerary on which Plaintiffs were injured (prong two).

### c) American's Operation of Plaintiffs' Itinerary from California Confers Specific Jurisdiction over the Airline.

Finally, Defendant argues that the "origination of Plaintiffs' travel in California is insufficient to confer specific jurisdiction." Dkt. 31-1 at 8. But American's attempt to splice Plaintiffs' single international itinerary into multiple legs to sever the case's connection with California is refuted by its own Tariff, at odds with its prior legal positions in this Court, and legally wrong.

Plaintiffs establish—and Defendant does not dispute—that under American Airlines Tariff No. AA1, international carriage between multiple locations "is regarded as a single operation." FAC Exhibit 4 at 11–12; 54 ("Carriage to be performed under one ticket or under a ticket with any conjunction ticket issued in connection therewith by several successive carriers is regarded as a single operation.") (emphasis added). The text of the Montreal Convention and the caselaw interpreting the treaty state the same. Carriage is "international" under the Montreal Convention when "the place of departure and the

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

place of destination, <u>whether or not there be a break in the carriage</u>, are situated within the territories of two States Parties." Montreal Convention, Art. 1(2) (cleaned up) (emphasis added). It is therefore without question that a domestic leg of an international trip falls within and is covered by the Montreal Convention. *See Zhang v. Air China Ltd.*, 866 F. Supp. 2d 1162, 1167 (N.D. Cal. 2012); *Kruger v. United Air Lines, Inc.*, 2007 WL 3232443, at *3 (N.D. Cal. Nov. 1, 2007). "The dispositive determinant in resolving whether a domestic flight is part of international carriage is the intent of the parties to enter into an agreement for international carriage." *Zhang*, 866 F. Supp. 2d at 1167 (citing *Coyle v. P.T. Garuda Indonesia*, 363 F.3d 979, 987 (9th Cir. 2004)).

Here, Plaintiffs boarded an American flight in California for same-day travel to Spain on a single international itinerary. ¶¶ 21–22; FAC Exhibit 1. While traveling on this itinerary, Plaintiffs were catastrophically and permanently injured. ¶¶ 77–80. Plaintiffs' same-day trip from San Francisco to Madrid was issued under a single American Airlines confirmation number: DDREBL. ¶ 21; FAC Exhibit 1 at 3 ("Airline confirmation number(s): American Airlines DDREBL"); Dkt. 31-1, Exhibit C (listing flights from SFO to MIA, MIA to MAD, BCN to JFK, and JFK to SFO as part of single "historical ticket"). Plaintiffs indisputably embarked on a single international itinerary to travel on American from California to Madrid. ¶ 21. American's use of two flights for this itinerary is immaterial because American's Tariff makes these flights "<u>a single operation</u>" under the Montreal Convention. FAC Exhibit 4 at 11–12; 54. And having operated Plaintiffs' itinerary under the Convention from San Francisco, American purposely availed itself to specific personal jurisdiction in California for <u>any</u> Convention claims arising from Plaintiffs' trip. American cannot now strategically sever the connected legs of Plaintiffs' journey to avoid personal jurisdiction in this Court.

Defendant's new self-serving theory conflicts with the prior legal positions it has taken in this Court. In *Cattaneo v. Am. Airlines, Inc.*, American argued the Montreal Convention governed a passenger's claims for injuries that occurred during a domestic flight from Dallas to Los Angeles because "Mexico was the place of departure and the

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

United States was the place of destination . . . Even if the alleged injury occurred on a domestic leg (Dallas to Los Angeles) of an international trip, the Montreal Convention still applies." *Cattaneo v. Am. Airlines, Inc.*, 2015 WL 9192408 (N.D. Cal. Apr. 23, 2015). This Court agreed: "[T]he question presented by Defendant's motion is whether it appears on the face of the complaint that the last leg of Plaintiff's journey, from DFW to LAX, constituted "international carriage" within the meaning of the Montreal Convention. The answer to that question is yes. Plaintiff boarded an American Airlines flight in Cozumel for same-day travel to Los Angeles, with a layover of approximately three hours at DFW." *Cattaneo v. Am. Airlines, Inc.*, 2015 WL 5610017, at *2 (N.D. Cal. Sept. 24, 2015).

Like the *Cattaneo* itinerary, Plaintiffs' itinerary for same-day travel from California to Madrid is a <u>single</u> international itinerary that is connected and fully covered by the Montreal Convention. By issuing and operating this <u>single</u> itinerary originating in California, American availed itself to personal jurisdiction in California for <u>any</u> Convention claims that arise from it. Stated differently, American is free to issue and operate itineraries in the order and in a manner that it sees fit. But it cannot use these practices to keep the benefits of international law on the one hand while discarding the burdens with the other. American could have issued and operated separate itineraries to Plaintiffs for each flight, with domestic law governing the first and the Convention governing the second. It did not. *Cf.*, *Zhang*, 866 F. Supp. 2d at 1168 (Montreal Convention did not apply to domestic segment where domestic and international flights were purchased separately by different individuals using different credit cards); *Kruger*, 2007 WL 3232443, at *4 (Montreal Convention did not apply to domestic segment where domestic and international flights were purchased separately from different carriers using different websites and separated by a multi-day layover). By purposefully availing itself to the benefits of the Convention by contracting to conduct these flights as "single operation" (FAC, Exhibit 4, 11-12; 54), American purposefully availed itself to personal jurisdiction in California.

Finally, the only two cases Defendant cites are inapposite to Plaintiffs' case:

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

∗ *Meirer v. Scandinavian Airlines Sys.*, 2021 WL 148240 (N.D. Cal. Jan. 15, 2021). Defendant cites *Meirer* for the proposition "no personal jurisdiction in California over airline which failed to divert - to Iceland - international flight from California to Copenhagen to allow plaintiff to seek medical treatment for suspected stroke occurring airborne close to Iceland." Dkt. 31-1 at 10. In fact, the airline that operated the *Meirer* plaintiff's international itinerary from California to Iceland—Scandinavian Airlines System—did not contest jurisdiction. The airline's co-defendant, Scandinavian Airlines of North America, Inc.—a subsidiary that had zero connection to the plaintiff's flight—contested jurisdiction in California on the basis that it had no connection to the state.

∗ *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790 (N.D. Cal. 2020). Defendant cites *Vallarta* for the proposition "no personal jurisdiction over claims based on defendant's forum related conduct causing injuries outside of forum." Dkt. 31-1 at 10. The *Vallarta* plaintiffs filed a class action against United Airlines for having an undisclosed financial interest in the third-party travel insurance it encourages all travelers to purchase. United did not contest personal jurisdiction in California for the adjudication of California class members' claims, only for Connecticut class members' Connecticut law claims.

**2.** **American Waived Personal Jurisdiction by Incorporating the Montreal Convention into its Conditions of Carriage.**

Because personal jurisdiction is waivable, a party can expressly or impliedly waive it through contract. *Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 588 (N.D. Cal. 2022); *see also B&Z Galvanized Indus., Inc. v. Innovative Fabrication, LLC*, 2021 WL 6496808, at *2 (C.D. Cal. Mar. 3, 2021) ("[T]he waiver of personal jurisdiction [] can be either explicit or implicit."); *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704–05 (1982) ("The actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not."). Here, the Court not only has jurisdiction over American because Plaintiffs' claims relate to Defendant's California activities, but also because American waived personal jurisdiction by incorporating the

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

Convention—which allows Plaintiffs to sue in the forum where they reside—into its Conditions of Carriage and thereby into Plaintiffs' contract.

Defendant's Conditions of Carriage, available on the American website, govern all American flights: "All transportation of passengers and bags provided by American Airlines is subject to the terms of these Conditions of Carriage . . . All terms, fare rules, and tariffs are incorporated herein by reference and constitute part of your agreement with American Airlines." ¶ 29; FAC Exhibit 2 at 1. With respect to "[l]iability for international flights," the Conditions incorporate the terms of the Montreal Convention: "For international travel, the Warsaw Convention and the Montreal Convention govern liability for personal injury, death or damage. The terms and conditions are set by these international conventions and are not subject to change or modification by American Airlines. These conventions set compensation amounts for death, injury and baggage loss and damage." ¶ 31; FAC Exhibit 2 at 4. Article 33 of the Montreal Convention provides that "an action for damages must be brought, <u>at the option of the plaintiff</u>, in the territory of one of the States Parties . . . before the court of" 1) the carrier's domicile, 2) the carrier's principal place of business, 3) the place where the contract was made, 4) the place of destination, or 5) <u>in cases involving passenger death or injury, the passenger's principal and permanent residence</u> (emphasis added).

Confronted with the plain text of the Montreal Convention and its own Conditions that embrace it, American now advances two problematic arguments:

<u>First</u>, American argues its terms and conditions do not, in fact, incorporate the Montreal Convention "in its entirety – or at all." Dkt. 31-1 at 11 (emphasis added). But this directly conflicts with the unequivocal language of the Conditions: "All terms, fare rules, and tariffs are <u>incorporated</u> herein by reference and constitute part of your agreement with American Airlines . . . <u>For international travel, the Warsaw Convention and the Montreal Convention govern liability for personal injury, death or damage</u>." FAC Exhibit 2 at 1; 4 (emphasis added). American also halfheartedly suggests that Article 33 of the Convention (which authorizes suit in an injured plaintiff's home forum) is conveniently

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

not part of the Conditions because "neither the Conditions of Carriage nor AA's summary mention Article 33" specifically. Dkt. 31-1 at 11. This argument is nonsensical because the Conditions unequivocally embrace the entire Montreal Convention and provide no indication that American has modified its terms or cherry-picked only the airline-favoring portions of the treaty (as it now claims). In fact, the Conditions expressly foreclose the exact argument American now advances: "The terms and conditions are set by these international conventions and are not subject to change or modification by American Airlines." FAC Exhibit 2 at 4 (emphasis added). After mandating that the Montreal Convention governs all international travel on American Airlines, American cannot now assert that only the airline-favoring provisions of the treaty actually apply.

Second, American argues that even if it did incorporate the Montreal Convention into its Conditions of Carriage (it did), the Montreal Convention "speaks only to subject matter jurisdiction." Dkt. 31-1 at 11. Of course, courts have concluded that Article 33, standing alone, is sufficient to confer subject matter jurisdiction but not necessarily personal jurisdiction. *See, e.g.*, *Diab v. Brit. Airways, PLC*, 2020 WL 6870607, at *3 (E.D. Pa. Nov. 23, 2020). But it is American's conduct, not the Convention, that establishes personal jurisdiction here. By actively and explicitly incorporating the Convention into its Conditions of Carriage—and thereby into Plaintiffs' contract—American agreed to litigate Convention claims in any of the forums authorized by the treaty, including where an injured plaintiff principally and permanently resides. American cannot break that agreement simply to secure a litigation advantage.

### B. Plaintiffs Sufficiently Plead Breach of Contract Claims by Alleging that American Contested Jurisdiction and Failed to Tender Advance Payment in Violation of the Parties' Contract.

In addition to challenging the Court's jurisdiction under Rule 12(b)(2), American also moves to dismiss Plaintiffs' Count III Breach of Contract claims under Rule 12(b)(6). But Plaintiffs' Amended Complaint adequately alleges sufficient facts to support both Plaintiffs' contractual repudiation and nonperformance claims. Moreover, because Defendant improperly introduces factual evidence in the form of an employee declaration,

the Court may either exclude Defendant's evidence or convert its Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment.

### 1. Plaintiffs Allege Facts to Support Their Repudiation Claim.

American attempts to do away with Plaintiffs' contractual repudiation claim in a single sentence that contains zero case citations or legal analysis. Dkt. 31-1 at 12. But Plaintiffs' well-pleaded allegations regarding American's repudiation of the parties' contract more than state a "facially plausible" claim. *Johnson*, 534 F.3d at 1123. As alleged in the Amended Complaint, American (1) contracted with Plaintiffs to litigate any Montreal Convention claims in California where Plaintiffs reside; and (2) repudiated the parties' contract by contesting jurisdiction in this Court. ¶¶ 128; 130–135; *see also* Dkt. 21-1 (Defendant contesting jurisdiction); Dkt. 31-1 (Defendant contesting jurisdiction). Plaintiffs' allegations are not conclusory—to the contrary, Plaintiffs cite to specific provisions in both the Montreal Convention and American's own Conditions of Carriage to support their repudiation claim. ¶¶ 127–130; FAC Exhibit 4 at 12. Plaintiffs' contractual repudiation claim is more than sufficient to survive the pleadings stage.

### 2. Plaintiffs Allege Facts to Support Their Nonperformance Claim.

Defendant also attempts to dismiss Plaintiffs' contractual nonperformance claim on Rule 12(b)(6) grounds. Each of its arguments fail.

<u>First</u>—and almost incredibly in the face of Plaintiffs' exhibits demonstrating the contrary—American claims that its "Conditions of Carriage does not incorporate" the provision "In cases of bodily injury or death, the carrier shall make an advance payment . . ." Dkt. 31-1 at 13. But American's Conditions blatantly state exactly the opposite. FAC Exhibit 2 at 1 ("All terms, fare rules, and tariffs are <u>incorporated</u> herein by reference and constitute part of your agreement with American Airlines.") (emphasis added); FAC Exhibit 3 at 1 ("In cases of bodily injury or death, the Carrier shall make an advance payment where the Carrier determines it is necessary to meet the immediate economic needs of, and hardship suffered by, a Passenger."); FAC Exhibit 4 at 55 (same).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

Second, American improperly introduces factual evidence in the form of a self-serving employee declaration. Dkt. 31-1 at 13. But it is hornbook law that "factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (reversing dismissal of plaintiffs' claims when district court's decision "was rooted in defendants' factual assertions"); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) ("Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."). The Court may therefore either exclude Defendant's evidence or convert Defendant's Motion into a Rule 56 motion for summary judgment. Fed. R. Civ. P. 12(d).

Third, American incorrectly categorizes the advance payment it owes to Plaintiffs as "discretionary." Once again, the text of American's own Conditions of Carriage belies Defendant's argument: "In cases of bodily injury or death, the Carrier shall make an advance payment where the Carrier determines it is necessary to meet the immediate economic needs of, and hardship suffered by, a Passenger . . . Unless a dispute arises over the identity of the person to whom an advance payment shall be made, the Carrier shall, without delay, make the advance payment to the Passenger in an amount or amounts determined by the Carrier in its sole discretion." FAC Exhibit 3 at 1 (emphasis added); *see also* FAC Exhibit 4 at 55 (same). A cursory reading of these provisions confirms the obvious—once American determines that the injured passenger is suffering from immediate economic need and financial hardship, American must make an advance payment. And while the amount of the payment is subject to American's discretion, the payment itself is not. Here, Plaintiffs explicitly allege: (1) they provided Defendant with information conclusively establishing their extreme economic hardship; (2) American determined that an advance payment was necessary to meet Plaintiffs' immediate economic needs; and (3) American nevertheless refused to make any payment to Plaintiffs. ¶¶ 81–87. Because American apparently disputes these underlying facts, the parties need the opportunity to explore them during fact discovery.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

Defendant's misstatement (and misapplication) of a few Texas cases does not help its argument. On the contrary, they demonstrate why American's motion is meritless:

∗  *Farmer v. Ben E. Keith Co.*, 919 S.W.2d 171 (Tex. App.—Fort Worth 1996, no writ). Defendant cites *Farmer* for the proposition "employer's failure to make discretionary payment to employee was not a breach of contract." Dkt. 31-1 at 13. In fact, on a motion for summary judgment, the *Farmer* court <u>considered the facts</u> submitted by both sides and determined that the defendant did, in fact, make payments to the plaintiff employee: "Farmer's deposition testimony reflects that she did, in fact, receive disability benefits checks, 75% of her normal pay as established by the handbook . . . Moreover, in his uncontroverted affidavit, Keith employee Hawkins states that he determine[s] whether a lump sum amount will be tendered to an employee, and if so, how much." *Farmer*, 919 S.W.2d at 177 (internal quotations omitted). In *Farmer*, unlike here, the disbursement of <u>any</u> payment was entirely discretionary. And in *Farmer*, unlike here, the plaintiff <u>did</u>, in fact, receive a payment. Here, American does not (and cannot) assert that it made any sort of payment to Plaintiffs. And even if it did (it did not), that would be factual evidence not appropriate for consideration at the pleadings stage.

∗  *Stinger v. Stewart & Stevenson Servs., Inc.*, 830 S.W.2d 715 (Tex. App.—Houston [14th Dist.] 1992, writ denied). Defendant cites *Stinger* for the proposition that a "contract stating 'you will be paid' did not convert otherwise discretionary payment into mandatory contractual provision; failure to make discretionary payment not contractual breach." Dkt. 31-1 at 13. Following full discovery and trial testimony from both sides, the *Stinger* court entered a directed verdict in favor of an employer who declined to make a discretionary sales commission payment. Unlike American's contract with Plaintiffs that mandates American "<u>shall</u>" make an advance payment "in an <u>amount</u> . . . determined by the Carrier," the *Stinger* employee's arrangement explicitly stated that his sales commission arrangement "may be modified or changed upwards or downwards at any time at the Company's discretion." *Stinger*, 830 S.W.2d at 717–19. American's contract with Plaintiffs contains no such provision. Moreover, the parties have not had the

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

opportunity to take discovery on the facts surrounding American's contractual nonperformance, which the *Stinger* court relied on to issue a directed verdict.

∗ *Crane v. Rave Rest. Group, Inc.*, 552 F. Supp. 3d 692 (E.D. Tex. 2021). Finally, Defendant cites *Crane* for the proposition that "'just because a provision contains the word 'shall' does not mean the object of the provision – here, the executive bonus plan bonuses-is mandatory' where the amount of the bonus was discretionary." Dkt. 31-1 at 13–14. Once again, Defendant misstates the facts and holding of the case. The *Crane* plaintiff sued his former employer for wrongful termination and failure to pay his discretionary bonus. <u>Following discovery</u>, the court granted the employer's summary judgment motion with respect to the bonus claim because the employee's contract stated "In addition to your Base Annual Salary, <u>you shall be eligible</u> to participate in the Company's executive bonus plan, which is typically based on the Company's financial performance and strategic goals relative to targets set by the Board of Directors." *Crane*, 552 F. Supp. 3d at 703–04. Unsurprisingly, the court relied on the language stating that the plaintiff would be <u>eligible</u> to participate in the company's bonus program to determine that the plaintiff was not, in fact, unequivocally entitled to a bonus. *Id.* at 704.

Plaintiffs allege—and are prepared with evidence to support their allegations—that Defendant determined an advance payment was necessary to meet Plaintiffs' immediate economic needs but nevertheless refused to make <u>any</u> payment to Plaintiffs. ¶¶ 85–87. Far from indicating that Plaintiffs' contract claim can be resolved at the pleadings stage, each of Defendant's cases confirms that a careful examination of the <u>facts</u> following fulsome discovery is required.

<u>Fourth</u>, and with no sense of irony, American makes a last-ditch effort to dismiss Plaintiffs' nonperformance claim on the grounds that the contract is preempted by the Montreal Convention. Dkt. 31-1 at 14. It is not. While the Convention preempts common law negligence claims, the caselaw (none of which Defendant cites) is abundantly clear that the Convention does <u>not</u> preempt contractual nonperformance claims. *See, e.g.*, *Nankin v. Continental Airlines, Inc.*, 2010 WL 342632, at *7 (C.D. Cal. Jan. 29, 2010)

(holding that Montreal Convention was not applicable to plaintiffs' claims because airline refused to perform the contract); *Mullaney v. Delta Air Lines, Inc.*, 2009 WL 1584899, at \*3 (S.D.N.Y. June 3, 2009) (holding plaintiff's breach of contract claim was not preempted by Montreal Convention because plaintiff was "seeking damages resulting from Delta's . . . failure to perform its obligation"); *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 455 (E.D.N.Y. 2007) (holding plaintiffs' breach of contract claims fell outside the scope of Montreal Convention because "the plain language of Article 19 of the Montreal Convention indicates that it governs claims for delay, not nonperformance"); *Weiss v. El Al Israel Airlines, Ltd.*, 433 F. Supp. 2d 361, 369 (S.D.N.Y. 2006) (holding plaintiffs' claims were not preempted by Montreal Convention because they were "grounded in a cause of action for non-performance of a contract"). Here, Plaintiffs allege that American failed to perform its contract with Plaintiffs when it did not tender advance payment after determining that doing so was necessary to meet Plaintiffs' "immediate economic need." ¶¶ 84–87. As a result of American's nonperformance, Plaintiffs incurred and continue to suffer damages. ¶ 126. The Montreal Convention is <u>not</u> applicable to and does <u>not</u> preempt Plaintiffs' nonperformance claim. *Nankin*, 2010 WL 342632, at \*7 ("Based on plaintiffs' allegations, it clearly appears that, through its employees, Continental refused to perform the contract. The Montreal Convention is thus not applicable to plaintiffs' claims.").

### 3. The Court May Exclude Defendant's Evidence or Treat its Rule 12(b)(6) Motion as a Rule 56 Motion for Summary Judgment.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios*, 896 F.2d at 1555 n. 19. When "matters outside the pleading are presented to and not excluded by the court," a Rule 12(b)(6) motion is to "be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(d). There are only "two exceptions to the requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion." *Lee*, 250 F.3d at 688. First, a court may consider

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

material that is submitted as part of the complaint. *Id*. Second, a court may take judicial notice of matters of public record. *Id.* at 689. Here, American introduced evidence in the form of an employee declaration. Dkt. 31-1 at 13. This premature evidence does not satisfy either exception—the declaration was not part of Plaintiffs' complaint, and it is not a matter of public record. The Court may therefore exclude the declaration or convert American's Rule 12(b)(6) challenge into a Rule 56 motion for summary judgment. If the Court converts American's Motion into a summary judgment motion, Plaintiffs respectfully request the opportunity to conduct discovery on and present all pertinent material (including but not limited to the deposition testimony of Debra Shaffer[2]). Fed. R. Civ. P. 12(d). [3]

## CONCLUSION

American's Motion should be denied in full. If the Court believes there is any genuine issue of material fact regarding whether Plaintiffs' claims arise out of Defendant's California activities, Plaintiffs respectfully request that the Court order the parties to engage in jurisdictional discovery and hold an evidentiary hearing on the same. If the Court converts Defendant's Rule 12(b)(6) challenge into a Rule 56 motion for summary judgment, Plaintiffs respectfully request the opportunity to conduct discovery on and present all material pertinent to the parties' contract and Defendant's proffered evidence. Plaintiffs also explicitly reserve the right to seek their costs and attorney's fees associated with any jurisdictional discovery and evidentiary hearing. If the Court grants any aspect

---

[2] Plaintiffs have requested from Defendant the availability of Ms. Shaffer for deposition pursuant to Civil Local Rule 30-1.

[3] American's one-sided submission of factual evidence at the pleadings stage also forecloses the relief it requested in its most recent motion asking the Court to stay discovery because "no discovery is needed to oppose the Motion to Dismiss." Dkt. 36-1 at 6. Plaintiffs oppose Defendant's Motion to Stay (Dkt. 36-1) on this and other grounds, and will submit their opposition on February 7, 2024 in accordance with the Local Rules.

of Defendant's motion, Plaintiffs respectfully request leave to amend under Rule 15.

Dated: January 30, 2024                    Respectfully submitted,


                                           By: __/s/ Hannah M. Crowe_____
                                           Darren P. Nicholson (p*ro hac vice*)
                                           dnicholson@burnscharest.com
                                           Hannah M. Crowe (p*ro hac vice*)
                                           hcrowe@burnscharest.com
                                           **BURNS CHAREST LLP**
                                           900 Jackson Street, Suite 500
                                           Dallas, TX 75202
                                           Telephone: (469) 904-4550

                                           Sanjiv N. Singh (State Bar No. 193525)
                                           ssingh@sanjivnsingh.com
                                           **SANJIV N. SINGH, APLC**
                                           1700 South El Camino Real, Suite 503
                                           San Mateo, CA 94402
                                           Telephone: (650) 389-2255

                                           *Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

## CERFICATE OF SERVICE

I hereby certify that on January 30, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.

Timothy K. Daveler
Timothy.daveler@bipc.com
BUCHANAN INGERSOLL & ROONEY LLP
One America Plaza
600 West Broadway, Suite 1100
San Diego, CA 92101

Kelly H. Kolb
kelly.kolb@bipc.com
Robert Pecchio
Robert.pecchio@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
401 E. Las Olas Blvd., Suite 2250
Fort Lauderdale, FL 33301

*/s/ Hannah M. Crowe*
Hannah M. Crowe