KELLY H. KOLB (admitted *Pro Hac Vice*)
kelly.kolb@bipc.com
ROBERT PECCHIO (admitted *Pro Hac Vice*)
Robert.pecchio@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
401 E. Las Olas Blvd., Suite 2250
Fort Lauderdale, FL 33301
Telephone:  954-703-3944
Attorneys for Defendant
AMERICAN AIRLINES, INC

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA MARIA MARCELA TAVANTZIS, as an individual, and as Legal Guardian of JESUS PLASENCIA, an incapacitated person,<br><br>Plaintiffs,<br><br>vs.<br><br>AMERICAN AIRLINES, INC.,<br><br>Defendant. | Case No.: 5:23-cv-05607-EKL-SVK<br><br>**JOINT STATEMENT REGARDING AMERICAN AIRLINES, INC.'S MOTION TO COMPEL MENTAL EXAMINATION OF PLAINTIFF TAVANTZIS ON OCTOBER 11, 2024**<br><br>Crtrm: 6 – 4th Floor<br>Judge: Hon. Susan van Keulen<br><br>Complaint Filed: October 31, 2023 |

JOINT STATEMENT REGARDING AA'S MOTION TO COMPEL RULE 35 EXAMINATION

Defendant American Airlines, Inc. ("**AA**") and Plaintiffs, Ana Maria Marcela Tavantzis ("**Tavantzis**"), as an individual and Legal Guardian of Jesus Plasencia, ("**Plasencia**"), an incapacitated person, respectfully submit this joint discovery statement regarding AA's Motion to Compel Rule 35 Mental Examination of Tavantzis.

## CLOSE OF DISCOVERY AND TRIAL DATES

The close of discovery is December 10, 2024 (approximately 63 days remaining), and trial is scheduled for June 26, 2025 (approximately 261 days remaining).

## DEFENDANT'S POSITION

Tavantzis' mental condition is in controversy. For example, in the Second Amended Complaint, Tavantzis brings a claim for loss of consortium (Count II) (Second Amended Complaint, "SAC", Dkt. 85 ¶¶ 108-115), and for emotional distress under the Montreal Convention. *See,* SAC, Dkt. 85, ¶ 118 ("As a direct and proximate result of the Plaintiffs Plasencia and Tavantzis were both caused to suffer great pain, distress, agony, and mental anguish."). There is good cause for Tavantzis to undergo a mental examination under Rule 35.

Plaintiffs did not, until this filing, dispute that good cause exists for a mental examination of Tavantzis. Indeed, they affirmed same by having their own expert conduct mental examination/testing of Tavantzis, and proffering that report in support of her claims. However, despite previously agreeing to produce Tavantzis for Rule 35 examination by AA's expert, Plaintiffs have now, just days before the October 11, 2024 exam, withdrawn their prior agreement and refused to allow Tavantzis to be examined.

## BACKGROUND ON PLAINTIFFS' ELEVENTH-HOUR REPUDIATION OF AGREEMENT TO PRODUCE TAVANTZIS FOR OCTOBER 11, 2024 MENTAL EXAMINATION

On September 13, 2024, counsel for AA emailed counsel for Plaintiffs, requesting that Plaintiffs produce Tavantzis for a Rule 35 mental examination. On September 16, 2024, Plaintiffs responded that

1

JOINT STATEMENT REGARDING AA'S MOTION TO COMPEL RULE 35 EXAMINATION

assuming the parties could reach "agreement on protocols, location, etc.," Ms. Tavantzis was available on a number of different dates in October, including October 11.

On September 23, 2024, counsel for AA confirmed the October 11 date with Plaintiffs and provided the requested specific details regarding the protocols and duration of the exam. These details included that the exam would be in two parts: **Part 1 would consist of a "three-hour interview" by AA's expert Dr. Margo Leahy**, a clinical psychiatrist, with a specified scope (**which was provided in detail in the email**); and Part 2, **which would include "psychological testing performed by a licensed clinical psychologist**," for a duration of four to five hours.[1]

On September 23, Plaintiffs responded without making any objections to any of the protocols identified, nor the duration provided. Plaintiffs simply asked for an identification of the licensed psychologist and the testing contemplated for Part 2, which was thereafter provided on September 28. Having received no objection, on October 3, AA provided a draft joint stipulation for the agreed upon date/examination to Plaintiffs, fully expecting to Plaintiffs have minor changes—if any.

However, on October 4, 2024, Plaintiffs for the first time stated a blanket objection to the entire arrangement. They objected to: (1) Tavantzis being interviewed at all; (2) to Tavantzis being examined by two different professionals (for an unexplained reason); (3) to AA conducting *any* psychological testing as Tavantzis had "already completed" testing with Plaintiffs' expert, and (4) to the specific psychological tests proposed by AA's testing psychologist, Dr. Mary Ann Kim.

AA immediately asked for an explanation for (what appeared to be) a complete withdrawal of the agreement to produce Tavatnzis. On October 7, Plaintiffs finally clarified their position—Plaintiffs had actually *never* agreed to any aspect of the examination. However, they would now "potentially" allow

---

[1] **For her convenience, AA agreed to have Tavantzis participate in the entire examination by Zoom technology.**

2

JOINT STATEMENT REGARDING AA'S MOTION TO COMPEL RULE 35 EXAMINATION

Dr. Leahy to interview Tavantzis for *two* hours, but *only* if AA withdrew its request to conduct any psychological testing. Otherwise, Tavantzis would not present at all.

**AA'S MOTION TO COMPEL TAVANTZIS' RULE 35 EXAMINATION**

Plaintiffs' above-discussed tactics require court intervention. Plaintiffs have had close to a month to voice objections to the psychiatrist interview and/or the psychological testing on October 11, 2024. They remained silent and/or feigned consent, waiting until the eleventh hour to provide a sweeping repudiation of the entire arrangement, placing AA in an impossible situation just days before the agreed upon date.

Notably, Plaintiffs do not/did not object to the Rule 35 mental examination based on the lack of "good cause." Indeed, Plaintiffs have affirmed same by conducting their own examination of Tavantzis, using the *same* procedure/protocols proposed by AA.[2] Plaintiffs are instead withdrawing agreement based on the stated position that AA should rely on *Plaintiffs'* experts, "other discovery", and their counsel's opinions.

First, even they had merit, these objections do not rebut the fact that good cause exists. Plaintiffs have (a) alleged emotional distress/loss of consortium; (b) proffered their own expert's report/testing to demonstrate Tavantzis' emotional distress/mental anguish; and (c) claimed ongoing mental or emotional illness. *Ayat v. Societe Air France*, No. C 06-1574 JSW JL, 2007 WL 1120358, *4 (N.D. Cal. Apr. 16, 2007) ("good cause" exists where *inter alia* a plaintiff offers expert testimony to support a claim for emotional distress, a plaintiff concedes that her mental condition is in controversy, and that the mental

---

[2] The August 30, 2024, interview portion of Plaintiffs' expert Dr. Chamberlain's examination appears to have lasted under 4 hours, *after which* he administered testing in the form of the TSI-2 (Trauma Symptom Inventory-2), a test meant to assess individuals for evidence of post-traumatic stress disorder, and the MMPI-3 (Minnesota Multiphasic Inventory-3), a newer version of the MMPI-2 (which was published in 2008). Plaintiffs produced Dr. Chamberlain's report and findings on October 2, 2024.

condition is "ongoing") (discussing *Ragge v. MCA/Universal Studios,* 165 F.R.D. 605, 608 (C.D.Cal.1995)).

Second, setting aside the impropriety of the strategic choice to withdraw their prior agreement (or strategically delay providing objections) at/until the last minute, Plaintiffs' objections are without merit. Plaintiffs have no substantive objection to Dr. Leahy's interview, outside of their objection to its three-hour length, which is undermined by the length of *their* expert's interview of almost four hours.

Plaintiffs' objections to Dr. Kim are just as baseless and ill-informed. Dr. Kim proposes the industry standard testing protocol, the MMPI-**2** and the MCMI (Million Multiaxial Personality Inventory), two tests which are well-established, preferred by most experts, and, as an industry practice, used *in conjunction* in forensic settings. Neither of these tests are "duplicative" of the MMPI-3, which is a newer, different, (arguably) less reliable, and less established version of the test proposed by Dr. Kim, the MMPI-2, which has been used since 2008, and is still preferred by most experts. Furthermore, unlike the MMPI-2 (which primarily focuses on acute/present conditions), the MCMI focuses on chronic/enduring/and potentially pre-existing issues. The tests deliver two kinds of results, both of which are vital to AA's defense, including e.g. its arguments surrounding apportionment of damages.[3]

Plaintiffs point to no authority to suggest that AA must rely on the training, skills, and opinions of their adversary's experts—a notion that would indeed be at odds with the adversarial system. Plaintiffs' expert Dr. Chamberlain himself reports that his testing of Tavantzis revealed inconsistent answers. AA will seek to challenge the validity of that testing procedure and results, and/or whether Dr. Chamberlain, who is

---

[3] With the Court's permission, AA can provide a declaration/evidentiary support regarding these tests and their likelihood of delivering admissible evidence.

not a psychologist like Dr. Kim, is sufficiently trained in such testing. These factors call for testing by AA's Dr. Kim, not reliance by AA on a report that may be (and appears to be) subject to being stricken.[4]

**CONFERRAL**

Receiving Plaintiffs' October 4 and October 7 objections for the first time, AA exchanged multiple emails with Plaintiffs asking for clarification on why it appeared that Plaintiffs now did not agree to produce Tavantzis. The parties discussed these issues by phone on October 9, 2024, as Plaintiffs' attorneys were unavailable to return AA's phone call/request for phone conference on October 8, 2024. During that phone call, AA requested Plaintiffs agree to their own proposed compromise and allow Dr. Leahy to examine Ms. Tavantzis on October 11, and leave the issue of Dr. Kim's testing to this Court. Plaintiffs would not agree.

**AA's PROPOSED COMPROMISE**

AA proposes that the Court require Plaintiffs to produce Tavantzis for the Rule 35 mental examination on October 11—a three-hour interview by Dr. Leahy, the psychiatrist, and *psychological* testing in the form of the MMPI-2 and the MCMI, conducted by licensed psychologist, Dr. Kim.

Furthermore, due to (what appears to be) the gamesmanship of Plaintiffs to disrupt this exam process, including (what appears to be, at best), Plaintiffs' "hiding of the ball" for tactical reasons, if this issue cannot be resolved prior to the agreed upon October 11, 2024 date, AA requests that its deadline to provide an expert designation and report related to Ms. Tavantzis' claims for emotional distress/loss of consortium be extended until the Court can resolve this issue. *See* Joint Stipulation and Order Regarding Case Management (Dkt 54).

---

[4] In their response below, Plaintiffs again decide to deviate from the subject at-hand to accuse AA of "discovery abuse." AA will note that Plaintiffs' complaint about AA's willingness to conduct and close a deposition in *fewer* hours than the amount to which it was entitled, by the rules and the Court, does not support a claim for "abuse"--indeed it does the opposite. *See* Order Re Discovery Dispute, Dkt. 82. Likewise, AA's ability, and willingness to, resolve a discovery dispute based on its success at gathering that information from the Plaintiff at deposition, *despite* Plaintiffs' frivolous objections on a debunked California tax privilege, is likewise inconsistent with "abuse."

5
JOINT STATEMENT REGARDING AA'S MOTION TO COMPEL RULE 35 EXAMINATION

**PLAINTIFFS' POSITION**

**Introduction & Brief Background Regarding Defendant's Approach to Discovery.**

By now, the Court is familiar with Defendant's abusive discovery tactics and harassing motion practice. On July 10, Defendant filed two Joint Statements on sixteen written discovery requests. Dkts. 72–73. The Court denied nearly all of Defendant's requested relief and "<u>strongly</u> admonishe[d] the Parties that, going forward, they should exercise sound discretion in raising discovery disputes." Dkt. 74. Not to be deterred, Defendant filed another Joint Statement on July 30 in which it asked the Court to order Ms. Tavantzis to appear for <u>two</u> depositions, on two separate days, for seven hours each day. Dkt. 79. The Court, relying on Defendant's insistence that it needed two days of testimony, allowed a compromise solution by which Defendant could take a second deposition limited to 2.5 hours. Dkt. 82. Ultimately, American spent less than four hours on the record with Ms. Tavantzis on the first day (September 27) and cancelled the second day (September 30). Defendant's next (fourth) Joint Statement was a motion to compel Plaintiffs' tax returns. Dkt 95. Less than 48 hours before the Court's set hearing—and without meeting and conferring with Plaintiffs—Defendant withdrew its motion. Dkt. 99. Defendant's proffered justification was that "AA was able to obtain the information" during Ms. Tavantzis' deposition. Dkt. 99. Why Defendant waited until less than two days before the hearing—a full ten days <u>after</u> the deposition—to withdraw its motion is unclear. What is clear is that Defendant continues to manufacture unnecessary discovery disputes and waste Plaintiffs' and the Court's resources.

**Plaintiffs Never Agreed to a Rule 35 Exam, and Defendant Misrepresents the Parties' Discussions.**

In its latest motion, Defendant misrepresents the timeline and the contents of the Parties' discussions regarding its proposed examinations of Ms. Tavantzis. On Friday, September 13, Defendant emailed Plaintiffs and asked "if Ms. Tavantzis can present in San Jose or a surrounding area for a psychological examination in October before Dr. Margo Leahy, MD." Plaintiffs responded on Monday,

September 16 asking Defendant to "please share your proposed protocols and length of the exam." A full week later, on Monday, September 23, Defendant responded as follows: "*Exam will be in two parts. <u>Part 1</u>: The part will consist of an approximately three hour interview of Tavantzis by Dr. Leahy. This interview follows the outline of the standard psychiatric interview. The interview will include the following areas: present psychological complaint(s), previous psychological history (prior to current complaint(s)), previous medical history (essential to distinguish organic from functional psychological symptoms), family history, employment history, personal history (to include births, marriages and other romantic relationships, divorces, deaths, illnesses of significant others), educational history, current medical and psychiatric history, and mental status examination. <u>Part 2</u>: The second part will consist of psychological testing performed by a licensed clinical psychologist. This involves pencil and paper tests of varying sorts intended to assess the plaintiff's psychological status. Typically, this portion of the examination takes four to five hours.*"

This was the first time Defendant raised the possibility of a multi-part (or multi-professional) eight-hour examination. And Defendant's new description raised more questions than it provided answers. What "pencil and paper tests of varying sorts" was Defendant proposing? Was the "licensed clinical psychologist" Dr. Leahy, or a separate, previously unmentioned professional? Plaintiffs had already struggled to negotiate Defendant's Rule 35 Examination of Mr. Plasencia [Dkt. 94] because Defendant had waited until the week of the examination to spring certain "requirements" on Plaintiffs, such as videotaping, the presence of a court reporter, and the presence of Defendant's lifecare planner (all of which Plaintiffs refused). With this prior Rule 35 experience fresh in mind, Plaintiffs immediately responded on September 23 as follows: "Please send over the proposed psychological tests, the name of the "licensed clinical psychologist" (if different from Dr. Leahy), and <u>a proposed draft stipulation so we can negotiate everything together</u>. Thank you." Defendant did not respond.

On Saturday, September 28, Defendant sent additional details regarding its proposed examinations but did not send the draft stipulation that Plaintiffs had requested. Plaintiffs did not respond and <u>did not agree to any examination</u>. On Wednesday, October 2, Plaintiffs served their expert reports (including the report of Dr. Chamberlain). On Thursday, October 3, Defendant sent <u>for the first time</u> a draft joint stipulation (requested by Plaintiffs on Monday, September 23) outlining its full proposal for multiple examinations of Ms. Tavantzis. Plaintiffs responded the following day (Friday, October 4) explaining that Plaintiffs would not agree to subject Ms. Tavantzis to multiple days of testing or to testing with multiple professionals. Plaintiffs also explained that the two tests proposed by Defendant (MMPI[5] and MCMI) are duplicative of one another and duplicative of the testing that Ms. Tavantzis had already completed. Plaintiffs had produced Ms. Tavantzis' raw MMPI testing data to Defendant on October 2.

Defendant did not request a meet and confer to discuss its proposed examinations of Ms. Tavantzis prior to sending this draft motion to Plaintiffs. On October 7 at 8:03 p.m. PST, Defendant sent its motion to Plaintiffs with a note saying "See attached. We will file tomorrow." Plaintiffs provided their portion the following afternoon, October 8, at 1:55 p.m. PST. Only at that point did Defendant request a meet and confer. Plaintiffs agreed to meet the following afternoon (October 9). Any delay associated with Defendant's desired examination(s) of Ms. Tavantzis is the result of <u>Defendant's</u> dilatory strategy.

**Relevant Legal Standard for Rule 35 Mental Examinations.**

The party moving for the mental examination must (1) show that the mental condition of the party is "in controversy" <u>and</u> (2) establish that "good cause" exists for the examination to be conducted. *Lester v. Mineta*, 2006 WL 3741949, at *1 (N.D. Cal. Dec. 19, 2006); *see Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D. Cal. 1995). The first prong ("in controversy") is satisfied: Ms. Tavantzis is

---

[5] Prior to sending Plaintiffs' counsel its motion the night of October 7, Defense counsel had not made <u>any</u> distinction between the MMPI-2 and MMPI-3 in correspondence or in its proposed draft joint stipulation. Defendant simply requested that Ms. Tavantzis take the "MMPI" and "MCMI" tests.

extremely depressed as a result of Mr. Plasencia's stroke-related disabilities and the couple's associated diminished lifestyle and companionship. But Defendant wholly fails to satisfy the second prong ("good cause"). The movant for a mental examination must show that good cause exists "for each particular examination." *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964) (emphasis added). Good cause "requires a showing that the examination could adduce specific facts relevant to the cause of action and necessary to the defendant's case." *Ragge v. MCA Universal Studios*, 165 F.R.D. 605, 609 (C.D. Cal. 1995). Ninth Circuit courts consider the following factors to determine whether good cause exists: (1) the possibility of obtaining the desired information by other means, (2) whether plaintiff plans to prove their claim through expert witness testimony, (3) whether the desired materials are relevant, and (4) whether plaintiff claims ongoing emotional distress. *Ioane v. Noll*, 2022 WL 1056081, at *1 (E.D. Cal. Apr. 8, 2022).

**Defendant Has Not Demonstrated Good Cause for Multiple Examinations of Ms. Tavantzis.**

Defendant fails to show good cause for a three-hour psychiatric interview by Dr. Leahy and five-hours of separate psychological testing by Dr. Kim. American has not specified any facts that justify an invasive, multi-part, multi-day, multi-professional psychiatric evaluation like the one they demand of Ms. Tavantzis. *See Anzo v. Union Pacific R. Co.*, 2014 WL 5140034, at *3 (E.D. Cal. Oct. 10, 2014).

To determine whether good cause exists for a single mental examination, the court "consider[s] the movant's ability to obtain the information by other means." *Anzo v. Union Pacific R. Co.*, 2014 WL 5140034, at *2 (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964)). Good cause "is established by a showing that the defendant has no other method to discover relevant information; there is simply no less intrusive means." *Ragge v. MCA Universal Studios*, 165 F.R.D. 605, 609 (C.D. Cal. 1995) (emphasis added). In *Hayer v. Liverant*, for example, the court limited the scope of the plaintiff's mental examination because the defendant had already deposed the plaintiff and the defendant had received the plaintiff's psychiatry records and therapist records. 2023 WL 6062916, at *3 (N.D. Cal. Sept. 17, 2023).

Here, like in *Hayer*, there are several other methods by which Defendant can obtain (and already has obtained) the desired information regarding Ms. Tavantzis' depression. Plaintiffs have produced Ms. Tavantzis' medical records, which detail the development and progression of Ms. Tavantzis' severe depression following her husband's stroke. Defendant also questioned Ms. Tavantzis thoroughly during her September 27 deposition regarding her depression symptoms, treatment options, and antidepressant medications. What's more, Ms. Tavantzis has already completed the very MMPI test that American now requests she repeat.[6] Requiring Ms. Tavantzis to undergo the same and/or substantially similar testing for a second time cuts against the notion that the number of examinations ordered "'should be held to <u>the minimum necessary</u> considering the party's right to privacy and the need for the court to have accurate information.'" *Ioane v. Nell*, 2022 WL 1056081, at *2 (E.D. Cal. Apr. 8, 2022) (quoting *Terrell v. Harder Mech. Contractors, Inc.*, 2011 WL 1483548, at *2 (N.D. Cal. Apr. 19, 2011)) (emphasis added). Here, Defendant need not rely on Plaintiffs' expert report; Defendant's own retained expert can examine and form opinions based on the raw testing data, clinical exam records, therapy records, medication records, and records of clinical and mental health assessments already produced by Plaintiffs in discovery.

The other relevant factors that Ninth Circuit courts consider do not shift the scales. Defendant is not put at any disadvantage in rebutting Plaintiffs' expert testimony, because any information that could be gained through a Rule 35 examination(s) is available through other means, including but not limited to Plaintiffs' medical records, therapy records, deposition testimony, and raw testing data.

**Plaintiffs' Proposed Compromise:** Plaintiffs propose a two-hour Zoom examination of Ms. Tavantzis by Dr. Leahy via Zoom. Defendant has <u>not</u> met its burden under Rule 16, and Plaintiffs oppose its instant, improper request to extend the October 31 rebuttal expert deadline.

---

[6] The MMPI and the MCMI both assess symptoms, personality structure, and response style. However, the MCMI is meant to be used in clinical settings, while the MMPI is appropriate for both clinical and forensic settings. The MCMI is therefore duplicative <u>and</u> less useful in the litigation context.

## ATTESTATION OF CONCURRENCE IN FILING

Pursuant to Local Rule 5-1(I)(3), I hereby attest that concurrence in the filing of this document has been obtained for the other signatories in this e-filed document.

DATED:  October 9, 2024                                      BUCHANAN INGERSOLL & ROONEY


                                                              */s/ Robert Pecchio*
                                                              KELLY H. KOLB (admitted *Pro Hac Vice*)
                                                              ROBERT PECCHIO (admitted *Pro Hac Vice*)
                                                              Attorneys for Defendant
                                                              AMERICAN AIRLINES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.

Sanjiv Nand Singh
Sanjiv N. Singh, APLC
1700 South El Camino Real, Suite 503
San Mateo, CA 94402
Telephone: (650) 389-2255
Email: ssingh@sanjivnsingh.com

Darren P. Nicholson
Burns Charest LLP
900 Jackson Street. Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
Email: dnicholson@burnscharest.com

Hannah M. Crowe
Burns Charest LLP
900 Jackson Street. Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
Email: hcrowe@burnscharest.com
*Attorneys for Plaintiff*

|   |   |
|---|---|
| 1 | */s/ Robert Pecchio* |
| 2 | Robert Pecchio |