1

2

3

4                           UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    ANA MARIA MARCELA TAVANTZIS,        Case No. 23-cv-05607-NW
     et al.,
8
                        Plaintiffs,      **ORDER GRANTING AMERICAN'S**
9                                        **PARTIAL JUDGMENT ON THE**
            v.                           **PLEADINGS AND GRANTING IN**
10                                       **PART AND DENYING IN PART**
     AMERICAN AIRLINES, INC.,            **AMERICAN'S *DAUBERT* MOTION**
11
                        Defendant.       Re: ECF Nos. 112, 119
12

13          Plaintiffs Ana Maria Marcela Tavantzis and her husband, Jesus Plasencia, ("Plaintiffs")

14   initiated this action on October 21, 2023, filed a First Amended Complaint ("FAC") on December

15   19, 2023, and filed the operative Second Amended Complaint ("SAC") on August 19, 2024.  *See*

16   ECF Nos. 1, 24, 85.  On December 11, 2024, Defendant American Airlines, Inc. ("American")

17   filed a motion for judgment on the pleadings as to Claim III of the SAC.  MJP Mot., ECF.

18   No. 112.  On January 9, 2025, American filed a *Daubert* motion to exclude the expert opinions of

19   Plaintiffs' expert, Ret. Captain Richard J. Levy.  *Daubert* Mot., ECF No. 119.  The Court took the

20   motions under submission without oral argument.  N.D. Cal. Civ. L.R. 7-1(b).  For the reasons

21   stated below, the Court GRANTS American's motion for judgment on the pleadings and

22   GRANTS IN PART AND DENIES IN PART American's motion to exclude Plaintiffs' expert

23   testimony.

24   **I.      BACKGROUND**

25          The Court previously summarized Plaintiffs' allegations in its prior order partially granting

26   American's motion to dismiss the first amended complaint.  *See* ECF No. 77, *Tavantzis v. Am.*

27   *Airlines, Inc.*, No. 23-CV-05607-BLF, 2024 WL 5446322 (N.D. Cal. July 19, 2024) ("*Tavantzis*

28   *I*").  These allegations remain largely unchanged and are not repeated here.  The Court therefore

1    only references the facts from Plaintiffs' SAC that are pertinent to the Court's analysis in this

2    Order.

3    **A.    Facts**

4    On November 8, 2021, Plaintiffs travelled from San Francisco, California to Madrid, Spain

5    via a layover in Miami, Florida.  SAC ¶¶ 2-3.  After Plaintiffs boarded AA Flight 68, and while

6    other passengers were in the process of boarding, Plasencia experienced a sudden inability to pick

7    up his phone and began speaking gibberish.  *Id.* ¶ 38.  Tavantzis called for help and indicated that

8    she believed her husband was having a stroke.  *Id.* ¶ 39-40.  A flight attendant arrived to assess the

9    situation and subsequently alerted other American employees aboard the aircraft, including the

10   pilot, of Tavantzis' concerns.  *Id.* ¶¶ 40-41.  The pilot spoke to Plaintiffs before taking off, but by

11   that point Plasencia had regained his ability to speak.  *Id.* ¶ 41-42.  After talking with Plaintiffs,

12   the pilot cleared them to fly.  *Id.* ¶¶ 45-46.  Neither the pilot nor any other American employee

13   contacted the airline medical response team nor sought medical assistance from passengers with

14   medical training.  *Id.* ¶¶ 53-61.  Plaintiffs were aboard the plane when it took off for Madrid.  *Id.* ¶

15   62.

16   While in flight, Plasencia suffered a left middle cerebral artery occlusion caused by

17   a thrombus or clot, commonly referred to as a left-MCA stroke.  *Id.* ¶ 63.  After the pilot was

18   informed of the medical emergency, the pilot used the overhead announcement system to request

19   the assistance of any trained medical professionals onboard the flight.  *Id.* ¶ 65.  Physicians and

20   medical personnel rendered aid to Plasencia.  *Id.* ¶ 66.  The pilot continued to fly to Madrid as

21   scheduled.  *Id.* ¶ 68.  After landing in Madrid, Plasencia was transported to a hospital in Madrid

22   and then moved to a second hospital, where he remained for 23 days before returning to the United

23   States to seek further treatment.  *Id.* ¶¶ 69-72.

24   **B.    Procedural Posture**

25   Plaintiffs' FAC brought three claims: (1) liability under the Convention for International

26   Carriage by Air, S. Treaty Doc. No. 106-45 (May 28, 1999) ("Montreal Convention"); (2) loss of

27   consortium under the Montreal Convention; and (3) breach of contract under Texas law.

28   *Tavantzis I* at *2.  After American moved to dismiss the FAC, ECF No. 30, the Court dismissed

United States District Court
Northern District of California

1    the breach of contract claim with leave to amend because, as alleged, the claim fell "within the

2    substantive scope of the Montreal Convention and [was] thus preempted." *Tavantzis I* at *10.

3    The SAC realleges the two surviving Montreal Convention claims and attempts to replead a

4    breach of contract claim.  ECF No. 85.  American moves this Court for judgment on the pleadings

5    as to the new breach of contract claim (Claim III) and asks the court to dismiss the claim with

6    prejudice.  ECF No. 112.

7            **C.    Expert Discovery**

8            Plaintiffs timely noticed Capt. Levy as an Aviation Expert and served his report.  *Daubert*

9    Mot. at 3.  Levy's report advances three opinions related to three critical periods before and during

10   the flight at issue: (1) just before takeoff when the pilot spoke with Plaintiffs; (2) when Plasencia

11   presented stroke symptoms an hour and a half into the flight; and (3) when the pilot landed in

12   Madrid.  Levy's Aviation Expert Report, Ex. D to American's *Daubert* Motion, ECF No. 119-4

13   ("Report").

14   **II.    LEGAL STANDARD**

15           **A.    Motion for Judgment on the Pleadings**

16           Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the

17   pleadings after the pleadings close but "early enough not to delay trial."  A motion for judgment

18   on the pleadings is "functionally identical" to a motion to dismiss for failure to state a claim.  *See*

19   *Dworkin v. Hustler Mag., Inc*., 867 F.2d 1188, 1192 (9th Cir. 1989).  Judgment on the pleadings is

20   properly granted "when, accepting all factual allegations in the complaint as true, there is no issue

21   of material fact in dispute, and the moving party is entitled to judgment as a matter of

22   law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation and original

23   alteration omitted); *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

24           **B.    *Daubert* Motion to Exclude Testimony**

25           Under Rule 702 of the Federal Rules of Evidence, a witness may offer expert testimony if

26   the following requirements are met:

27                       (a) the expert's scientific, technical, or other specialized knowledge
                            will help the trier of fact to understand the evidence or to
28                          determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Expert testimony is admissible under Rule 702 if the court finds by a preponderance of the evidence that the expert is qualified and the testimony is both relevant and reliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004). Rule 702 "contemplates a broad conception of expert qualifications." *Hangarter*, 373 F.3d at 1015. "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010)). "An expert's specialized knowledge and experience can serve as the requisite 'facts or data' on which they render an opinion." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022).

To testify as an expert, a witness must first establish their qualifications by reference to "knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *United States v. Savanh*, 727 F. App'x 931, 935 (9th Cir. 2018) (finding a witness failed to qualify as an expert due to "'extremely minimal' relevant experience, education, and training"). As the gatekeeper, the district court is responsible for making a preliminary finding that the expert is qualified in the area in which he seeks to offer testimony. Fed. R. Evid. 104(a); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999) (noting that Fed. R. Evid. 702 and 703 grant expert witnesses testimonial latitude unavailable to other witnesses on the "assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline"). Once qualified in a specific area, the expert's opinion must fall within their area of expertise. *White v. Ford Motor Co.*, 312 F.3d 998, 1008 (9th Cir. 2002), *opinion amended on denial of reh'g,* 335 F.3d 833 (9th Cir. 2003).

United States District Court
Northern District of California

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.    DISCUSSION

#### A.    Breach of Contract Claims

As it did with the FAC, the Court finds that Plaintiffs' breach of contract claim is preempted by the Montreal Convention and must be dismissed.  The Montreal Convention "preempts not only state-law claims that could be asserted under the Convention, but *all* causes of action for damage to persons or cargo suffered during international air transportation."[1]  *Wysotski v. Air Canada*, No. C 02-04952 CRB, 2006 WL 581093, at *3 (N.D. Cal. Mar. 6, 2006).  "In other words, the Convention is the exclusive source of any remedy that can be obtained in connection with an injury arising out of international air transport; if a claim cannot be asserted under the Convention, it cannot be asserted at all."  *Id.*

The Court conducted a thorough analysis of preemption in *Tavantzis I*.  There, though the Plaintiffs conceded in the FAC that the Montreal Convention governed liability "for damage sustained by Plaintiffs in the bodily injury of Plasencia," FAC ¶ 107, Plaintiffs claimed that American's subsequent failure to compensate Plaintiffs for those injuries was a breach of the Conditions of Carriage and AA Tariff No. AA1, *Tavantzis I* at *9-10.  The relevant provisions were substantively identical to portions of Article 28 of the Convention but were presented in freestanding agreements, allegedly making the repudiation of those agreements a simple breach of contract claim.  *Id.*  The Court disagreed for two reasons.  First, the Court found that, despite Plaintiffs' artful pleading to "frame their claim in the terms of Defendant's Conditions of Carriage and AA Tariff No. AA1 . . . Plaintiffs' claim ultimately [sought] relief that falls under the substantive scope of Article 28 of the Montreal Convention and thus would be preempted under Article 29."  *Id.*  Second, Plaintiffs' claim failed because it was "inextricably intertwined with the injury they experienced" on the aircraft.  *Id.*  Plaintiffs could not "have a claim for advance payments without the onboard injury and advance payments are part and parcel to compensation for the onboard injury."  As the Court explained:

---

[1] Though this case discusses a precursor to the Montreal Convention, the same analysis governs. *See Narayanan v. Brit. Airways*, 747 F.3d 1125, 1127 n.2 (9th Cir. 2014) ("[I]n interpreting the Montreal Convention, courts have routinely relied upon Warsaw Convention precedent where the equivalent provision in the Montreal Convention is substantively the same").

> Plaintiffs' nonperformance claim [was] based on an ex-post failure to redress harm that occurred during the flight. Such a claim [was] preempted because it [was] based on the onboard accident, and thus f[ell] within the substantive scope of Article 17 of the Montreal Convention. To hold otherwise would undermine [the] Montreal Convention as the exclusive remedy for such claims.

*Id* at *11; *see also Wysotski v. Air Canada*, No. C 02-04952 CRB, 2006 WL 581093, at *4 (N.D. Cal. Mar. 6, 2006) (the Convention "would cease to be an exclusive remedy . . . if plaintiffs who could not assert state-law claims for the act itself were nonetheless permitted to sue under state law for . . . ex post failure to redress the harm.").

The Court finds that Plaintiffs' new breach of contract claim suffers from the same defects as *Tavantzis I*. This current claim again concerns American's subsequent failure "to perform" as required under the "binding and enforceable contract" between the parties. SAC ¶¶ 125, 139. This iteration of the claim includes an additional allegation that American "altered the terms defining its liability and made contractual commitments to Plaintiffs that are separate and apart of its liability under the Montreal Convention." *Id.* ¶ 128. Although Plaintiffs allegations claim otherwise, American's failures to perform are grounded in language from the Conditions of Carriage and Tariff No. AA1 that "copy verbatim from the Montreal Convention, specifically incorporate provisions of the Montreal Convention, and describe alleged duties derived from Article 28 of the Montreal Convention." MJP Mot. at 5; *compare* SAC ¶ 133 (quoting Tariff No. AA1, ECF No. 85-3) (alleging contract required airline to, "without delay," "make 'as an advance' a payment sufficient to meet" "the 'immediate economic needs of, and hardship suffered by' Plaintiffs") *with* Montreal Convention art. 28 (requiring airline to "make advance payments without delay to a natural person or persons who are entitled to claim compensation" resulting from injury). Plaintiffs' new details and allegations do not cure the overarching deficiency because their claim still "seeks relief that falls under the substantive scope of Article 28 of the Montreal Convention and thus would be preempted under Article 29." *Tavantzis I* at *10. As alleged, Plaintiffs' current Claim III is also "inextricably intertwined with the injury [Plaintiffs] experienced" on the aircraft and thus preempted for that reason as well. *Id.*

While Plaintiffs concede that American's alleged pre-flight and onboard failures "give rise to Plaintiffs' personal injury claims" and are therefore "governed by the Montreal Convention,"

6

1   they argue that American's post-flight conduct, *i.e.*, the failure to expeditiously address Plaintiffs'

2   subsequent grievances removes this claim from the ambit of the Montreal Convention.[2]  MJP

3   Opp'n at 4, ECF No. 114.  But *Wysotski*, a case the Court cited in its previous order, stands for the

4   opposite proposition.  2006 WL 581093, at *1.  There, the plaintiffs argued that their state law

5   claims were not preempted because they arose from defendant's misrepresentations and related

6   conduct preceding and following the actual flight.  *Id.* at *3.  But, as the Court noted, the

7   Convention "would cease to be an exclusive remedy . . . if plaintiffs who could not assert state-law

8   claims for the act itself were nonetheless permitted to sue under state law for . . . ex post failure to

9   redress the harm." *Id.* at *4.

10      Plaintiffs' breach of contract claim is preempted by the Montreal Convention.  The Court

11  GRANTS American's motion for judgment on the pleadings as to Claim III.

12      **B.    Testimony of Ret. Captain Richard J. Levy**

13      American argues that the Court should exclude Capt. Levy's opinions because the opinions

14  (1) are unreliable under the *Daubert* standard; (2) exceed the scope of his aviation expertise; (3)

15  rely on destroyed data; and (4) supplant the jury's function by opining on the ultimate facts.  *See*

16  *generally Daubert* Mot.  Overall the Court finds that Capt. Levy's opinions are reliable and will be

17  helpful to the jury.  Nevertheless, the Court also finds that Capt. Levy exceeds the scope of his

18  expertise when he discusses flight attendant conduct, and the Court limits those portions of his

19  opinions accordingly.  *See* Ex. A to Order.

20      **1.    Reliability**

21      American concedes that Capt. Levy is qualified to be an Aviation Expert, *see Daubert*

22  Reply at 1, but disputes the reliability of his experience as the basis for his opinions.  To support

23  this contention, American advances three reasons, none of which are persuasive.  First, American

24  argues that Levy's testimony is unreliable because it does not explicitly "set forth what Levy was

25  asked to opine on," *Daubert* Mot. at 6, but American never explains *why* the imprecision

---

[2] Plaintiffs also advance an argument that dismissing this claim amounts to complete preemption and would wholly displace all causes of action based on state law.  *See* MJP Opp'n at 7-8, ECF No. 114.  The Court need not reach the issue of complete preemption to find that *this* single claim is preempted by the Convention.

surrounding the scope of Capt. Levy's engagement renders his opinions unreliable. What Capt. Levy thought the contours of his assignment were has no bearing on his qualifications or experience; he is still a flight training instructor who for 41 years served as a commercial pilot for Defendant American Airlines. *Daubert* Opp'n at 4. "Expert opinions are relevant if the knowledge underlying them has a 'valid connection to the pertinent inquiry.'" *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 888 (N.D. Cal. 2016) (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir.2006) (internal quotation marks and alteration omitted)).

Second, American argues that Capt. Levy's opinions are unreliable because his opinions do not cite directly to the record or engage in sufficient "analysis." The facts of this case are not so complicated that it requires citations to the record to understand the context of Capt. Levy's opinions. His opinions reflect the application of his specialized knowledge and experience to the straightforward facts of this case, which he describes at the outset of his report. *See generally* Report. Because Plaintiffs submit Capt. Levy as an expert for his experience, Levy need not have conducted any "analysis" in the manner American insists he must. *See Hangarter*, 373 F.3d at 1017 (quoting *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000)) ("Where an expert testifies from experience, the "reliability [of the expert's testimony] depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it."). Relying on experience when considering the reasonable response in the face of different scenarios is not a groundless pontification of "*ipse dixit*," as American repeatedly claims in its motion. *See generally Daubert* Mot.

Finally, American contends that Capt. Levy's opinions are irrelevant because they do not have "any tendency to make a fact more or less probable than it would be without the evidence," as required under Fed. R. Evid. 401. *Daubert* Mot. at 6. This argument strains credulity. It is certainly relevant, and makes some facts more or less probable, if the American flight in this case had sufficient fuel for the pilot to turn the plane around if Plasencia presented stroke symptoms an hour and a half into the flight (a fact that is disputed by the parties). *See* Report Op. 2. Given the liberal relevance standards of Fed. R. Evid. 401, the Court will not exclude Levy's opinions on this basis.

### 2. Scope

American's arguments that Capt. Levy goes beyond the scope of his expertise have more merit. American specifically challenges Capt. Levy's statements regarding the proper conduct of American employees, other than the pilot, who were working on the aircraft during Plaintiffs' flight. As an expert, Levy is allowed to make certain factual assumptions within his opinions. *See* Fed. R. Evid. 702, advisory committee notes to 2000 amendments ("The language 'facts or data' is broad enough to allow an expert to rely on hypothetical facts that are supported by the evidence."). But, Capt. Levy's experience was as a pilot, not a flight attendant. He is not qualified to opine on whether the flight attendants on board contravened policy or acted negligently. *See United States v. Garcia*, 7 F.3d 885, 889 (9th Cir. 1993) (citing *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984)); *see also* Report Op. 2 (calling flight attendant decision "an obvious, serious mistake" despite declaring "I am not opining on Flight Attendant conduct"). Consequently, the Court strikes all portions of Capt. Levy's testimony that opine on the behavior, conduct, or propriety of any American employee other than the pilot. *See* Ex. A to Order.

### 3. Origin of Flight Track Data

The flight data that Capt. Levy used in his report is reliable. American argues otherwise, suggesting that the flight data is suspect because it was obtained from third party FlightRadar24 and is now no longer available on that site. *Daubert* Mot. at 8. Plaintiffs respond that the limited data that Capt. Levy relied upon—a cropped rendering of the flight path after an hour and a half of flight time—*was* provided to American.[3] Report at 8; *Daubert* Opp'n at 4-5. That is clearly sufficient under Civil Procedure Rule 26. Fed. R. Civ. P. 26(a)(2)(B)(ii) (testifying expert need only provide "the facts or data considered by the witness in forming" opinions as part of report).

---

[3] American's insistence that Capt. Levy "destroyed" the FlightRadar24 data is deliberately obtuse. American had equal access to the public data that Capt. Levy used and failed to retrieve it before the website deleted it in accordance with its regular retention policies. *Daubert* Opp'n at 5 n.9. Further, American presumably retains in its own internal records regarding flight data, including for the flight at issue here.

9

United States District Court
Northern District of California

####        4.        Ultimate Issue

The Federal Rules of Evidence are clear:  "An opinion is not objectionable just because it embraces an ultimate issue."  Fed. R. Evid. 704; *see also Elsayed Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053, 1066 (9th Cir. 2002), *overruled on other grounds by Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014) ("[E]xpert testimony concerning an ultimate issue is not per se improper.").  American conflates factual issues and legal issues; experts are only proscribed from opining on the latter when it goes to the ultimate issue in the case.  *In re Northrop Grumman ERISA Litig.*, No. CV 06-06213-AB (JCX), 2017 WL 11685251, at *3 (C.D. Cal. Mar. 3, 2017) (quoting *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (emphasis in original) ("[E]xpert witnesses may give an opinion that 'embraces an ultimate issue to be decided by the trier of fact,' but 'cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law.").  Capt. Levy does not opine on any legal issues, so there is no reason to exclude Levy's proffered testimony on those grounds.

American's remaining arguments go to the weight, not the admissibility, of Capt. Levy's opinions.  *See* Mot. at 8-9 (proposing exclusion based on Capt. Levy's reliance on Flight Operation Manual, discrepancies in testimony); *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 n.14 (9th Cir. 2004) (quoting *Children's Broad. Corp. v. Walt Disney Co.,* 357 F.3d 860, 865 (8th Cir. 2004)) ("[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination."); *Alaska Rent-A-Car*, 738 F.3d at 969 (trial court is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable"); *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017) ("Where, as here, the experts' opinions are not the 'junk science' Rule 702 was meant to exclude, the interests of justice favor leaving difficult issues in the hands of the jury and relying on the safeguards of the adversary system—vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof—to attack shaky but admissible evidence.") (cleaned up).  The Court will not exclude Capt. Levy's testimony on those grounds.

Accordingly, the Court GRANTS IN PART AND DENIES IN PART American's *Daubert*

motion.  The Court appends to this Order a modified excerpt of Capt. Levy's report, noting the parts to be stricken.  *See* Ex. A to Order.  Except for the stricken language, Capt. Levy's opinions and testimony are admissible.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby ordered that:

(a) American's motion for judgment on the pleadings is GRANTED. Plaintiffs' breach of contract claim (Claim III) is DISMISSED WITH PREJUDICE.

(b) American's *Daubert* motion is GRANTED IN PART AND DENIED IN PART.

**IT IS SO ORDERED.**

Dated: May 7, 2025

_____
Noël Wise
United States District Judge

United States District Court
Northern District of California

11