**SANJIV N. SINGH, APLC**
Sanjiv N. Singh (State Bar No. 193525)
ssingh@sanjivnsingh.com
1700 South El Camino Real, Suite 503
San Mateo, CA 94402
Telephone: (650) 389-2255

**BURNS CHAREST LLP**
Darren P. Nicholson (*pro hac vice*)
dnicholson@burnscharest.com
Hannah M. Crowe (*pro hac vice*)
hcrowe@burnscharest.com
Anna Katherine Benedict (*pro hac vice*)
abenedict@burnscharest.com
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA MARIA MARCELA TAVANTZIS, as an individual, and as Legal Guardian of JESUS PLASENCIA, an incapacitated person,<br><br>Plaintiffs,<br><br>vs.<br><br>AMERICAN AIRLINES, INC.,<br><br>Defendant. | Case No.: 5:23-cv-05607-NW-SVK<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR SUBSTITUTION OF THE PROPER PARTY** |

American's Opposition to Plaintiffs' Amended Motion for Substitution of the Proper Party is utterly without merit. American opposes the substitution <u>not</u> because there is any case law supporting the denial of substitution under Rule 25, but as retribution[1] for Plaintiffs' Motion for Entry of Judgment seeking pre-judgment interest on the jury's award:

> American Airlines also submits that this inquiry would be entirely different had Plaintiff timely submitted a proposed judgment, rather than a Motion for Entry of Judgment seeking a massive award of pre-judgment interest even on future damages. . . <u>If a final judgment had been entered prior to Plaintiff's death, American Airlines would not be making the arguments it asserts herein</u>.

Dkt. 223 at 14 (emphasis added). While it is exceedingly rare for a plaintiff to die <u>after</u> the jury's verdict is rendered but <u>before</u> the court's final judgment is entered, this circumstance is not without precedent, and that precedent is unanimous that a jury's verdict is <u>not</u> extinguished by the death of a party and that entry of judgment should follow.

Searching for a rationale to escape a verdict it does not like and precedent it cannot distinguish, American ignores the finality of the jury's verdict and advances a series of incoherent and frivolous arguments it frames as "novel" questions of "first impression" because there is no case law to support them. As set forth below, these arguments are poorly reasoned, misstate the law, and are not well taken. Simply put, Mr. Plasencia's

---

[1] Upset that its arguments have been (correctly) identified as frivolous, American complains that it was not "promptly" informed of Mr. Plasencia's passing for "five weeks" which could be "sanctionable" under Rule 11. *See* Dkt. 233 at 3. As counsel for American knows full well, on September 22 the undersigned counsel started a 12-week trial in the matter of *North Broward Hospital District, et al. v. Richard Sackler, et al.*, No. 19-018882, pending in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida. Mr. Placensia's passing happened <u>during that trial</u>. Counsel for American was informed as soon as practicable under the circumstances (via phone call on November 14 during a break in the *North Broward* trial) and <u>before</u> the Court had canceled the then-pending hearing date of November 19. Dkt. 220.

2

tragic passing does not alter the jury's verdict. Mr. Plasencia's beneficiaries have a rightful interest in that verdict (*i.e.*, a "claim" to the proceeds that is not extinguished), and to hold otherwise would create the very never-ending litigation morass that federal courts have steadfastly avoided. Plaintiffs' Motion should be granted.

**ARGUMENT**

**I.    The Jury's Verdict Was Final and Unaffected by Plaintiff Plasencia's Passing.**

American's brief simply ignores the fact that Plaintiffs' no longer have a pending cause of action for injury under the Montreal Convention because that "claim" was fully adjudicated on the merits and the jury's verdict is final. Dkt. 201.[2] To be sure, a jury verdict is not directly appealable because a formal judgment is required. Fed. R. Civ. P. 58(a), (b)(2)(A); *Orr v. Plumb*, 884 F.3d 923, 928 (9th Cir. 2018) ("[A] verdict as such is not an appealable order." (citing *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1297 (7th Cir. 1995))). But a jury's verdict is final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Klestadt & Winters, LLP v. Cangelosi*, 672 F.3d 809, 813 (9th Cir. 2012) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). That is the case here.

At the time of his death, the only "claim" Mr. Plasencia had (*i.e.*, his "assertion of an existing right") was his right and entitlement to enforcement of the jury's verdict. What would have happened to Mr. Plasencia's (unadjudicated) cause of action had he died before or during trial is of no matter. The applicable cases are those that address the effect of a death on a final verdict, not the effect of death a pending cause of action. "It is well

---

[2] The federal rules do not have a definition of the word "claim" as used in Rule 25(a)(1). Not surprisingly, the legal meaning of the word depends on the context. *See generally*, *Claim*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("1. A statement that something yet to be proved is true <claims of torture>; 2. The assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional <the spouse's claim to half of the lottery winnings>; 3. A demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for. — Also termed *claim for relief* (1808).").

3

**PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR**
**SUBSTITUTION OF THE PROPER PARTY**
**CASE NO.: 5:23-cv-05607-NW-SVK**

established that, in general, 'an action is not abated by the death of a party after the cause has reached <u>a verdict</u> or final judgment[.]'" *Chopra v. Gen. Elec. Co.*, 527 F. Supp. 2d 230, 239–40 (D. Conn. 2007) (emphasis added) (quoting 1 AM. JUR. 2d *Abatement, Survival, and Revival* § 58). What is "significant" in this case is that the verdict is a final adjudication on the merits because "all effectual questions have been resolved" before Plaintiff Plasencia's death. *See* 1 AM. JUR. 2d *Abatement, Survival, and Revival* § 58; *Klestadt & Winters*, 672 F.3d at 813. American's Opposition does not dispute this.

And this is precisely why the authority and rationale in the *Boyd*, *Davis*, and *Le* line of cases are applicable here. Just like those cases, the jury's verdict on the claims in this case were final and not subject to revisiting or further litigation except on appeal. It does not matter that this case tried claims under the Montreal Convention and those cases tried claims under other laws. It is the <u>finality of the verdict</u>—not the substance of the adjudicated claim—that is essential to the analysis. To treat the jury's verdict in this case as a contingent unresolved "claim" under Rule 25 (or any other rule) would insert the very "inequity, uncertainty, and arbitrariness" into the judicial process that those cases cautioned against. *Le v. U.S.*, 138 F.4th 264, 282 (5th Cir. 2025). Adopting American's position here (or in any other case) would lead to retrials, satellite litigation, and the litigation "morass" of which federal courts consistently warn. *See Davis*, 912 F.2d at 135; *see also* Dkt. 231-3, Doherty Decl.[3]

---

[3] American objects to the declarations of Ms. Tavantzis and Dr. Doherty in Plaintiffs' Amended Motion as simply "fodder for the press" and an attempt to "evoke sympathy." Dkt. 223 at 4. American misses the point. <u>Either the jury's verdict in this case is final or it is not; American cannot have it both ways.</u> The declarations were necessitated by American's unprecedented decision to contest substitution and to demonstrate to the Court (and, apparently, to American) that American's ill-conceived arguments, if adopted, <u>would result</u> in the very never-ending litigation courts caution against.

4

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR
SUBSTITUTION OF THE PROPER PARTY
CASE NO.: 5:23-cv-05607-NW-SVK

## II.    American's Pre-Verdict Death Cases Do Not Change the Analysis.

As explained above and in Plaintiffs' Amended Motion for Substitution of the Proper Party, Plaintiffs have a final <u>verdict</u>, not a pending claim or cause of action, and this controls the analysis. But even if Plaintiff Plasencia had died during the pendency of the case (or before bringing a claim at all), under binding Ninth Circuit precedent, Plaintiffs' Montreal Convention claims would have survived his death.

### A.    American Ignores the Correct Law on the Survivability of Unadjudicated Claims.

There is not—despite American's claims—an absence of federal law on the survivability of pending claims. On the contrary, "[c]ourts have consistently applied a uniform federal law to the survival of various federal claims." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1056 (9th Cir. 2018). "[U]nder federal common law, claims typically survive a decedent's death if they are remedial in nature and not penal." *Id.* at 1056–57; *see also Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1119 (N.D. Cal. 2013) (finding federal common law test, not California Code of Civil Procedure § 377.34, applied to survival of claims under Title VI and Title IX). When applying this test, a court must consider: (1) "whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public;" (2) "whether recovery under the statute runs to the harmed individual or to the public;" (3) "whether the recovery authorized by the statute is wholly disproportionate to the harm suffered." *Bracken v. Harris & Zide, L.L.P.*, 219 F.R.D. 481, 484 (N.D. Cal. 2004) (quoting *James v. Home Construction Co. of Mobile, Inc.*, 621 F.2d 727, 730 (5th Cir. 1980)).

Under this test, a claim under the Montreal Convention would certainly survive a party's death. First, the purpose of the Montreal Convention is to redress individual wrongs, which means it is "more likely to have a remedial purpose." *See Bracken*, 219 F.R.D. at 484. Second, recovery under the Montreal Convention runs to the harmed individual, not the public. *See* Montreal Convention art. 17 (establishing carrier liability to individual passenger). Third, the recovery authorized by the Montreal Convention is

not wholly disproportionate to the harm suffered. The Montreal Convention only allows for compensatory damages and specifically excludes punitive damages. *Id.* art. 29 ("In any such action, punitive, exemplary, or any other non-compensatory damages shall not be recoverable."); *see Lopez*, 5 F. Supp. 3d at 1119–20 ("Claims for non-economic compensatory damages in the form of pain and suffering, emotional distress, and the like, are not punitive and therefore survived [decedent]s] death."). In short, even if Plaintiff Plasencia had died before a verdict was rendered (or even if the Court decided that this were the law applicable in the context of this case), <u>Plaintiff Plasencia's claims under the Montreal Convention would not be extinguished under federal law</u>.

### B.    American's Reliance on § 1983 Case Law Is Wrong.

Perhaps knowing (and ignoring) this controlling law, American urges this Court to follow inapplicable precedent from § 1983 cases and to turn to state law to determine the survivability of claims. This argument is frivolous. Contrary to what American says in its Opposition, the Supreme Court has <u>not</u> "held that in federal question cases where federal law does not provide its own rule of survival, United States courts should look to the statutory law of the forum[.]" Dkt. 233 at 10. Rather, *Roberston v. Wegmann* "involved § 1983 actions as to which Congress had expressed its preference for state law via § 1988(a)." *See Guenther v. Griffin Construction Co., Inc.*, 846 F.3d 979, 983 (8th Cir. 2017). The Supreme Court explicitly held in *Roberston* that its "holding today is a **narrow one, limited to situations in which no claim is made that state law generally is inhospitable to survival of § 1983 actions** and in which the particular application of state survivorship law, while it may cause abatement of the action, has no independent adverse effect on the policies underlying § 1983." *Robertson v. Wegmann*, 436 U.S. 584, 594 (1991) (emphasis added).[4] In accordance with this narrow approach, the Ninth Circuit

---

[4] It bears repeating that the *Robertson* plaintiff died before there was a trial and the issue was the survivability of the unadjudicated claim, not a jury's verdict. *Robertson*, 436 U.S. at 584 ("Upon the death of Shaw before trial, respondent executor of his estate was

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR
SUBSTITUTION OF THE PROPER PARTY
CASE NO.: 5:23-cv-05607-NW-SVK

holds that "a plain reading of the statute leads to the conclusion that § 1988(a) does <u>not</u> <u>extend</u> to laws unenumerated in its text." *Wheeler*, 894 F.3d at1055 (emphasis added). Section 1988(a) enumerates three civil rights titles: 13, 24, and 70. 42 U.S.C. § 1988(a). American provides no law or rationale to support its suggestion that case law interpreting § 1983's statutory survivability provisions should apply to Montreal Convention cases. In fact, the holding in *Robertson* reveals precisely the opposite: these cases have no application to Montreal Convention claims. *See Robertson*, 436 U.S. at 594.

### C.    American's Argument that California Law is the "Law of the Case" is Frivolous.

Confusing the claims of Plaintiff Plasencia (for bodily injury—Count I) and Plaintiff Tavantzis (for loss of consortium—Count II), American next argues that Plaintiffs "conceded" that "California law governed the damages available to Plaintiff under the Montreal Convention in this action" which was adopted by the Court and is now the "law of the case." Dkt. 233 at 2, 5 (citing Plaintiffs' Second Amended Complaint, ECF No. 84, ¶¶ 108–115 and Final Pretrial Conference Tr. at 48–52 (Sept. 4, 2025)). This argument is frivolous too.

Plaintiff Plasencia's claims expressly arose from Article 17 of the Montreal Convention: "The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Montreal Convention art. 17(1). This was affirmatively pleaded in Count I of Plaintiffs' operative complaint (¶¶ 88–107), which cites solely to the Convention and federal law, not California law. Moreover, the Court has held that the Montreal Convention preempts Plaintiffs' state law breach of contract claims. *See* Dkt. 132 at 5–7.

---

substituted as plaintiff. Petitioner and the other defendants filed a motion to dismiss on the ground that Shaw's death abated the action.").

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR
SUBSTITUTION OF THE PROPER PARTY
CASE NO.: 5:23-cv-05607-NW-SVK

This is the operative law of the case with respect to Mr. Plasencia's claim for bodily injury under the Montreal Convention.

Plaintiff Tavantzis, in contrast, was only able to bring a loss of consortium claim under Article 29's pass-through provision, which means "domestic law controls the issue of whether <u>loss of consortium</u> is cognizable." *Kruger v. United Airlines*, 481 F. Supp. 2d 1005, 1009 (N.D. Cal. 2007) (emphasis added) (finding Montreal Convention <u>loss of consortium</u> claim cognizable under California tort law). In this case, the Court correctly recognized that Plaintiff Tavantzis "does have a claim for loss of consortium under Article 29 and California state law[.]" Pretrial Conference Tr. at 50:9–10. This has nothing to do with Plaintiff Plasencia's separate claim under the Montreal Convention or the damages associated with it, much less the applicable law on the survivability of those claims in the event of his death.

### D. American's Brief Fails to Cite the Controlling California Law from *Cadlo v. Metalclad*.

Finally, and perhaps most egregiously, American's Opposition misstates the controlling California law. Thus, even if this Court were to find that California law applied in the circumstances of this case (it does not), California law would neither extinguish the verdict nor prevent the Court from entering judgment on it. The operative case, which Plaintiffs previously provided to American and cited in their November 15, 2025, Notice (Dkt. 229 at 2 n.1) is *Cadlo v. Metalclad Insulation Corp.*, 151 Cal. App. 4th 1311, 1317 (Cal. Ct. App. 2007). In *Cadlo*, a jury rendered a verdict in favor of plaintiffs and awarded damages, including past and future medical expenses and noneconomic damages. Just as in this case, one of the plaintiffs died <u>after</u> the verdict but <u>before</u> the court entered judgment. *Id.* When the court incorrectly entered judgment without knowing that the plaintiff had died, the defendant moved to partially vacate the judgment and enter a different judgment, relying on California Code of Civil Procedure § 377.34 to argue that future medical damages, future economic damages, and noneconomic damages be stricken

from the judgment. *Id.* The trial court then vacated the prior judgment and entered a new "antedated judgment *nunc pro tunc*" to the day before the plaintiff's death. *Id.* at 1318.

The California Court of Appeal, First District, affirmed the judgment, holding that when a court "*validly* exercises its discretion to issue a judgment *nunc pro tunc*, the date of *that* judgment determines whether section 377.34 bars recovery." *Id.* at 1321–22 (emphasis in original). In doing so, the Court in *Cadlo* affirmatively distinguished this specific factual scenario from the two cases on which American relies, *Kellogg v. Asbestos Corp. Ltd.*, 41 Cal. App. 4th 1397 (1996) and *Williamson v. Plant Insulation Co.*, 23 Cal. App. 4th 1406 (1994). *See Cadlo*, 151 Cal. App. 4th at 1319–21. Critically, in both *Kellog* and *Williamson*, the plaintiff died before there had been an adjudication on the merits. In *Kellogg*, the plaintiff died after the case had been submitted in a bench trial but before the court had made any determination on the merits. *Id.*[5] In *Williamson*, the plaintiff died during the second phase of trial. *Id.* at 1319.

In *Cadlo*, because the plaintiff died after a final verdict by a jury but before a final judgment had been entered, there was nothing prohibiting the court from entering the final judgment *nunc pro tunc* to predate the date of death, which made the section 377.34 bar on recovery of "future" damage awards inapplicable. "The authority to issue such a judgment is rooted in the goal of avoiding injustice[.]" *Id.* at 1322. Thus, the court found that the judgment awarding future damages in favor of the deceased plaintiff was proper because the "verdict had been filed and nothing was left to be done except to commit the verdict to a judgment signed by the court and entered." *Id.* at 1323.

The same is true here. The jury's verdict was rendered on September 17. Plaintiffs moved for entry of judgment on September 19, and briefing was complete on October 10,

---

[5] American's Opposition incorrectly states that in *Kellogg* the "plaintiff died between verdict and before entry of final judgment." Dkt. 233 at 11. This is flat wrong. There was no jury trial and no verdict in *Kellogg*. Rather, there was a bench trial, the case was submitted, but the plaintiff died before the court entered its judgment. *Kellogg*, 41 Cal. App. 4th at 1401–02.

9

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR
SUBSTITUTION OF THE PROPER PARTY
CASE NO.: 5:23-cv-05607-NW-SVK

2025. When Plaintiff Plasencia passed away on October 11, 2025, Plaintiffs were waiting on the entry of final judgment and nothing more. *See* Dkt. 209. And just like California state courts, federal courts have the inherent power to enter judgements *nunc pro tunc* to make sure that its orders and judgments "speak the truth." *Carino v. Garland*, 997 F.3d 1053, 1058 (9th Cir. 2021) (quoting *United States v. Allen*, 153 F.3d 1037, 1044 (9th Cir. 1998) (quoting *Nunc Pro Tunc*, BLACK'S LAW DICTIONARY (5th ed. 1979))).

Accordingly, even if the Court were to apply California law as American suggests, under *Cadlo* and *Carino*, the Court has the inherent authority to avoid injustice and to make sure its judgment "speaks the truth" of the jury's unanimous verdict by entering judgment *nunc pro tunc* to on or before October 10, 2025. American's decision to ignore the recent authority of *Cadlo* speaks for itself. Simply put, there is <u>no</u> authority to support the proposition that Mr. Plasencia's death altered, amended, or extinguished the jury's verdict in this case, which was a final adjudication on the merits, and American's opposition to Plaintiffs' Motion is meritless.

## CONCLUSION

American's attempt to vacate the jury's verdict with a spurious reading of the Rule 25 substitution rule is without any legal precedent, is premised on a misreading of the record, and both misstates (and omits) the controlling substantive law. For these reasons, and for any that may appear to the Court, American's arguments should be rejected and Plaintiffs' Amended Motion for Substitution of the Proper Party (Dkt. 231) should be granted.

Dated: December 12, 2025                    Respectfully submitted,

                                            /s/ Hannah M. Crowe
                                            Darren P. Nicholson (*pro hac vice*)
                                            dnicholson@burnscharest.com
                                            Hannah M. Crowe (*pro hac vice*)
                                            hcrowe@burnscharest.com
                                            Anna Katherine Benedict (*pro hac vice*)
                                            abenedict@burnscharest.com
                                            **BURNS CHAREST LLP**
                                            900 Jackson Street, Suite 500
                                            Dallas, TX 75202
                                            Telephone: (469) 904-4550

                                            Sanjiv N. Singh (State Bar No. 193525)
                                            ssingh@sanjivnsingh.com
                                            **SANJIV N. SINGH, APLC**
                                            1700 South El Camino Real, Suite 503
                                            San Mateo, CA 94402
                                            Telephone: (650) 389-2255

                                            *Attorneys for Plaintiffs*

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR
SUBSTITUTION OF THE PROPER PARTY
CASE NO.: 5:23-cv-05607-NW-SVK

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.

Ivy L. Nowinski (State Bar No.: 268564)
Email: inowinski@condonlaw.com
CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030
Facsimile: (310) 557-1299

David J. Harrington (*pro hac vice*)
Email: dharrington@condonlaw.com
William deWolff (*pro hac vice*)
Email: wdewolff@condonlaw.com
CONDON & FORSYTH LLP
7 Times Square, 18th Floor
New York, New York 10036
Telephone: (212) 490-9100
Facsimile: (212) 370-4453

Attorneys for Defendant
AMERICAN AIRLINES, INC.

/s/ Hannah M. Crowe
Hannah M. Crowe

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR
SUBSTITUTION OF THE PROPER PARTY
CASE NO.: 5:23-cv-05607-NW-SVK