1  Ivy L. Nowinski (State Bar No.: 268564)
   Email: inowinski@condonlaw.com
2  CONDON & FORSYTH LLP
   1901 Avenue of the Stars, Suite 1050
3  Los Angeles, California 90067-6036
   Telephone: (310) 557-2030
4  Facsimile: (310) 557-1299

5      - and -

6  David J. Harrington (*Pro Hac Vice*)
   Email: dharrington@condonlaw.com
7  CONDON & FORSYTH LLP
   7 Times Square, 18th Floor
8  New York, New York 10036
   Telephone: (212) 490-9100
9  Facsimile:  (212) 370-4453

10 Attorneys for Defendant
   AMERICAN AIRLINES, INC.

11

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14

15 ANA MARIA MARCELA TAVANTZIS, as an )   Case No. 5:23-cv-05607-NW-SVK
   individual, and as Legal Guardian of JESUS )
16 PLASENCIA, an incapacitated person,      )   **NOTICE OF MOTION AND MOTION**
                                            )   **OF DEFENDANT AMERICAN**
17            Plaintiff,                     )   **AIRLINES, INC., FOR NEW TRIAL**
                                            )   **(FED. R. CIV. P. 59)**
18       vs                                  )
                                            )   Date: April 22, 2026
19 AMERICAN AIRLINES, INC.,                  )   Time: 9:00 a.m.
                                            )   Place: Courtroom 3 – 5th Floor
20            Defendant.                     )
                                            )
21                                           )
                                            )
22 _____ )

23

24        TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

25        PLEASE TAKE NOTICE that on April 22, 2026, at 9:00 a.m., in the above-captioned

26 court, located at 280 South 1st Street, Courtroom 3 – 5th Floor, San Jose, California 95113,

27 defendant American Airlines, Inc. ("American Airlines"), by and through its attorneys of record,

28

                                          1

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

Condon & Forsyth LLP, will move this Court for a new trial and to alter or amend the judgment pursuant to Rule 59 of the Federal Rules of Civil Procedure on the following independent and alternative grounds:

1. Instructional error that was not harmless;

2. The verdict was against the clear weight of the evidence, and resulted in a miscarriage of justice;

3. The verdict was excessive, and the Court should reduce or vacate future damages pursuant to FRCP 59(e) in light of the passing of Mr. Jesse Plasencia.

This motion will be based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Motion for Judgment as a Matter of Law and Declaration of Ivy L. Nowinski and exhibits thereto filed on January 16, 2026 (ECF No. 240), and on all papers and records on file in the above-entitled action, as well as such oral and documentary evidence as may be presented at the hearing of this motion.

Dated: January 16, 2025                        CONDON & FORSYTH LLP


                                               By: /s/ *Ivy L. Nowinski*                          
                                                  IVY L. NOWINSKI

                                                  -and-

                                                  DAVID J. HARRINGTON
                                                  CONDON & FORSYTH LLP
                                                  7 Times Square, 18th Floor
                                                  New York, NY 10036
                                                  Telephone: (212) 490-9100
                                                  Facsimile: (212) 370-4453

                                                  Attorneys for Defendant
                                                  AMERICAN AIRLINES, INC.

# TABLE OF CONTENTS

Page(s)

Cases

I.    INTRODUCTION ......................................................................................... 1

II.   SUMMARY OF THE JURY INSTRUCTIONS ........................................... 2

III.  SUMMARY OF THE EVIDENCE ............................................................... 4

      A.    Pre-Flight in Miami........................................................................... 4

      B.    The Incident Over Bermuda.............................................................. 7

      C.    Medical Treatment for Ischemic Stroke ........................................... 8

IV.   LEGAL STANDARD .................................................................................... 8

V.    THE REJECTION OF AMERICAN AIRLINES' REQUESTED INSTRUCTION
      FURTHER DEFINING "ACCIDENT" UNDER THE MONTREAL
      CONVENTION WAS LEGAL ERROR ....................................................... 10

      D.    The Error Was Not Harmless............................................................ 13

      E.    The Verdict Was Against the Clear Weight of the Evidence............. 13

VI.   THE VERDICT IS A MISCARRIAGE OF JUSTICE ................................. 16

VII.  THE JUDGMENT WAS EXCESSIVE IN LIGHT OF PLAINTIFF
      PLASENCIA'S PASSING; UNDER RULE 50(e) OF THE FEDERAL RULES
      OF CIVIL PROCEDURE, THE COURT SHOULD AMEND THE JUDGMENT
      TO STRIKE ALL AWARDS OF FUTURE DAMAGES TO MR. PLASENCIA
      DUE TO HIS DEATH PRIOR TO THE ENTRY OF FINAL JUDGMENT................... 17

      F.    A. Common Law, Mr. Plasencia's Claims Are Extinguished By His
            Death. ................................................................................................ 19

      G.    Under California Law, Mr. Plasencia's Future Damage Claims Are
            Extinguished. ..................................................................................... 20

VIII. CONCLUSION.............................................................................................. 24

i

MOTION FOR NEW TRIAL AND MOTION TO VACATE
PURSUANT TO RULE 59 OF THE FEDERAL RULES OF
CIVIL PROCEDURE
CASE NO.: 5:23-cv-05607-NW-SVK

1

# TABLE OF AUTHORITIES

2

Page(s)

3

Cases

4

*Abramson v. Japan Airlines Co., Ltd.*,
739 F.2d 130 (3d Cir.1984) ............................................................................. 11

5

*Air France v. Saks*,
470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985)............................... 10, 12

6

*Am. Bank & Tr. Co. v. Cmty. Hosp.*,
36 Cal. 3d 359 (1984) .................................................................................... 24

7

*Arzu v. Am. Airlines, Inc.*,
No. 4:24-CV-00433-P, 2025 WL 1347329 (N.D. Tex. May 8, 2025) ............... 3, 11

8

*Aziz v. Air India Ltd.*,
658 F. Supp. 2d 1144 (C.D. Cal. 2009) ............................................................. 3

9

*Bearchild v. Cobban*,
947 F.3d 1130 (9th Cir. 2020) ................................................................... 9, 12

10

*BladeRoom Grp. Ltd. v. Emerson Elec. Co.*,
20 F.4th 1231 (9th Cir. 2021) ........................................................................ 13

11

*Blansett v. Cont'l Airlines, Inc.*,
379 F.3d 177 (5th Cir. 2004) ......................................................................... 11

12

*Boyd v. Bulala*,
905 F.2d 764 (4th Cir. 1990) ......................................................................... 23

13

*Cadlo v. Metalclad Insulation Corp.*,
151 Cal. App. 4th 1311 (2007) ......................................................... 21, 22, 23

14

*Caman v. Continental Airlines, Inc.*,
(9th Cir. 2006) 455 F.3d 1087 ......................................................................... 1

15

*Davis by Davis v. Jellico Community Hosp. Inc.*,
912 F.2d 129 (6th Cir. 1990) ......................................................................... 24

16

*Fierro v. Smith*,
39 F.4th 640 (9th Cir. 2022) .......................................................................... 13

17

*Fulop v. Malev Hungarian Airlines*,
244 F. Supp. 2d 217 (S.D.N.Y 2003) ................................................................ 3

18

*Galdamez v. Potter*,
(9th Cir. 2005) 415 F.3d 1015 ......................................................................... 9

19

*Gilbrook v. City of Westminster*,
177 F.3d 839 (1999) ...................................................................................... 10

20

*Hipolito v. Nw. Airlines, Inc.*,
15 Fed.Appx. 109 (4th Cir.2001) ................................................................... 11

21

*Husain v. Olympic Airways*,
116 F. Supp. 2d 1121 (N.D. Cal. 2000) .......................................................... 10

22

*Kellogg v. Asbestos Corp. Ltd.*,
41 Cal. App. 4th 1397, 49 Cal. Rptr. 2d 256 (1996) ................................. 20, 21

23

*Krys v. Lufthansa German Airlines*,
119 F.3d 1515 (11th Cir. 1997) ................................................................... 3, 11

24

*Le v. United States*,
138 F.4th 264 (5th Cir. 2025) ........................................................................ 24

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

ii

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

*Madrigal v. Allstate Insurance Company*,
  215 F.Supp.3d 870 (2016) .................................................................................... 9
*Moor v. Alameda Cnty.*,
  411 U.S. 693 (1973) .......................................................................................... 19
*Obrey v. Johnson*,
  400 F.3d 691 (9th Cir.2005) ................................................................................ 9
*Oltz v. St. Pete's Community Hosp.*,
  861 F.2d 1440 (9th Cir. 1988) ............................................................................ 9
*Olympic Airways v. Husain*,
  540 U.S. 644 (2004) .................................................................................... 10, 11
Rajcooar v. Air India Ltd.,
  89 F.Supp.2d 324 (E.D.N.Y.2000) .................................................................... 11
*Ridgeway v. Walmart Inc.*,
  946 F.3d 1066 (9th Cir. 2020) .......................................................................... 13
*Robertson v. Wegmann*,
  436 U.S. 584 (1978) .......................................................................................... 19
*Rodriguez v. Ansett Australia Ltd.*,
  383 F.3d 914 (9th Cir.2004) ................................................................................ 1
*Sch. Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*,
  5 F.3d 1255 (9th Cir.1993) ................................................................................ 17
*Sidibe v. Sutter Health*,
  (9th Cir. 2024) 103 F.4th 675 .......................................................................... 13
*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*,
  251 F.3d 814 (9th Cir. 2001) .............................................................................. 9
*Sook Jung Lee v. Korean Air Lines Co., Ltd.*,
  SACV 10-01709-JVS, 2012 WL 1076269 (C.D. Cal. Mar. 21, 2012) .............. 1, 3
*Watson v. City of San Jose*,
  800 F.3d 1135 (9th Cir. 2015) ............................................................................ 9
*White v. Emirates Airlines, Inc.*,
  493 F. App'x 526 [5th Cir. 2012] .................................................................... 3, 11
*Williamson v. Plant Insulation Co.*,
  23 Cal. App. 4th 1406, 28 Cal. Rptr. 2d 751 (1994) ........................................ 21

Statutes

42 U.S.C. § 1983 .................................................................................................. 19
Cal. Civ. Proc. Code § 377.20 ............................................................................ 20
Cal. Civ. Proc. Code § 377.34 ................................................................. 21, 22, 23
Cal. Civ. Proc. Code § 377.34(a) ........................................................................ 20

Rules

Fed. R. Civ. P 50(b) .................................................................................... 1, 4, 16
Fed. R. Civ. P. 51(d)(1)(B) .................................................................................. 9
Fed. R. Civ. P. 59(a)(1)(A) .................................................................................. 9
Fed. R. Civ. P 59(e) ............................................................................................ 2

iii

Fed. R. Civ. P. 59(a)(1)(B) ............................................................................................... 9
Fed. R. Civ. P. 59(a), (e) ................................................................................................. 9

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

iv

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

## I.  INTRODUCTION

American Airlines moves for new trial on the grounds that the Court's Montreal Convention instruction (Jury Instruction 29) did not fairly and adequately explain the law. American Airlines had requested an instruction that added key conditional language from the Fifth Circuit explaining that not every violation of policy is an "accident or unexpected occurrence." Nowinski Declaration, Ex. F, p. 12; Dkt. 152-2. The Court noted in the pretrial conference that the additional language sought by American Airlines was not required by Ninth Circuit precedent. The Court thought that "may" adequately expressed the rule.  Nowinski Decl., Ex. G, 42:20-23. The instruction, as given to the jury, noted that the definition of "accident" should be "flexibly applied," but did not give any other guidance or limitation requested by American Airlines.  Ex. H, 135:16–18 ("The acts or omissions of airline personnel, including an employees failure to follow airline policy or procedure, may be an unexpected or unusual event or happening.")

The language requested by American Airlines served as a fair and prudential guardrail to avoid unfettered liability for *de minimis* violations of policies, or the exercise of discretion under a policy. American Airline's requested instruction arose from Circuit Court and lower court authority from around the nation, including within the Central District of California, where lower courts had been confronted with similar fact patterns.

Importantly, the Ninth Circuit hasdenied liability for inaction by airline personnel in the absence of a specific request for intervention by the passenger. *See Rodriguez v. Ansett Australia Ltd.*, 383 F.3d 914, 919 (9th Cir.2004) (affirming summary judgment where plaintiff submitted no evidence that Air New Zealand failed to comply with any industry standard in connection with passenger who developed deep vein thrombosis); *Sook Jung Lee v. Korean Air Lines Co., Ltd.*, SACV 10-01709-JVS, 2012 WL 1076269 (C.D. Cal. Mar. 21, 2012) (no accident in absence of specific health-based request from passenger or deviation from airline policies and procedures); *Caman v. Continental Airlines, Inc*. (9th Cir. 2006) 455 F.3d 1087, 1092 (airlines failure to warn of DVT is not an "event" but an act of omission or inaction permitting an

MOTION FOR NEW TRIAL AND MOTION TO VACATE
PURSUANT TO RULE 59 OF THE FEDERAL RULES OF
CIVIL PROCEDURE
CASE NO.: 5:23-cv-05607-NW-SVK

- 1 -

unfolding series of events to reach their natural conclusion, as opposed to an act of commission (inaction that produces an effect, result or consequence).)

At a minimum, those cases authorized an instruction with more developed definition of "accident" than the one given.

The absence of clarifying language in Jury Instruction 29 given to the jury was not harmless. The jury awarded significant damages without a single policy violation ever being identified by Plaintiffs in their closing argument and without identifying what specific actions constituted the "accident." A careful reading of Plaintiff's closing reveals that at no point did counsel identify what the flight attendant personnel are alleged to have done wrong. A close review of the evidence establishes that Plaintiff's expert conceded that no policy was violated.

The prejudice to American Airlines caused by instructional error is confirmed by the huge award of damages awarded by the jury despite the lack of evidence of a violation of a policy or a failure to respond to a request for help. Without evidence that flight and cabin crew had specific, actionable knowledge of Mr. Plasencia's pressing health need, the verdict rendered by the jury was against the clear weight of the evidence.

Finally, American seeks relief under Fed. R. Civ. P. 59(e) to amend the judgment to vacate the award of future damages, economic and non-economic, to Mr. Plasencia in light of his death prior to the entry of judgment.  Moreover,  the overall damages are excessive and contrary to law.

## II.  SUMMARY OF THE JURY INSTRUCTIONS

Prior to trial, American Airlines submit its proposed jury instruction No. 2:

Plaintiffs must prove by a preponderance of the evidence that the airline's conduct amounted to an "accident," as defined by Article 17 of the Montreal Convention. Questions of negligence are not implicated or even relevant to the "accident" determination. Instead, the focus of the inquiry is on the nature of the event which caused the injury rather than the care taken by the airline to avert the injury. [fn] Thus, for there to have been an "accident", the Plaintiffs must show that the asserted act or omission was (1) an unexpected or an unusual event, (2) that was external to them, and (3) that actually caused Plaintiffs' injuries and damages. [fn]

An "unexpected or unusual" event must differ from the normal, ordinary or

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

routine operation of the aircraft or the conduct of a flight. An event is not an "accident" if it results solely from the state of health of the passenger and is unconnected with the flight. A passenger's worsening condition caused by their own internal reaction to normal flight operations is not external.

An "accident" can include actions or failures to act by cabin crew or flight crew if those actions or failures to act were (1) unexpected or unusual and (2) caused the passenger's injury.

However, not every failure to act is an "accident." An imperfect response by the flight or cabin crew to a passenger's medical emergency does not necessarily constitute an accident. [fn] An airline's departure from its own policies or procedures or relevant industry standards is not, on its own, "unusual or unexpected;" Plaintiffs must show, at minimum, that the airline's actions constitute a significant deviation from recognized practices and procedures to meet the threshold of "unusual or unexpected." [fn] If the failure simply allowed events to occur naturally, it is not an "accident."

But if the failure itself caused Plaintiffs' harm, it may be considered an "accident."

Nowinski Decl., Ex. F, Doc. No. 152-2 (filed 08/20/25) at p. 12–15. The instruction cited *Aziz v. Air India Ltd.*, 658 F. Supp. 2d 1144, 1148 (C.D. Cal. 2009), citing *Saks*; *White v. Emirates Airlines, Inc.*, 493 F. App'x 526, 531 [5th Cir. 2012]); see eg. *Sook Jung Lee v. Korean Air Lines Co., Ltd*, No. SACV 10-01709-JVS, 2012 WL 1076269, at *5 (C.D. Cal. Mar. 21, 2012). Additional authorities were cited in the accompanying argument, including *Arzu v. Am. Airlines, Inc.*, No. 4:24-CV-00433-P, 2025 WL 1347329, at *4 (N.D. Tex. May 8, 2025) (no "accident" notwithstanding airline's "reactionary delays, confusion of roles, and departures from policy, such as the failure to contact the physician on call" where "the flight crew 'took action to assist' [decedent] in multiple ways"); *Fulop v. Malev Hungarian Airlines*, 244 F. Supp. 2d 217, 221 (S.D.N.Y 2003) (Fulop II) (no accident when flight crew relied on the opinion of on-board doctor and continued flight to its scheduled destination and noting requirement for "material" deviation from policies and procedures); *Krys v. Lufthansa German Airlines*, 119 F.3d 1515 (11th Cir. 1997) (same).

The instruction was subject of colloquy prior to trial, in which American Airlines' counsel argued for the supplemental language: "With respect to Jury Instruction Number 2,

MOTION FOR NEW TRIAL AND MOTION TO VACATE
PURSUANT TO RULE 59 OF THE FEDERAL RULES OF
CIVIL PROCEDURE
CASE NO.: 5:23-cv-05607-NW-SVK

- 3 -

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

paragraph 4…American Airlines is concerned that a jury could potentially think that any deviation from policy or procedure, industry standard can be an accident while the cases definitely say that that is not so.  What the cases say is that there is no perfect response to a medical emergency. Policies and procedures are not going to be routinely followed to the letter…I think it would be a mistake to provide these to the jury without cautioning that not every violation of policy and procedure is an accident and allegedly an inadequate response." (Nowinski Decl., Ex. G, p. 41:2–19.)  The Court noted the absence of binding authority on that point in this district, and indeed, that there were aspects of the case that would present issues of first impression. Ultimately, the Court declined to give paragraph 4 of American Airlines' requested instruction.  The instruction as given read:

> To establish American Airline's liability under the Montreal Convention, Plaintiffs must prove by a preponderance of the evidence that: 1. There was an accident, meaning an unexpected or unusual event or happening that was external to plaintiffs and that the accident caused Jesus Plascenca's injuries. The definition of Accident should be flexibly applied after assessing the context and circumstances of a passenger's injuries.
>
> Various events on a flight might be unexpected or unusual. The acts or omissions of airline personnel, including an employees failure to follow airline policy or procedure, may be an unexpected or unusual event or happening.
>
> An event or happening is not unexpected or unusual when it is part of the usual, normal and expected operation of the aircraft. An event is not an accident if it results solely from the state of the passenger's own health and is unconnected with the flight.
>
> A Passenger's worsening condition caused by their own internal reaction normal flight operations is not external.

(Nowinski Decl., Ex. H, 135:6-25.)

**III. SUMMARY OF THE EVIDENCE**

The facts herein are abbreviated from the Motion for Judgment as a Matter of Law pursuant to FRCP 50(b), incorporated fully herein by reference.

**A.      Pre-Flight in Miami**

Plaintiff testified that she and Mr. Plasencia boarded Flight 68 to Madrid as normal, but

MOTION FOR NEW TRIAL AND MOTION TO VACATE
PURSUANT TO RULE 59 OF THE FEDERAL RULES OF
CIVIL PROCEDURE
CASE NO.: 5:23-cv-05607-NW-SVK

that Mr. Plasencia dropped his phone and was unable to grab it.  Nowinski Decl., Ex. A, Trial Transcript, September 9, 2025, 232:10-13; 233:7-13.  She retrieved his phone, and Mr. Plasencia spoke gibberish for "a few seconds." *Id.* at 233:7-13; 294:1-7.  She said aloud that her husband was having a stroke. *Id.* Flight Attendant David Eccles immediately came to assist.  *Id.* at 234:10-13. She told FA Eccles that she had observed Mr. Plasencia speaking gibberish and that she thought he was having a stroke.  *Id.* at 234:25–235:1. (Notably, no other person testified that that they had heard her mention of a stroke.) Plaintiff testified that FA Eccles asked Mr. Plasencia if he was okay, and that Mr. Plasencia said yes. *Id.* at 235:2-5.  Crediting Plaintiff's testimony, which differed from FA Eccles' testimony, Plaintiff then said "**Maybe** we shouldn't fly" (*emphasis added*) and FA Eccles responded that "I will get somebody that can make that decision." *Id.* Plaintiff did not ask for medical personnel to assist or evaluate her husband, and claimed that she didn't know that she could. *Id.* at 235:6-22.  Plaintiff testified it was her internal expectation that medical personnel would be summoned to evaluate him prior to takeoff, but she never communicated her expectation to American Airlines personnel.  *Id.*

FA Eccles confirmed that he spoke with both Plaintiff and Mr. Plasencia. There is no dispute that he asked Mr. Plasencia if he was okay, and Mr. Plasencia said yes, he was okay. Nowinski Decl., Ex. C, Trial Transcript, September 11, 2026, 528:2-9. FA Eccles further testified that he asked them several times if they would like to get off of the aircraft to get medical assistance and that they both said no.  *Id.* at 528:20 - 529:11.  FA Eccles then told Purser Kelly Gambello of his interaction with Plaintiff and Mr. Plasencia, who reported the interaction to Captain Anthony Occhino.  *Id.* at 574:19-24.  FA Eccles, Purser Gambello, and Captain Occhino each had slightly different recollections regarding what they reported or what was reported to them.  Purser Gambello testified that FA Eccles told her that Mr. Plasencia's wife was worried about him because he seemed "confused."  *Id.* at 630:19 – 631:1.  Captain Occhino testified that he was told Mr. Plasencia was "disoriented."  *Id.* at 650:3-22.  Neither Purser Gambello nor Captain Occhino considered it a medical situation at this point.  *Id* at 631:8-14. Captain Occhino testified that he decided to leave the flight deck to investigate the situation

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

MOTION FOR NEW TRIAL AND MOTION TO VACATE
PURSUANT TO RULE 59 OF THE FEDERAL RULES OF
CIVIL PROCEDURE
CASE NO.: 5:23-cv-05607-NW-SVK

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1   himself, and to make sure there was not a problem, as he has ultimate responsibility for the

2   safety of the flight.  *Id.* at 651:17-653:9.  Captain Occhino testified that he asked both Plaintiff

3   and Mr. Plasencia "multiple times" if they were well, and that they both stated that they were

4   fine and wished to continue with their flight.  *Id.* at 652:18-22; 654:17-21.  He further testified

5   that Mr. Plasencia exhibited no symptoms known to be associated with a stroke at this time.  *Id.*

6   at 653:3-654:7.

7          Plaintiff testified that she was surprised Captain Occhino came to speak to Plaintiff and

8   Mr. Plasencia, because she had expected medical personnel to assist them, although they did not

9   ask for such assistance.  Nowinski Decl., Ex. A, September 9, 2025, 235:6–22.  Plaintiff

10  confirmed Captain Occhino's testimony that he asked Mr. Plasencia if he was okay, if he needed

11  any help, and if he wanted to get off the aircraft.  *Id.* at 235:23–25; 236:2–18.  Plaintiff testified

12  that Mr. Plasencia told Captain Occhino that he was okay, that he did not need help, and that he

13  did not want to get off the aircraft.  *Id.*  Ms. Tavantzis testified that she wanted to get off the

14  aircraft, but did not communicate this desire to Captain Occhino, FA Eccles, or anyone else other

15  than Mr. Plasencia and her family members via text messages, out of respect for her husband's

16  autonomy and wishes.  *Id.* at 238:25 - 239:10.  She did not want to "overrule" her husband or

17  make a scene. Plaintiff also testified that "if nothing else had happened, I still would have taken

18  him to the doctor, but not as an emergency."  *Id.* at 239:19-20.

19         Plaintiffs' cabin crew expert Kathleen Lord-Jones confirmed there was no violation of

20  policy or industry standard at this point.  *Id.* at 361:14-15.  Plaintiff's piloting expert testified that

21  Captain Occhino created a safety issue by leaving the cockpit prior to boarding, but there was no

22  testimony that Captain Occhino's decision to leave the cockpit was the cause of any injury

23  suffered by Mr. Plasencia.

24         Importantly, both medical experts agreed that this incident was not a stroke, but rather a

25  transient ischemic attack ("TIA").  Nowinski Decl., Ex. B, Trial Transcript, September 10, 2025,

26  295:3-14.  Plaintiff's medical expert, Dr. Jack Schim, testified that "the very short duration of

27  Mr. Plasencia's TIA would have made it more difficult for someone who is not trained in

28

MOTION FOR NEW TRIAL AND MOTION TO VACATE
PURSUANT TO RULE 59 OF THE FEDERAL RULES OF
CIVIL PROCEDURE
CASE NO.: 5:23-cv-05607-NW-SVK

- 6 -

1  neurology to recognize it as a TIA." *Id.* at 320:5-9. Dr. Schim testified that Mr. Plasencia's "last

2  known well" was after the initial TIA in Miami when he was speaking to Captain Occhino and

3  advised Captain Occhino that he wished to continue with his vacation. *Id.* at 295:3-14.

4      **B.**    **The Incident Over Bermuda**

5      There were no further issues until about 1.5 hours into the flight when Mr. Plasencia

6  exhibited "difficulty walking" when he got up to go to the aircraft lavatory 1.5. Plaintiff

7  specifically testified that Mr. Plasencia "didn't really need help" although "the flight attendant

8  did offer some help." Nowinski Decl., Ex. A, 245:16-19. FA Eccles confirmed that Mr.

9  Plasencia stated that he was fine and did not need help, but FA Eccles assisted him anyway.

10  Nowinski Decl., Ex. C, 542:7-21. Plaintiff and FA Eccles both testified that at this point, they

11  did not observe any visible signs of a stroke other than difficulty walking, which is not explicitly

12  listed as a symptom of a stroke in American Airlines training documents. Nowinski Decl., Ex.

13  A, 305:8-11; Ex. C, 548:7 -549:25. Plaintiff further testified that other than requesting a

14  wheelchair to assist Mr. Plasencia upon landing, neither she nor Mr. Plasencia asked for help or

15  medical assistance either at this point, or at any point during their travels with American

16  Airlines. Nowinski Decl., Ex. A, 305:12-16.

17      Plaintiff's cabin safety expert, Kathleen Lord-Jones testified that FA Eccles breached

18  American Airlines policies and procedures by failing to properly communicate with other crew

19  members. She testified that FA Eccles "did not **adequately identify a <u>potential stroke-like</u>**

20  **<u>symptom</u>**" (*emphasis added*), and that this was a breach of American Airlines policy and

21  procedures and industry standard, although upon cross-examination, Ms. Lord-Jones admitted

22  that a cabin crew member's decision to report symptoms was "discretionary" or a "judgment

23  call." *Id.* at 333:4–15; 344:5–10; 357:11–358:11.

24      Plaintiff's piloting expert Captain Richard Levy was not qualified as an expert on cabin

25  crew policies and procedures or the propriety of FA Eccles' actions and his compliance with

26  American Airlines cabin crew policies and procedures and industry standards. Captain Levy

27  testified that had Mr. Plasencia's difficulty walking been reporting to Captain Occhino, he could

28

C‌ONDON & F‌ORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1  have called the physician on call ("POC") to obtain medical assistance and advice.

2  **C.    Medical Treatment for Ischemic Stroke**

3  Plaintiff argued in closing that American Airlines worsened Mr. Plasencia's condition by

4  delaying treatment for stroke.  The evidence in the record was that Mr. Plasencia's stroke

5  occurred several hours after the two incidents in question—sometime between 1.5 to 3.3 hours

6  prior to landing in Madrid. Plaintiff's expert neurologist Dr. Jack Schim testified that he could

7  not say to a reasonable degree of medical certainty exactly when Mr. Plasencia's stroke occurred.

8  Dr. Schim testified that based upon the imaging of Mr. Plasencia's brain taken at Ramon y Cajal

9  Hospital at 10:15 a.m. local time in Madrid, he believed the stroke occurred 4.5 or 5 hours earlier

10  (between 5:15 and 5:45 a.m. local time), but "not much" earlier than that.  *Id.* at 311:10-24.

11  American Airlines' expert, Dr. Suite, testified that Mr. Plasencia's stroke occurred at around

12  7:00 a.m. local time Madrid, or approximately 1.5 hours prior to landing.

13  Plaintiff did not argue at trial that any "accident" occurred after the incident

14  approximately 1.5 hours after takeoff, as the aircraft approached Bermuda. Plaintiff's argument

15  is that American Airlines should have recognized Mr. Plasencia's brief and transient TIA and/or

16  his difficulty walking as a precursor to a stroke, even though Mr. Plasencia admittedly appeared

17  well at all times when speaking to American Airlines and Dr. Schim testified that it would be

18  difficult for anyone not trained as a neurologist to recognize Mr. Plasencia's symptoms as a TIA.

19  Plaintiff has also presented no evidence that American Airlines personnel is trained to recognize

20  TIAs, or has a policy pertaining to TIAs.

21  Dr. Schim testified that Mr. Plasencia's blood pressure was too high for the

22  administration of tPA every time it was taken, and that it did not respond to efforts to lower it

23  with medication.  *Id.* at 310:6-18. Dr. Schim testified that he did not know that Mr. Plasencia's

24  blood pressure would have been if he had presented for care earlier.  *Id.* at 311:6-9.

25  **IV. LEGAL STANDARD**

26  Federal Rule of Civil Procedure 59 permits a party to file a motion for a new trial or to

27  "alter or amend a judgment no later than 28 days after the entry of the judgment." Fed. R. Civ. P.

28

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

- 8 -

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

59(a), (e). A court may "grant a new trial on all or some of the issues ... for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A court may also "grant a new trial on all or some of the issues" following a nonjury trial "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59(a)(1)(B).

Erroneous jury instructions and the failure to give adequate instructions, are grounds for a new trial unless the error is harmless. *Watson v. City of San Jose,* 800 F.3d 1135, 1140-1141 (9th Cir. 2015) —district court did not abuse its discretion by determining that the first set of jury instructions did not adequately convey the causation principles, leading jury to improperly award damages—such error could be discerned by the amount of the damages. A party may assign as error a failure to give an instruction if the party made a timely request and the trial judge "rejected the request in a definitive ruling on the record." Fed. R. Civ. P. 51(d)(1)(B) & Adv. Comm. Notes, 2003 Amend; see also *Bearchild v. Cobban* 947 F.3d 1130, 1139 (9th Cir. 2020).

"An error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless" *Madrigal v. Allstate Insurance Company*, 215 F.Supp.3d 870 (2016). In the Ninth Circuit, the courts presume prejudice where civil trial error is concerned, and the burden shifts to the opposing party to demonstrate "that it is more probable than not that the jury would have reached the same verdict" had it been properly instructed. *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir.2005); *Galdamez v. Potter* (9th Cir. 2005) 415 F.3d 1015, 1025.

A new trial may also be granted if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs,* 251 F.3d 814, 819 (9th Cir. 2001); *Oltz v. St. Pete's Community Hosp.,* 861 F.2d 1440, 1452 (9th Cir. 1988). Under the "clear weight of evidence" standard, a new trial may be ordered even if substantial evidence supports the jury's verdict. *Silver Sage Partners, Ltd. v. City of Desert Hot Springs,* 251 F.3d at 819.

## V. THE REJECTION OF AMERICAN AIRLINES' REQUESTED INSTRUCTION FURTHER DEFINING "ACCIDENT" UNDER THE MONTREAL CONVENTION WAS LEGAL ERROR

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

Courts must evaluate instructions as a whole to determine if they fairly and adequately cover the issues presented, correctly state the law, and are not misleading." *Gilbrook v. City of Westminster*, 177 F.3d 839 (1999). Here, American Airlines maintains that while the instruction did not affirmatively misstate the law, it did not fairly and adequately explain the law, or cover the issues.  The substantive Montreal Convention Jury Instruction 29 was inadequate to convey the definition of "accident" because it omitted key clarifying language requested by American Airlines that would have avoided misleading the jury.

The Supreme Court in *Air France v. Saks* 470 U.S. 392, 405–406, 105 S.Ct. 1338, 1345, 84 L.Ed.2d 289 (1985) first clarified that an "accident" within the meaning of Article 17 of the Warsaw Convention is "an unexpected or unusual event or happening that is external to the passenger." 470 U.S. at 395. The Court determined that the term "accident" should "be "flexibly applied" after assessment of all the circumstances surrounding a passenger's injuries." *Id*. at 405, 105 S.Ct. 1338.

The first case to decide that a violation of airline policy might be an "accident" within the meaning of the Warsaw Convention was *Husain v. Olympic Airways*, 116 F. Supp. 2d 1121 (N.D. Cal. 2000), in which the Northern District of California held that a flight attendant's failure to respond to the request of an asthmatic passenger to be reseated away from cigarette smoke, in violation of both industry standards and the airline's own policies, constituted an "unexpected or unusual event" that qualified as an accident under Article 17. This decision was subsequently affirmed by the Ninth Circuit and the Supreme Court in *Olympic Airways v. Husain*, 540 U.S. 644 (2004), establishing the principle that airline crew conduct violating established policies and ignoring a specific request by the passenger can constitute "accidents" when such conduct is unexpected and unusual. "The rejection of an explicit request for assistance would be an 'event' or 'happening' under the ordinary and usual definitions of these terms." *Olympic Airways v. Husain*, 540 U.S. 644, 655. It was more than mere inaction—it was the company's failure to respond to a specific passenger request in violation of airlines policy.

A significant amount of clarifying (and persuasive if not binding) jurisprudence occurred

MOTION FOR NEW TRIAL AND MOTION TO VACATE
PURSUANT TO RULE 59 OF THE FEDERAL RULES OF
CIVIL PROCEDURE
CASE NO.: 5:23-cv-05607-NW-SVK

1    in the 20 years since *Olympic Airways* was decided. The language American Airlines sought to

2    include was discussed in *White v. Emirates Airlines, Inc.,* 493 F. App'x 526, 531 (5th Cir. 2012),

3    and repeated in the recent district court decision of *Arzu v. Am. Airlines, Inc.,* No. 4:24-CV-

4    00433-P, 2025 WL 1347329, at *4 (N.D. Tex. May 8, 2025) (no "accident" notwithstanding

5    airline's "reactionary delays, confusion of roles, and departures from policy, such as the failure

6    to contact the physician on call" where "the flight crew 'took action to assist' [decedent] in

7    multiple ways"). *Arzu* presented a compelling model here, in that it confirmed that a departure

8    from an airline's policy does not necessarily mean that an "accident" occurred. *Id.*, citing

9    *Blansett v. Cont'l Airlines, Inc.*, 379 F.3d 177, 182 (5th Cir. 2004).

10        So too with "an imperfect response" to a medical emergency: "Our conclusion is

11    consistent with the decisions of other circuits, which have reasoned that even a flight crew's

12    arguably imperfect response to a passenger's medical emergency does not necessarily constitute

13    an Article 17 "accident." *White v. Emirates Airlines, Inc.*, 493 Fed.Appx. at 531, citing *Hipolito*

14    *v. Nw. Airlines, Inc.*, 15 Fed.Appx. 109 (4th Cir.2001) (per curiam), *Krys v. Lufthansa Ger.*

15    *Airlines*, 119 F.3d 1515 (11th Cir.1997); Rajcooar v. Air India Ltd., 89 F.Supp.2d 324, 328

16    (E.D.N.Y.2000) ("A heart attack does not meet th[e] definition [of 'accident'].... Nor does

17    allegedly inadequate medical care without some showing of unexpected circumstances.")

18    (citations omitted); *Abramson v. Japan Airlines Co., Ltd.*, 739 F.2d 130, 133 (3d Cir.1984),

19    abrogated on other grounds by *El Al Isr. Airlines, Ltd.*, 525 U.S. at 160–61, 119 S.Ct. 662

20    (holding that a flight attendant's refusal to allow a passenger to lie down to alleviate a medical

21    condition did not constitute an "accident," and explaining, "[i]n the absence of proof of abnormal

22    external factors, aggravation of a pre-existing injury during the course of a routine and normal

23    flight should not be considered an 'accident' within the meaning of Article 17").

24        If an imperfect response to a passenger's own obvious medical emergency is not an

25    "accident," how could a "policy compliant" response to a passenger who is in no obvious distress

26    and denies that they need medical care constitute an accident?

27        An instruction that places a greater burden on one party than the law requires is grounds

28

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

MOTION FOR NEW TRIAL AND MOTION TO VACATE
PURSUANT TO RULE 59 OF THE FEDERAL RULES OF
CIVIL PROCEDURE
CASE NO.: 5:23-cv-05607-NW-SVK

- 11 -

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1   for reversal. *Bearchild v. Cobban* (9th Cir. 2020) 947 F.3d 1130, 1145.  Here, the definition of

2   "accident" favored plaintiffs because it was described as "flexibly applied" without stating the

3   obvious limitations identified by courts in other circuits, namely addressing the "imperfect

4   response" language request by American Airlines.

5        The Court noted that there was no Ninth Circuit authority requiring the language in

6   paragraph 4 of the version of Jury Instruction 29 requested by American Airlines and that aspects

7   of the case presented as matters of first impression. Ex. G, 43:12–18. This no doubt complicated

8   the Court's role in striking the appropriate balance.  The Court also noted that the word "may"

9   (as opposed to "must") was sufficient. Ex. G, 42:20-23. In context, American Airlines maintains

10  that a mere mention of "may" without explanation was insufficient because of the inclusion of

11  "flexibly applied" in light of the overall length of the instruction.

12       By giving the "flexibility" language from *Air France v. Saks*, 470 U.S. 392 (1985), a

13  forty-year old decision issued long before the Montreal Convention came into effect, without

14  clarification from subsequent persuasive authority that "not every violation of policy is an

15  accident" or "an imperfect response to a medical emergency is not necessarily an accident," the

16  instruction was weighted heavily in favor of Plaintiffs. It suggested to the jury that the definition

17  of accident should be stretched to be more inclusive but never foreshortened or limited.  It was

18  thus misleading—in that it counseled the jury to take a more expansive view of what constitutes

19  an accident and gave no clarification about reasonable limits.

20       **D.  The Error Was Not Harmless**

21       Using a "practical approach," focusing on whether, in the light of the issues and viewed

22  as a whole, the instructions were complete, clear, correct, and adequate (*Ridgeway v. Walmart*

23  *Inc.*, 946 F.3d 1066, 1081 (9th Cir. 2020)), the omission of the requested explanatory language in

24  Jury Instruction 29 was not harmless.  It is more probable than not that the jury would not have

25  reached the same verdict had it been properly instructed.  *Fierro v. Smith*, 39 F.4th 640, 651 (9th

26  Cir. 2022); *BladeRoom Grp. Ltd. v. Emerson Elec*. Co., 20 F.4th 1231, 1243 (9th Cir. 2021);

27  *Sidibe v. Sutter Health* (9th Cir. 2024) 103 F.4th 675, 684–685.

28

MOTION FOR NEW TRIAL AND MOTION TO VACATE
PURSUANT TO RULE 59 OF THE FEDERAL RULES OF
CIVIL PROCEDURE
CASE NO.: 5:23-cv-05607-NW-SVK

- 12 -

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1    Because the jury had an insufficiently clear instruction on whether the failure to follow a

2    policy is an "accident," the jury concluded there was liability despite plaintiff's expert's

3    admission that the only policy in evidence was not violated.  Trial Transcript, September 9,

4    2025, 360:15-361:15. The policies in the Flight Manual did not identify any of the subtle

5    symptoms of a TIA—but rather the gross symptoms of a full stroke—which did not occur until

6    shortly before landing in Madrid.  Even then, the Flight Manual gave the flight attendants

7    discretion to respond to an emergency.

8    The jury found liability even though not a single policy was identified in Plaintiff's

9    closing. The policy was in evidence and the policy provided nothing that mandated a different

10   course of action than the one taken by the American Airlines crew.  Thus, it is more probable

11   than not that the jury would have arrived at a different result had they been possessed with a

12   greater explanation of the existing framework of Article 17 liability.

13   **E.  The Verdict Was Against the Clear Weight of the Evidence**

14   A new trial is also warranted because the verdict is against the clear weight of the

15   evidence.

16   Plaintiff's case was aided by skillful advocacy in closing argument, which notably failed

17   to identify any policy that American Airlines failed to follow. The gravamen of the summation

18   was that American Airlines had caused the delay which lead to the worsening of Mr. Plasencia's

19   outcome. Trial transcript, September 17, 2025, 1181. Plaintiff's counsel argued that that delay

20   was caused by one or both incidents: the incident at boarding, or the incident at which Mr.

21   Plasencia had some trouble walking to the bathroom but did not apparently need any help.

22   Neither episode was clearly linked to any policy violation by American Airlines personnel.  That

23   is evidenced by closing argument, wherein no actual policy was identified ("What happened here

24   was a crystal clear unequivocal violation of the written policies and procedures of industry

25   customs, of common sense and decency.")

26   As argued in both the Rule 50(a) and 50(b) motions, no reasonable juror could have

27   concluded that American Airlines failed to follow industry standards, the flight operations

28

manual or the in-flight manual either (a) prior to the departure or (b) 1.5 hours into Flight 68 from Miami to Madrid. There was no evidence of an "unusual" or "unexpected" failure to abide by industry standards or American's manuals. Plaintiff's flight attendant expert conceded as much. The policies permit cabin crew to exercise judgment as meets the moment—and there was no evidence presented by Plaintiff that clearly triggered a prescribed course of action. American airlines crewmembers met the standard, Ms. Lord-Jones testified. There was thus no cognizable "accident" under the Montreal Convention.

The incident on the ground cannot be the basis for liability. This incident was identified by Plaintiff's expert neurologist Dr. Schim not as a stroke, but as a TIA. Nothing in the in-flight manual provided direction or guidance with respect to TIA. Trial Ex. 9, p. 67. In any event, Mr. Plasencia's symptoms were not so pronounced as to clearly indicate a stroke had occurred or could occur in the future. American Airlines crew complied with industry standards by offering assistance, and suggesting they disembark for medical care.

Plaintiff admitted she did not provide her husband's medical history or give any reason for crew to be particularly concerned. Nowinski Decl., Ex. A, 237:6-7. She admitted that she was given the opportunity to get off the plane. *Id.* at 299:25-300:7.) Mr. Plasencia said he felt fine. He did not tell Captain Occhino that he was having any medical issues. He wanted to go to Spain.

Plaintiff's cabin crew expert Kathleen Lord-Jones confirmed there was no violation of policy. Nowinski Decl., Ex. A, 360:15-361:15.

With respect to the incident 1.5 hours into the flight, Mr. Plasencia displayed no further signs of a worsening condition. He rose to go to the lavatory and had some difficulty walking. Ms. Tavantzis did not describe what "difficulty walking" looks like. Ms. Tavantzis testified that he didn't need help getting to the lavatory but was given help by FA Eccles. *Id.* at 245; 302). Plaintiff denied that her husband displayed signs of stroke 1.5 hours into the flight. (Q: Just to clarify, when Flight Attendant Eccles was assisting your husband to and from the lavatory, there were no other signs of a stroke? A: No, just the walking.") She voiced no concerns at that time

Condon & Forsyth LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

MOTION FOR NEW TRIAL AND MOTION TO VACATE
PURSUANT TO RULE 59 OF THE FEDERAL RULES OF
CIVIL PROCEDURE
CASE NO.: 5:23-cv-05607-NW-SVK

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1  that his condition was worsening. *Id.* at 305:2-307:1. There is no testimony that she informed

2  anyone of any need to seek emergency care in Bermuda.

3      The fact that Mr. Plasencia was ambulating to the bathroom at 1.5 hours into the flight

4  suggests that whether he is truly in need of help is a judgment call—he himself said he didn't

5  need help and Plaintiff Tavantzis confirmed that he didn't need help. The inflight manual

6  identifies the list of symptoms that Eccles is supposed to have recognized as a stroke, and Mr.

7  Plasencia was at most experiencing some type of dizziness or weakness without any of the other

8  symptoms indicating an emergency:

9      Dizziness, weakness, flaccid muscles or inability to move muscles in extremities, falling
   suddenly/ one-sided weakness or loss of movement

10      • Face - mouth drooping or twisted to one side, drooling, most often only on one side of
    the body

11      • Slurred speech, difficulty talking or being understood, an inability to communicate, or
    confusion

12      • Loss of bodily functions

13      • Severe headache
    • Unconsciousness

14      • Temporary blurred, dimmed or double vision

15      • Nausea/vomiting

16  (Trial Ex. 9, p. 67.)

17      Plaintiff and FA Eccles both testified that at this point, they did not observe any visible

18  signs of a stroke other than difficulty walking, which is not explicitly listed as a symptom of a

19  stroke in American Airlines training documents.  Nowinski Decl., Ex. A, 305:8-11; Ex. C, 548:7

20  -549:25.   The jury also heard ample testimony from American Airlines crew that difficulty

21  walking is often the result of a number of other causes.  One and a half hours in, Mr. Plasencia

22  exhibited only subtle, non-specific symptoms that Dr. Schim acknowledged would be difficult

23  for a non-neurologist to recognize as a symptom of a TIA, much less alert crew members that the

24  plane needed to divert back to Miami or to Bermuda.

25      The weight of the evidence is that Plaintiff and Mr. Plasencia made no overt health

26  related request, and Mr. Plasencia showed no overt signs of a serious health emergency that

27  would have required action by American Airlines cabin crew.

28      **VI. THE VERDICT IS A MISCARRIAGE OF JUSTICE**

MOTION FOR NEW TRIAL AND MOTION TO VACATE
PURSUANT TO RULE 59 OF THE FEDERAL RULES OF
CIVIL PROCEDURE
CASE NO.: 5:23-cv-05607-NW-SVK

- 15 -

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1   While the Montreal Convention creates a framework whereby injured passengers can

2   recover for their injuries, there is no recovery for persons who have entirely internal illnesses that

3   are not occasioned or worsened by the operation of the aircraft or the actions of crew.

4   As argued in the Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P.

5   50(b), the verdict creates liability because the American Airlines crew did not unilaterally

6   deplane a passenger against his wishes simply because he presented subtle symptoms of a

7   potential illness as reported by his traveling companion. Mr. Plasencia denied being ill and stated

8   that he wished to continue with his travels. The crew's alleged failure to recognize difficulty

9   walking to the lavatory as a sign of early stroke is allegedly an "accident" because non-medical

10  professionals did not divert the plane or call for medical assistacne—although Plaintiff and Mr.

11  Plasencia admittedly never informed anyone of the supposed worsening of his symptoms.  This

12  outcome works a hardship to the industry and to the flying public—and gives rise to the

13  possibility that airline crew will be faced with deciding whether to deplane passengers for vague,

14  non-specific symptoms reported not by them—but by their traveling companions.

15  On the basis of what was objectively known to the cabin and flight crew at all relevant

16  moments in time, there should be no liability here. Without a specific request for medical

17  attention, an accommodation, or desire to disembark, American Airlines should not be held liable

18  for not affirmatively forcing Mr. Plasencia off the flight over-his stated wish to travel to Spain

19  and his assurances that he was fine.

20  American Airlines asks the Court to see the verdict not only for its failure of evidence of

21  an accident within the meaning of the Montreal Convention, but for the precedent it creates

22  going forward. Every airline that does not escort a passenger off the plane because of an inkling

23  of unwellness is risking significant liability if it were to happen that the passenger thereafter

24  becomes ill. Plaintiff has admitted that Mr. Plasencia's TIA and subsequent stroke were entirely

25  internal to him and that Mr. Plasencia's TIA would have been difficult to recognize by anyone

26  not trained as a neurologist. Without evidence that American Airlines was in possession of

27  information that compelled a different course of action, the existing verdict is a miscarriage of

28

MOTION FOR NEW TRIAL AND MOTION TO VACATE
PURSUANT TO RULE 59 OF THE FEDERAL RULES OF
CIVIL PROCEDURE
CASE NO.: 5:23-cv-05607-NW-SVK

- 16 -

1    justice and a new trial should be ordered.

2    **VII.    THE JUDGMENT WAS EXCESSIVE IN LIGHT OF PLAINTIFF**
         **PLASENCIA'S DEATH; UNDER RULE 50(e) OF THE FEDERAL RULES OF**
3        **CIVIL PROCEDURE, THE COURT SHOULD AMEND THE JUDGMENT TO**
         **STRIKE ALL AWARDS OF FUTURE DAMAGES TO MR. PLASENCIA DUE**
4        **TO HIS DEATH PRIOR TO THE ENTRY OF FINAL JUDGMENT**

5        The verdict here was excessive—and the Court may and should order a new trial because

6    Mr. Plasencia has now passed, and the award of millions of dollars to his successor that the jury

7    had rendered for his future care is an unjust windfall.

8        "In general, there are four basic grounds upon which a Rule 59(e) motion may be

9    granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the

10   judgment rests; (2) if such motion is necessary to present newly discovered or previously

11   unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the

12   amendment is justified by an intervening change in controlling law." *Sch. Dist. No. 1J,*

13   *Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993). "[O]ther, highly

14   unusual circumstances," also may "warrant[ ] reconsideration." *Id.*

15       Here, all four grounds, in addition to "highly unusual circumstances," exist. Jesus

16   Plasencia died on October 11, 2025. Mr. Plasencia's death occurred 24 days after a jury verdict

17   of $9,629,829.55 was reached against American Airlines and prior to the entry of final judgment.

18   The jury verdict included an award of $4,772,429.95 for Mr. Plasencia's future economic

19   damages and $2,320,000.00 for Mr. Plasencia's future pain and suffering. On September 17,

20   2025, the Court asked Plaintiff to submit a proposed judgment, and asked how long it would take

21   for Plaintiff to prepare the judgment. Plaintiff stated that a proposed judgment would be filed the

22   following day. The Court specifically ordered Plaintiff to file a "relatively straightforward"

23   judgment that was "consistent with the number that has been stipulated here in court." Trial

24   Transcript September 17, 2025, 1476-1477.

25       Plaintiff did not do so and, instead, submitted a Motion for Entry of Final Judgment

26   seeking an award of prejudgment interest on the entire jury verdict, including the awards for

27   future damages. ECF No. 209. The sole reason that entry of judgment did not occur prior to Mr.

28

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1  Plasencia's death is due to this strategic litigation decision by Plaintiff.  Accordingly, the fact

2  that judgment had not been entered as of the date of Mr. Plasencia's death is not the fault of the

3  Court, or of American Airlines, but is instead the result of a calculated litigation decision made

4  by Plaintiff and her attorneys to maximize their recovery beyond what the jury awarded.

5          The Court entered judgment in this matter on December 22, 2025, following the grant of

6  Plaintiff's Rule 25(a) Motion to Substitute.  ECF Nos. 236, 237.  The judgment was effective

7  December 22, 2025, and was <u>not</u> entered *nunc pro tunc* or backdated to a date before Mr.

8  Plasencia's death.

9          The Court should strike the award of future damages to Mr. Plasencia in light of his death

10  prior to entry of final judgment.  American Airlines has been unable to locate any provision

11  within the Montreal Convention or any case applying federal law that specifically addresses the

12  issue of whether a plaintiff's death post-verdict, but before the entry of final judgment, will

13  extinguish the amounts awarded by the jury as compensation for future medical expenses and

14  pain and suffering.  As set forth below, federal common law and **all** California precedent dictates

15  that Mr. Plasencia's award should be stricken.  Accordingly, all four bases for amendment of the

16  judgment are met, although American Airlines need only establish one.  The judgment rests upon

17  the manifestly erroneous assumption that Mr. Plasencia's death prior to judgment did not

18  extinguish his claims for future damages.  Mr. Plasencia's death did not occur, and therefore was

19  not discovered, until after the verdict was entered.  Manifest injustice would result if Mr.

20  Plasencia is awarded damages he will never incur.  There has also been a change in the

21  applicable law due to Mr. Plasencia's death after verdict but before judgment.

22          ***F.  At Common Law, Mr. Plasencia's Claims Are Extinguished By His Death.***

23          The Supreme Court has described the common law survival rule as follows: "an injured

24  party's personal claim was extinguished at common law upon the death of either the injured party

25  himself or the alleged wrongdoer."  *Moor v. Alameda Cnty.*, 411 U.S. 693, 703 (1973), *citing* W.

26  Prosser, Torts 888—891 (4th ed. 1971).  Accordingly, at common law, Mr. Plasencia's claims

27  are extinguished by his death.

28

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1   However, the United States Supreme Court has held that in federal question cases where

2   federal law does not provide its own rule of survival, United States courts should look to the

3   statutory law of the forum modifying the common-law rule to avoid this harsh result. *Robertson*

4   *v. Wegmann*, 436 U.S. 584, 589–90, 98 (1978). In reaching this conclusion in connection with a

5   claim arising under 42 U.S.C. § 1983, the Supreme Court looked to the law of the forum

6   (Louisiana), and determined that under Louisiana's survivorship laws, the plaintiff's claims were

7   extinguished. The Court should do the same here.

8   The Supreme Court in *Robertson* held that, in an action governed by 42 U.S.C. § 1983,

9   where federal law is "deficient," courts are "to turn to 'the common law, as modified and

10  changed by the constitution and statutes of the [forum] State,' as long as it is 'not inconsistent

11  with the Constitution and laws of the United States.'" *Id.* at 588. The Court reasoned that "'the

12  survival of civil rights of actions under § 1983 upon the death of either the plaintiff or

13  defendant'" was an area not covered by federal law. *Id.* at 589 (*quoting Moor v. County of*

14  *Alameda*, 411 U.S. 693, 702 n. 14 (1973)). The Supreme Court therefore applied Louisiana law,

15  holding that the decedent's claims arising under 42 U.S.C. § 1983 were extinguished because the

16  Louisiana survivorship statute did not allow a deceased's personal representative to be

17  substituted as plaintiff in action other than those for damage to property, and allowed an action to

18  survive only in favor of the decedent's spouse, children, parents or siblings.

19  **G.  Under California Law, Mr. Plasencia's Future Damage Claims Are Extinguished.**

20  As set forth above, in the absence of federal law on the issue of the survival of Mr.

21  Plasencia's claims arising under the Montreal Convention, Supreme Court precedent in

22  *Robertson* dictates that this Court should look to the law of the forum, California, to fill the gaps.

23  Plaintiff has already conceded that the damages recoverable in this lawsuit are governed by

24  California law, subject to the Montreal Convention limitations of liability, and this is now the

25  law of the case.

26  Under California law, claims generally survive a plaintiff's death (CAL. CIV. PROC. CODE

27  § 377.20), although claims for future damages are limited by § 377.34(a) of the California Code

28

MOTION FOR NEW TRIAL AND MOTION TO VACATE
PURSUANT TO RULE 59 OF THE FEDERAL RULES OF
CIVIL PROCEDURE
CASE NO.: 5:23-cv-05607-NW-SVK

of Civil Procedure:

> In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived, and do not include damages for pain, suffering, or disfigurement.

CAL. CIV. PROC. CODE § 377.34(a) (West 2025).[1]

Section 377.34(a) applies to extinguish Mr. Plasencia's future damage claims in light of his death prior to the entry of final judgment. California Courts of Appeal have examined this issue in the specific context of a plaintiff's death after jury verdict and before entry of final judgment. *Kellogg v. Asbestos Corp. Ltd.*, 41 Cal. App. 4th 1397, 49 Cal. Rptr. 2d 256 (1996) **(involving a fact pattern identical to this case where plaintiff died between verdict and before entry of final judgment)**; *Cadlo v. Metalclad Insulation Corp.*, 151 Cal. App. 4th 1311, 1313 (2007) (involving a fact pattern identical to this case as well, acknowledging that a plaintiff's death after verdict and before entry of judgment will extinguish claims for future damages, but permitting entry of judgment *nunc pro tunc* because plaintiff died two days after verdict and proposed judgment had already been filed at time of plaintiff's death); *Williamson v. Plant Insulation Co.*, 23 Cal. App. 4th 1406, 28 Cal. Rptr. 2d 751 (1994) (plaintiff died during trial).

In *Kellogg v. Asbestos Corp. Ltd.*, 41 Cal. App. 4th 1397 (1996), the plaintiffs, husband and wife, filed an asbestos-related personal injury action, alleging that plaintiff husband had contracted a fatal lung disease following his exposure to asbestos, including asbestos fibers produced, sold, and shipped to plaintiff's employer by defendant. Plaintiff wife's claim was based on loss of consortium. Plaintiff husband died after submission of the case but before final

---

[1] This action was filed on October 31, 2023. Accordingly, American Airlines concedes that, if Mr. Plasencia's Montreal Convention claim survives his death, Mr. Plasencia's claims for past noneconomic damages survives under current § 377.37(b). This would not be the case if this lawsuit had been filed before January 1, 2022 or on or after January 1, 2026. This expansion of damages recoverable under California law is temporary only, and unless the legislature re-enacts the provision (which it has not yet done), cases filed on or after January 1, 2026, will not be eligible to recover non-economic damages for a decedent's pre-death suffering.

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

judgment. The trial court subsequently entered judgment in favor of both plaintiffs. Although

the judgment did not specify, it appeared that a substantial portion of the award to plaintiffs was

for plaintiff husband's pre-death pain and suffering, which was at that time barred by Probate

Code § 573(c), the predecessor statute to § 377.34. The Court of Appeal reversed, instructing

that "[b]ecause Kellogg died after submission of the case but before final judgment, and because

the trial court's statement of decision did not sufficiently identify the extent to which his award

included damages for his pain and suffering, we reverse that portion of the judgment awarding

damages to Kellogg." *Id.* at 1400. The Court further held that the judgment of the trial court had

to be reversed completely as to the award to the plaintiff husband because it could not be

determined what amount was intended to compensate plaintiff husband for his past economic

losses, which were the only amount he could recover because he died before the entry of final

judgment. *Id.* at 1408. The Court of Appeal left the award of damages to plaintiff wife for loss

of consortium undisturbed. *Id.*

      Similarly, in *Williamson v. Plant Insulation Co.*, 23 Cal. App. 4th 1406 (1994), also an

asbestos case, the plaintiff died during trial. The trial court entered a judgment containing an

award for pain and suffering prohibited by CAL. CIV. PROC. CODE § 377.34 *nunc pro tunc*. The

Court of Appeal reversed, holding the court had no authority to predate the judgment *nunc pro

tunc* before the date of the plaintiff's death, and therefore no award for pre death pain and

suffering could be awarded, as at that time, Probate Code § 573(c), the predecessor to Cal. Civ.

Proc. Code § 377.34 barred such recovery, holding that "noneconomic damages do not survive if

the plaintiff dies before judgment." *Id.* at 1417. The Court reasoned that "the cases on *nunc pro

tunc* entry of judgment push that line back a short distance, to the time when judgment could

have been rendered even if it was not. That movement rests on a sound rationale—that a party

should not suffer from the court's own delay in giving judgment—and it would be neither wise

nor within our authority to erase the line thus drawn." *Id.*

      In *Cadlo v. Metalclad Insulation Corp.*, 151 Cal. App. 4th 1311, 1313 (2007), the

plaintiff died two days after a jury verdict in his favor in his asbestos-related personal injury

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1   action.  At the time of his death, the proposed judgment had already been filed with the Court but

2   not signed simply because the Court had not performed that clerical task yet.  *Id.* at 1323.

3   Judgment was entered on April 4, 2005, more than one week after his death, on behalf of his

4   widow individually and as successor in interest to her husband.  *Id.*  Subsequently, the trial court

5   vacated that judgment and, *nunc pro tunc*, entered a retroactive judgment to March 23, 2005, the

6   day after the verdict and one day before plaintiff died. *Id.*  In that judgment, the court award

7   included damages for future economic loss and for pain and suffering. Defendants appealed that

8   judgment.  *Id.*  *Cadlo* stands for the proposition that "When a court validly exercises its

9   discretion to issue a judgment *nunc pro tunc*, the date of that judgment determines whether

10  section 377.34 bars recovery."  The *Cadlo* decision cites *Williamson* and *Kellog* with approval

11  and acknowledges that § 377.34 bars recovery for future damages where a plaintiff dies after

12  verdict but before judgment.  The decision stands for the proposition that judgment *nunc pro*

13  *tunc* may be entered to backdate a judgment before a plaintiff's death where "the parties had

14  done everything they could to put the case in a posture where it was ready for final rendition of

15  judgment" and that "a court delay should not be used to prejudice the parties."  *Id.* at 1322.  In

16  *Cadlo*, the proposed judgment had been filed at the time of the plaintiff's death, and the only

17  reason it had not been signed off on prior to the plaintiff's death was due to court delay.  *Id.* at

18  1333.  *Cadlo* reinforces the holdings of *Kellog* and *Williamson* and supports American Airlines'

19  position, because the judgment in this case was entered after Mr. Plasencia's death – not only is

20  there is no order entering judgment *nunc pro tunc*, but even if the Court was inclined to do so, it

21  should not because it is only permitted in situations where the Court's own delay caused entry of

22  judgment to be delayed.  Here, Mr. Plasencia died while Plaintiff's motion seeking pre and post

23  judgment interest was pending. Plaintiff made the decision to file this motion before entry of

24  final judgment to attempt to maximize their recovery, and the delay in entry of judgment

25  occurred through no fault of the Court.

26      Here, under *Williamson*,  *Kellog*, and *Cadlo*, in the absence of a valid *nunc pro tunc*

27  judgment, § 377.34 applies with full force to bar Mr. Plasencia's claims for future damages,

28

1   economic and non-economic.  These claims are extinguished by Mr. Plasencia's death, and the

2   Court should amend the judgment accordingly.

3        Plaintiff has relied on *Boyd v. Bulala,* 905 F.2d 764 (4th Cir. 1990).  *Boyd* held that the

4   defendant's post-trial motions seeking to introduce new evidence and a new trial when a minor

5   plaintiff died after verdict but before judgment.  In reaching its decision, the Fourth Circuit

6   applied the state law of Virginia to this issue, which is indisputably not applicable here.  The

7   narrow holding reached by the Fourth Circuit was that "under Virginia law, Veronica Boyd's

8   death after verdict did not require converting her claim into one for wrongful death" and that the

9   District Court did not abuse its discretion by denying the defendant's request to introduce new

10  evidence of plaintiff's death and for a new trial.  *Id.*  at 767.  The Fourth Circuit reached this

11  decision after years of litigation and appeals on this issue, and after certifying this issue to the

12  Virginia Supreme Court.

13        All other cases relied upon by Plaintiff in support of Plaintiff's Rule 25(a) Motion to

14  Substitute Plaintiff in place of Mr. Plasencia did not address situations where a plaintiff dies after

15  verdict but before judgment (in all other cases cited by Plaintiff, the plaintiff died after the entry

16  of final judgment), and did not apply California law or federal common law.  *Davis by Davis v.*

17  *Jellico Community Hosp. Inc.*, 912 F.2d 129, 131 (6th Cir. 1990) (final judgment entered same

18  day as jury verdict; plaintiff died 33 days after entry of final judgment); *Le v. United States*, 138

19  F.4th 264 (5th Cir. 2025) (plaintiff died during pendency of appeal).

20        Moreover, awarding future medical care and pain and suffering damages after Mr.

21  Plasencia's death would violate fundamental public policy against windfall damages and unjust

22  enrichment.  The California Supreme Court has explicitly recognized the state legislature's

23  legitimate interest in "limiting a defendant's obligation to those future damages that a plaintiff

24  actually incurs, eliminating the so-called 'windfall' obtained by a plaintiff's heirs when they

25  inherit a portion of a lump-sum judgment that was intended to compensate the injured person for

26  losses he in fact never sustained." *Am. Bank & Tr. Co. v. Cmty. Hosp.*, 36 Cal. 3d 359, 369

27  (1984).  The $4,772,429.95 award for future medical care represents expenses that Mr. Plasencia

28

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

MOTION FOR NEW TRIAL AND MOTION TO VACATE
PURSUANT TO RULE 59 OF THE FEDERAL RULES OF
CIVIL PROCEDURE
CASE NO.: 5:23-cv-05607-NW-SVK

- 23 -

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1 will never incur, and the $2,320,000.00 for future pain and suffering represents suffering he will

2 never experience. Allowing recovery of these amounts would provide Plaintiff with

3 compensation for losses that never occurred, directly contravening the fundamental principle that

4 tort damages should correspond to actual losses sustained. This windfall would exceed $7

5 million and represents the exact type of unjust enrichment that survivorship statutes are designed

6 to prevent.

7 **X. CONCLUSION**

8      For the reasons articulated herein, American Airlines requests a new trial to cure the

9 instructional error, because the verdict was contrary to the weight of the evidence, and because

10 Mr. Plascencia's passing made a significant portion of the judgment unrecoverable. In the

11 alternative, the Court is asked to vacate those portions of the damages award awarded for his

12 future medical care.

13 Dated: January 19, 2026                  CONDON & FORSYTH LLP

14

15                                   By: /s/ *Ivy L. Nowinski*

16                                   IVY L. NOWINSKI

                                  -and-

17                                   DAVID J. HARRINGTON

18                                   CONDON & FORSYTH LLP

                                  7 Times Square, 18th Floor

19                                   New York, NY 10036

                                  Telephone: (212) 490-9100

20                                   Facsimile: (212) 370-4453

21                                   Attorneys for Defendant

                                  AMERICAN AIRLINES, INC.

22

23

24

25

26

27

28

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on January 19, 2026, I electronically filed the foregoing

3   with the Clerk of Court using the CM/ECF system, which will send notification of such

4   filing to counsel or parties of record electronically by CM/ECF.

5

6          Sanjiv N. Singh
           SANJIV N. SINGH, APLC
7          1700 South El Camino Real, Suite 503
           San Mateo, California 94402
8          Telephone: (650) 389-2255
           E-mail: ssingh@sanjivnsingh.com
9

10         Darren P. Nicholson
           Hannah M. Crowe
11         BURNS CHARLES LLP
           900 Jackson Street, Suite 500
12         Dallas, TX 75202
           Telephone: (469) 904-4550
13         Email: dnicholson@burnscharest.com;
           hcrowe@burnscharest.com
14

15         *Attorneys for Plaintiff*

16

17                                         /s/ *Ivy L. Nowinski*
                                           IVY L. NOWINSKI
18

19

20

21

22

23

24

25

26

27

28