1   Ivy L. Nowinski (State Bar No.: 268564)
    Email: inowinski@condonlaw.com
2   CONDON & FORSYTH LLP
    1901 Avenue of the Stars, Suite 1050
3   Los Angeles, California 90067-6036
    Telephone: (310) 557-2030
4   Facsimile:  (310) 557-1299

5       - and -

6   David J. Harrington (*Pro Hac Vice*)
    Email: dharrington@condonlaw.com
7   William de Wolff (*Pro Hac Vice*)
    Email: wdewolff@condonlaw.com
8   CONDON & FORSYTH LLP
    7 Times Square, 18th Floor
9   New York, New York 10036
    Telephone: (212) 490-9100
10  Facsimile: (212) 370-4453

11  Attorneys for Defendant
    AMERICAN AIRLINES, INC.

12

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15

16  ANA MARIA MARCELA TAVANTZIS, as an )   Case No. 5:23-cv-05607-NW-SVK
    individual, and as Legal Guardian of JESUS )
17  PLASENCIA, an incapacitated person,        )  **OPPOSITION OF DEFENDANT**
                                                )  **AMERICAN AIRLINES, INC. TO**
18                  Plaintiff,                  )  **PLAINTIFF'S MOTION TO CORRECT**
                                                )  **AND AMEND THE JUDGMENT [ECF**
19              vs                              )  **NO. 241]**
                                                )
20  AMERICAN AIRLINES, INC.,                    )
                                                )
21                  Defendant.                  )
                                                )
22                                              )
                                                )
23  _____ )

24          Defendant AMERICAN AIRLINES, INC., ("American Airlines"), by and through its

25  counsel of record, Condon & Forsyth LLP, hereby respectfully submits its Opposition to Plaintiff

26  Marcela Tavantzis's ("Plaintiff") Motion to Correct and Amend the Judgment [ECF No. 241].

27

28

1

2

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ i-v

INTRODUCTION ........................................................................................................................ 1

RELEVANT FACTS .................................................................................................................... 2

ARGUMENT ............................................................................................................................... 7

I.      THE COURT LACKS DISCRETION TO BACKDATE THE JUDGMENT IN THIS MATTER *NUNC PRO TUNC* ............................................................................ 7

II.     IN A MATTER OF FIRST IMPRESSION WITHIN THE NINTH CIRCUIT, THIS COURT SHOULD HOLD THAT THE MONTREAL CONVENTION PROHIBITS THE RECOVERY OF PREJUDGMENT INTEREST ................... 11

III.    ASSUMING, *ARGUENDO*, THAT THE MONTREAL CONVENTION PERMITS RECOVERY OF PREJUDGMENT INTEREST, CALIFORNIA LAW APPLIES TO PLAINTIFF'S DAMAGE CLAIMS AND BARS PREJUDGMENT INTEREST HERE ................................................................ 18

        A.     Under California Law, Plaintiff's Prejudgment Interest Claim Was Waived when Not Submitted to the Trier of Fact .................................... 20

        B.     Under California Law, The Jury's Determination of Plaintiff's Comparative Negligence Is a Bar to the Recovery of Prejudgment Interest ..................................................................... 21

        C.     Under California Law, Plaintiff is Entitled Only to Prejudgment Interest on Past Economic Losses ............................................................ 23

IV.    ASSUMING, *ARGUENDO*, THAT FEDERAL LAW APPLIES TO THE ISSUE OF RECOVERABLE DAMAGES, THIS COURT SHOULD NOT EXERCISE ITS DISCRETION TO AWARD PREJUDGMENT INTEREST ON PAST DAMAGES ................................................................................................... 23

CONCLUSION ........................................................................................................................... 25

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*25 W. Air Charter, Inc. v. Schembari,*
5     2019 WL 6998789 (C.D. Cal. Mar. 7, 2019) .........................................................................21

6 *In re Air Crash at Lexington, Ky.,*
    Aug. 27, 2006, No. CIVA 506-CV-316-KSF, 2008 WL 1909007
7     (E.D. Ky. Apr. 25, 2008) .....................................................................................................17

8 *In re Aircrash in Bali, Indonesia on April 22, 1974,*
    684 F.2d 1301 (9th Cir.1982) ..............................................................................................18
9

10 *Barnes v. District of Columbia,*
    924 F. Supp. 2d 103 (D.D.C. 2013) .....................................................................................11
11

12 *Barry v. Raskov,*
    232 Cal. App. 3d 447 (1991) ...............................................................................................20
13

*Bytska v. Swiss Int'l Air Line, Ltd.,*
14     No. 15-CV-483, 2016 WL 6948375 (N.D. Ill. Nov. 28, 2016) ............................................18

15 *Cadlo v. Metalclad Insulation Corp.,*
    151 Cal. App. 4th 1311 (2007) ..............................................................................................9
16

17 *Deere & Co. v. Deutsche Lufthansa Aktiengesellschaft,*
    855 F.2d 385 (7th Cir.1988) .....................................................................................13, 14, 15
18

*Dochak v. Polskie Linie Lotnicze LOT S.A.,*
19     No. 15 C 4344, 2017 WL 2362570 (N.D. Ill. May 30, 2017) .............................................18

20 *Domangue v. Eastern Airlines, Inc.,*
    722 F.2d 256 (5th Cir. 1984) ...............................................................................................13
21

22 *Douglas v. Westfall,*
    113 Cal. App. 2d 107 (1952) ...............................................................................................23
23

24 *Ehrlich v. Am. Airlines,*
    360 F.3d 366 (2d Cir. 2004)..................................................................................................12

25 *El Al Israel Airlines, Ltd. v. Tseng,*
    525 U.S. 155 (1999).......................................................................................................12, 18
26

27 *Fireman's Fund Insurance Co. v. Allstate Ins. Co.,*
    234 Cal. App. 3d 1154 (1991) .......................................................................................21, 22

28 *Forouzan v. BMW of N. Am., LLC,*
    No. CV173875DMGGJSX, 2019 WL 856395 (C.D. Cal. Jan. 11, 2019) .............................24

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

*Gagnon v. United States*,
   193 U.S. 451 (1904) .................................................................................................9

*Greater Westchester Homeowners Assn v. L.A.*,
   26 Cal. 3d 86 (1979) ...............................................................................................23

*Harris v. Polskie Linie Lotnicze*,
   820 F.2d 1000 (9th Cir.1987) .................................................................................18

*Hosaka v. United Airlines, Inc.*,
   305 F.3d 989 (9th Cir. 2002) ..................................................................................12

*Ins. Co. of N. Am. v. Fed. Express Corp.*,
   189 F.3d 914 (9th Cir.1999) ...................................................................................19

*Iouri v. Ashcroft*,
   487 F.3d 76 (2nd Cir. 2007) .....................................................................................8

*Kellogg v. Asbestos Corp. Ltd.*,
   41 Cal. App. 4th 1397 (1996) ...................................................................................7

*King v. S. Pac. Co.*,
   109 Cal. 96 (1895) .................................................................................................20

*Kusay v. United States*,
   62 F.3d 192 (7th Cir.1995) .......................................................................................9

*Maddox v. Am. Airlines, Inc.*,
   298 F.3d 694 (8th Cir. 2002) ..................................................................................19

*Martin v. Henley*,
   452 F.2d 295 (9th Cir.1971) .....................................................................................9

*Mertens v. Flying Tiger Line, Inc.*,
   341 F.2d 851 (2d Cir. 1965) ..............................................................................18, 19

*Missouri v. Jenkins*,
   495 U.S. 33, 110 S. Ct. 1651, 109 L. Ed. 2d 31 (1989) ...........................................9

*Mitchell v. Overman*,
   103 U.S. 62 (1880) .........................................................................................2, 8, 9, 10

*Motorola, Inc. v. Fed. Express Corp.*,
   308 F.3d 995 (9th Cir. 2002) ...................................................................13, 15, 16, 17

*National Union Fire Ins. v. Showa Shipping Co.*,
   47 F.3d 316 (9th Cir.1995) .....................................................................................22

*O'Rourke v. E. Air Lines, Inc.*,
   730 F.2d 842 (2d Cir. 1984) ...................................................................13, 14, 15

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

*Osterneck v. Ernst & Whinney,*
    489 U.S. 169 (1989)..........................................................................24

*Phifer v. Icelandair,*
    652 F.3d 1222 (9th Cir. 2011) ............................................................12

*Sage v. Central R.R. Co. of Iowa,*
    93 U.S. 412, 417 (1876)........................................................................8

*Salve Regina Coll. v. Russell,*
    499 U.S. 225 (1991)............................................................................13

*Schneider v. Cnty. of San Diego,*
    285 F.3d 784 (9th Cir. 2002) ..............................................................24

*Schopp v. Am. Airlines, Inc.,*
    No. 16-23630-CIV, 2018 WL 11352594 (S.D. Fla. Apr. 26, 2018)..........19

*Sierra Club v. Whitman,*
    285 F.3d 63 (D.C. Cir. 2002) ................................................................8

*In re Slatkin,*
    525 F.3d 805 (9th Cir. 2008) ..............................................................20

*Softketeers, Inc. v. Regal W. Corp.,*
    No. 8:19-CV-00519-JWH, 2023 WL 2024701 (C.D. Cal. Feb. 7, 2023)............21

*Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., Ltd.,*
    522 F.3d 776 (7th Cir. 2008) ....................................................12, 13, 15

*Swiss Bank Corp. v. Brink's–MAT Ltd.,*
    2 Lloyd's Rep. 79,101 (Eng. C.A.) (1986) ............................................14

*United States v. Sumner,*
    226 F.3d 1005 (9th Cir. 2000) ..............................................................9

*Weil v. Markowitz,*
    898 F.2d 198 (D.C. Cir. 1990)................................................................8

*Williamson v. Plant Insulation Co.,*
    23 Cal. App. 4th 1406 (1994) ..............................................................10

*Wisper Corp. v. California Com. Bank,*
    49 Cal. App. 4th 948 (1996) ................................................................21

*Zhang v. Holder,*
    617 F.3d 650 (2d Cir. 2010)................................................................11

*Zicherman v. Korean Air Lines Co.,*
    516 U.S. 217 (1996)............................................................................19

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

**Statutes and Treaties**

The Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on May 28, 1999 (entered into force on November 4, 2003), reprinted in S. Treaty Doc. 106-45, 1999 WL 33292734 (2000) ("Montreal Convention") .............................. *passim*

The Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11 (1934), *reprinted in note following* 49 U.S.C. § 40105 (1997) ("Warsaw Convention") ........... *passim*

FED. R. CIV. P. 26(a)(1)(A) (West 2026) ........................................................3, 4, 23, 24

FED. R. CIV. P. 26(a)(2) (West 2026) ................................................................................4

FED. R. CIV. P. 37(c)(1) (West 2026) .............................................................................23

CAL. CIV. PROC. CODE § 377.34(a) (West 2026) ...........................................................

CAL. CIV. CODE § 3288 (West 2026) ........................................................................20, 21

**Other Authorities**

Minutes of the Montreal Convention, https://news.ncac.mn/uploads/bookSubject/2022-11/63859a6e8ecb5.pdf (last accessed January 30, 2026)..............................................................................................................14

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

# INTRODUCTION

California law provides that, if a plaintiff dies after a jury verdict but before entry of judgment, an award of future damages cannot stand.  Plaintiff wants to flip that substantive outcome by backdating the judgment to the day before her husband's death and requests the Court to amend its judgment *nunc pro tunc* to October 10, 2025.  But federal courts have only limited authority to enter judgments *nunc pro tunc* to restore the parties to the position that they would have occupied absent court delay or to correct the court's own clerical errors.  This case does not fall into either category.  Moreover, the Court already considered Plaintiff's request to enter judgment *nunc pro tunc* in connection with Plaintiff's Amended Motion to Substitute pursuant to Rule 25 of the Federal Rules of Civil Procedure.  The Court declined to do so and instead entered judgment on December 22, 2025.  The Court's decision was sound, as there is no basis to rewrite history by entering judgment *nunc pro tunc* in this case.

Plaintiff's Motion ignores the following relevant facts:

- Plaintiff was ordered to file a proposed judgment conforming to the jury verdict at the close of trial on September 17, 2025, and Plaintiff's counsel stated on the record that Plaintiff would do so the following day.

- Instead of doing what the Court ordered, Plaintiff filed a Motion for Entry of Final Judgment seeking an additional $1,432,272.22 in prejudgment interest on the entire jury award, including damages past and future, economic and non-economic.  ECF No. 209.

- In the Northern District of California, motions are heard on 35-days notice, and it often takes a judge days, weeks or months thereafter to issue an opinion.  At the time Plaintiff's Motion for Entry of Final Judgment was filed September 19, 2025, the earliest possible hearing date for the Motion was October 24, 2025 – two weeks after Mr. Plasencia's death on October 11, 2025.  This constitutes a calculated litigation decision on the part of Plaintiff.  Plaintiff, not the Court or American Airlines, bears full responsibility for this choice.[1]

---

[1] Plaintiff also makes the incredulous claim that equity dictates that the judgment be entered *nunc pro tunc* to ensure that American Airlines pays sufficient post-judgment interest, <u>completely ignoring the fact that Plaintiff's li</u>tigation strategy and choice to bring a motion

- On October 9, 2025, two days before Mr. Plasencia's death, the Court set Plaintiff's Motion for hearing on November 19, 2025. Accordingly, Plaintiff's Motion for Entry of Final Judgment had not been heard and was not "submitted" as of Mr. Plasencia's death.

- Plaintiff did not advise the Court of Mr. Plasencia's death until November 17, 2025, five weeks after he died, and two days before the hearing.

Under these facts and all caselaw addressing the circumstances under which a judgment may be amended *nunc pro tunc*, and specifically under the Supreme Court decision in *Mitchell v. Overman*, on which Plaintiff heavily relies, the Court lacks discretion to amend the judgment *nunc pro tunc*.

Plaintiff also asserts a claim for prejudgment interest on past economic and non-economic damages awarded by the jury. The Court is already fully familiar with American Airlines' arguments on this issue, which are reproduced below, although not belabored here. By any standard, Plaintiff's damages were unliquidated and unknown to American Airlines prior to trial, and Plaintiff is not entitled to recover prejudgment interest in this action.

### RELEVANT FACTS

Plaintiff's Motion is supported by the Declaration of Sanjiv Singh, in which Mr. Singh accuses American Airlines of bad faith for refusing to settle this case prior to litigation. Mr. Singh's Declaration is unfounded. It is also irrelevant to Plaintiff's Motion. Notably, it is devoid of any claim that Plaintiff or her attorneys provided the amount of Plaintiff's economic damages prior to August 2025. As set forth below and in the Declaration of Ivy L. Nowinski ("Nowinski Decl."), previously filed at ECF No. 216, all pleadings and discovery in this case demonstrate that Plaintiff never provided this information until the eve of trial.

On October 31, 2023, Plaintiff filed her Complaint. ECF No. 1. Plaintiff's original Complaint does not contain any statement quantifying Plaintiffs' damages, either economic or non-economic, past or future. *Id.* Plaintiff's original Complaint also does not reference prejudgment interest. *Id.*

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

---

seeking pre-judgment interest on the entire jury verdict, including past and future damages, prior to the entry of judgment is the sole reason judgment was not entered the day after trial concluded.

On December 19, 2023, Plaintiff filed a First Amended Complaint.  ECF No. 24. Plaintiff's First Amended Complaint does not contain any statement quantifying damages, either economic or non-economic, past or future.  *Id.*  Plaintiff's First Amended Complaint also does not reference prejudgment interest.  *Id.*

On August 19, 2024, Plaintiff filed a Second Amended Complaint and Demand for Jury Trial, which is currently the operative pleading.  ECF No. 85.  Plaintiff's Second Amended Complaint also does not contain any statement quantifying Plaintiffs' damages, either economic or non-economic, past or future.  Plaintiff's Second Amended Complaint seeks prejudgment interest under a Texas statute <u>in connection only with Plaintiff's cause of action for breach of contract</u>.  *Id.* at ¶ 146.  ("Plaintiffs seek and demand is hereby made for prejudgment interest for Defendant's breach of the AA Contract pursuant to Chapter 304 of the Texas Finance Code."). Plaintiff did not seek prejudgment interest in connection with any other claim, including their cause of action arising under the Montreal Convention, which was ultimately the sole claim tried to the jury.

Plaintiff's Second Amended Complaint also affirmatively alleges that the Montreal Convention permits a "pass-through" to local law and that California law governed the damages available to Plaintiff under the Montreal Convention in this action.  ECF No. 84, ¶¶ 108-115.

Plaintiff's claim for breach of contract was dismissed by this Court prior to trial on May 7, 2025.  ECF No. 132.

Plaintiff was required to set forth a detailed computation of damages in her initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii).  Plaintiff served initial disclosures pursuant to Rule 26(a)(1)(A) on January 22, 2024, but did not provide any computation of damages in this document.  Instead, Plaintiff stated as follows:

> As set forth in the First Amended Complaint, Plaintiffs seek an award for all permissible damages under the governing law, including damages under the Montreal Convention for past and future lost earnings, past and future lost accumulations, past and future medical expenses, mental anguish and suffering, and loss of consortium. Plaintiffs also seek breach of contract damages in the form of financial hardship, lost interest, increased costs and expenses, and attorney's fees. Plaintiffs hereby reserve the right to supplement this initial disclosure upon completion of their ongoing

Condon & Forsyth LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

> evaluation of damages to Plaintiffs. Any expert analysis concerning Plaintiffs' economic damages will be supplied in connection with any deadlines established by Rule 26(a)(2), the Court, or as otherwise appropriate.

Nowinski Decl., ECF No. 215, ¶ 15-16, Exhibit A (Plaintiff's Initial Disclosures Served January 22, 2024).

Plaintiff has never served an amended or supplemental initial disclosure pursuant to Rule 26(a)(1)(A).  *Id.* at ¶ 17.

On April 17, 2024, American Airlines served its first set of special interrogatories on Plaintiff.  *Id.* at ¶ 18, Exhibit B.  Interrogatory No. 6 requested the following information:

> Please itemize and state each item of damages, including economic, compensatory, legal fees, expert fees, etc., you claim are directly or indirectly attributable to and/or caused by the incident made the basis of this lawsuit and any act or omission of Defendant. Include in your answer the factual basis for each item of damages, and an explanation (i.e., formula, method of calculation, underlying hypotheses and assumptions, etc.) of how you computed each item of damages, including any mathematical formula used.

Nowinski Decl., ¶ 19, Exhibit B (American Airlines' First Set of Interrogatories to Plaintiffs).

On May 17, 2024, Plaintiff served her response to Interrogatory No. 6, which stated as follows:

> Plaintiffs object to this Interrogatory to the extent it requires a calculation of damages **that are not amenable to calculation because they are committed to the discretion of the trier of fact**. Plaintiffs seek the damages as alleged in the complaint, including pain, suffering, mental anguish, and all other damages available in law. Plaintiffs further object to this Interrogatory as premature and subject to expert discovery, which is ongoing.
>
> Pursuant to Fed. R. Civ. Pr. 33(a)(2) contention interrogatories are not ordinarily answered until discovery is complete. In accordance with the Court's May 1, 2024, Case Management Order, Plaintiffs advise that they will provide expert reports on or before October 2, 2024, which will delineate and itemize the calculable damages Plaintiffs seek including the factual basis and any method of calculation. Plaintiffs further advise that they will produce any documents on which their experts rely to perform these calculations.  Without waiver of the foregoing, Plaintiffs contend they are entitled to damages (i) under the Montreal Convention for the bodily injury sustained by Mr. Plasencia on AA Flight 68; (ii) for loss of consortium and other non-pecuniary damages; (iii) for

the full value of Plaintiffs' $226,200 in special drawing rights; and (iv) for continuing and ongoing damages incurred as a result of Defendant's breach of contract and repudiation of contract, including attorney's fees. **Each and every one of these damages figures are too premature for any reasonable or accurate calculation, and attorney's fees are ongoing.**

*Id.* at ¶ 20, Exhibit C (Plaintiff's Responses to American Airlines First Set of Interrogatories, served May 17, 2024) (*emphasis added*).

Accordingly, Plaintiff has affirmatively alleged in judicially binding discovery responses that damages in this case are unliquidated and "**not amenable to calculation because they are committed to the discretion of the trier of fact**" and "**too premature for any reasonable or accurate calculation.**" *Id.* at 21 (*emphasis added*).

American Airlines did not receive any type of calculation or computation of Mr. Plasencia's economic damages incurred prior to trial until the time of drafting of the Final Pretrial Conference Statement in August 2025. *Id.* at ¶ 24. In the Final Pretrial Conference Statement, Plaintiffs provided their first computation of Mr. Plasencia's past economic damages, which they calculated to be $699,832. *Id.* at ¶ 25. The Final Pretrial Conference Statement was filed on August 13, 2025, less than one month prior to jury trial. ECF No. 146, p. 3, ll. 11-12.

Accordingly, although the Declaration of Sanjiv Singh makes reference to providing "information regarding Plaintiffs' cost of care for Plaintiff Plasencia" in September of 2022, less than one year after this incident and three years prior to trial and goes on to declare that Plaintiff provided "additional, extensive documentation regarding Plaintiffs' caregiving costs and medical expenses" to former counsel for American Airlines in December of 2022, this is intentionally vague and belied by the vague nature of Plaintiff's discovery responses and initial disclosures, discussed above, which demonstrate that Plaintiff never prepared a computation of damages or provided same to American Airlines prior to trial, even though required to provide one.

On September 4, 2025, Plaintiff again affirmatively argued to this Court that the Montreal Convention requires a pass-through to local damage law, which governs which types of damages available to Plaintiff. Plaintiff specifically argued to the Court that California law governed the viability of Plaintiff's loss of consortium claim. Counsel for American Airlines did

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1    not disagree with this argument, and the Court adopted this principle as the law of the case.  *See*

2    Transcript of Final Pretrial Conference, September 4, 2025, pp. 48-52.

3        The Final Pretrial Conference Statement makes no reference to prejudgment interest and

4    does not include prejudgment interest as an item of damages sought by Plaintiff.  ECF No. 146.

5    Plaintiff also did not submit a jury instruction on this issue to the Court.

6        On September 17, 2025, the jury reached a verdict totaling $9,629,829.55, after a 27.5%

7    reduction for the negligence of Plaintiff and Mr. Plasencia.  *See* Trial Transcript, Vol. 7,

8    September 17, 2025, p. 1476.  After application of the 27.5% reduction, the jury award included

9    $4,772,429.95 for Mr. Plasencia's future medical care and $2,320,000.00 for Mr. Plasencia's

10   future pain and suffering.  *Id.*

11       On September 17, 2025, the Court asked Plaintiff to submit a proposed judgment, and

12   asked how long it would take for Plaintiff to prepare the judgment.  Plaintiff stated that a

13   proposed judgment would be filed the following day.  The Court specifically ordered Plaintiff to

14   file a "relatively straightforward" judgment that was "consistent with the number that has been

15   stipulated here in court."  *Id.* at 1476-1477.

16       Two days later, on September 19, 2025, instead of submitting a proposed judgment that

17   was consistent with the jury verdict, Plaintiff filed a Motion for Entry of Final Judgment,

18   including a request for prejudgment interest on the entire amount of the jury verdict totaling

19   $1,432,272.22.  ECF No. 209.  This was the first time American Airlines was apprised that

20   Plaintiff was seeking prejudgment interest on their unliquidated personal injury damage award,

21   both economic and non-economic, past and future.  *Id.* at ¶ 29; ECF No. 209.

22       On October 3, 2025, American Airlines submitted its Opposition to Plaintiff's Motion for

23   Entry of Final Judgment.  ECF No. 215.

24       On October 9, 2025, the Court set Plaintiff's Motion for Entry of Judgment for hearing

25   on November 19, 2025, at 9:00 a.m.  ECF No. 217.  <u>This fact is omitted from Plaintiff's Motion,</u>

26   <u>wherein Plaintiff claims that the Motion for Entry of Judgment was submitted and ripe for</u>

27   <u>decision on October 11, 2025, the date of Mr. Plasencia's death.</u>

28       On October 10, 2025, Plaintiff submitted her Reply in support of Plaintiff's Motion for

1  Entry of Judgment.  ECF No. 218.

2      On October 11, 2025, according to his official death certificate, Mr. Plasencia died of

3  cardiac arrest, myocardial infarction, and atherosclerotic coronary disease.  ECF No. 222-1

4  (Death Certificate).  Mr. Plasencia died just two days after the Court set the Motion for Entry of

5  Final Judgment, a contested motion, for oral argument.

6      On November 17, 2025, five weeks after Mr. Plasencia's death, and two days before the

7  Motion for Entry of Final Judgment was scheduled to be heard, with counsel for all parties

8  scheduled to travel from around the country to attend in-person, Plaintiff finally alerted the Court

9  of Plaintiff's death and filed a Notice of Death and Motion to Substitute.  ECF No. 221.

10      On December 1, 2025, Plaintiff filed an Amended Motion to Substitute, appearing to

11  concede that her original Motion to Substitute was deficient.  ECF Nos. 231, 232.  On December

12  22, 2025, the Court granted Plaintiff's Amended Motion to Substitute, and entered judgment in

13  the amount of the jury verdict.  The Court's judgment was not entered *nunc pro tunc*, although

14  Plaintiff requested the Court to do so in her briefing on the Amended Motion to Substitute.  ECF

15  234, 10:7-14; ECF No. 237.

16                              **ARGUMENT**

17                                  **I**

18  **THE COURT LACKS DISCRETION TO BACKDATE THE JUDGMENT IN THIS**

19                        **MATTER *NUNC PRO TUNC***

20      California law provides that, if a plaintiff dies after a jury verdict but before entry of

21  judgment, an award of future damages is impermissible.  CAL. PROC. CODE § 377.34(a); *see*

22  *Kellogg v. Asbestos Corp. Ltd.*, 41 Cal. App. 4th 1397, 1406-07 (1996).  Plaintiff seeks to flip

23  that substantive outcome by requesting that this Court backdate the judgment to October 10,

24  2025, the day before Plaintiff's death, the day after Plaintiff submitted her Reply in support of

25  her Motion for Entry of Final Judgment, and more than a month before that Motion was

26  scheduled to be heard.  But federal courts have only limited authority to enter judgments *nunc*

27  *pro tunc* to restore the parties to the position that they would have occupied absent court delay or

28  to correct the court's own errors.  This case does not fall into either category.  By contrast, the

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

delay in entry of judgment after the jury verdict had nothing to do with the Court – it was solely attributable to Plaintiff's delay and strategic litigation decision to prioritize immediately obtaining an award of prejudgment interest prior to entry of judgment.  Amending the Court's judgment such that it was issued before Plaintiff's death would be "rewriting history" and is impermissible here.

A *nunc pro tunc* order involves the entry of "a judgment or a decree as of a date anterior to that on which it was in fact rendered." *Mitchell v. Overman*, 103 U.S. 62, 64-65 (1880). "Translated as 'now for then,' it is an ancient tool of equity designed to give retroactive effect to the order of a court." *Sierra Club v. Whitman*, 285 F.3d 63, 67 (D.C. Cir. 2002); *see also Iouri v. Ashcroft,* 487 F.3d 76, 87 (2nd Cir. 2007) (citing Black's Law Dictionary 1100 (8th Ed. 2004)). It traditionally has been available in those "circumstances, where its entry is necessary to avoid, [rather than] create, an injustice at the hands of the court itself." *Weil v. Markowitz*, 898 F.2d 198, 201 (D.C. Cir. 1990).  Entry of an order *nunc pro tunc* "is never done where the parties themselves have been at fault" for delay.  *Sage v. Central R.R. Co. of Iowa*, 93 U.S. 412, 417 (1876).

The Supreme Court has recognized two limited categories in which this equitable power may be exercised. First, the Supreme Court has held that *nunc pro tunc* relief may be used to remedy delays resulting from the judicial process that are not attributable to the unreasonable delay of the parties:

> [T]he rule established by the general concurrence of the American and English courts is, that **where the delay in rendering a judgment or a decree arises from the act of the court, that is, where the delay has been caused either for its convenience, or by the multiplicity or press of business, either the intricacy of the questions involved, <u>or of any other cause not attributable to the laches of the parties</u>**, the judgment or the decree may be entered retrospectively, as of a time when it should or might have been entered up. In such cases, upon the maxim *actus curiae neminem gravabit*, — which has been well said to be founded in right and good sense, and to afford a safe and certain guide for the administration of justice, — it is the duty of the court to see that the parties shall not suffer by the delay. A *nunc pro tunc* order should be granted or refused, as justice may require in view of the circumstances of the particular case.

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

*Mitchell,* 103 U.S. at 64-65 (*emphasis added, footnote omitted*).

In *Mitchell*, the motion at issue was briefed, argued, and submitted to the Court for decision at the time of the plaintiff's death. The decision focuses on avoiding injustice due to the delay of the Court and explicitly excludes delay of the parties as a reason for amendment *nunc pro tunc. Id.*

The Supreme Court has also held that *nunc pro tunc* relief may be used to retroactively correct or supplement a court's record. *See, e.g., Missouri v. Jenkins*, 495 U.S. 33, 49-50, 110 S. Ct. 1651, 109 L. Ed. 2d 31 (1989). This use of the *nunc pro tunc* power, however, is also limited. As the Supreme Court has explained, "[t]he power to amend its records, to correct mistakes of the clerk or other officer of the court, inadvertencies of counsel, or to supply defects or omissions in the record, even after the lapse of the term, is inherent in courts of justice. ..." *Gagnon v. United States*, 193 U.S. 451, 456, (1904). But it "must not be confounded with the power to create. It presupposes an existing record, which is defective by reason of some clerical error or mistake, or the omission or some entry which should have been made during the progress of the case, or by the loss of some document originally filed therein." *Id.* at 457. Thus, in *Gagnon*, the Supreme Court upheld a collateral attack on a *nunc pro tunc* judgment of naturalization—entered over 30 years after plaintiff allegedly was naturalized—because there was no evidence establishing that an order actually had been entered at the time.

In short, the *nunc pro tunc* power cannot be used to "create" a record that does not exist, *id.* at 456, and "cannot make the record what it is not." *Missouri v. Jenkins*, 495 U.S. at 49-50. The Ninth Circuit has held that the power "to amend *nunc pro tunc* is a limited one, and may be used only where necessary to correct a clear mistake and prevent injustice." *United States v. Sumner*, 226 F.3d 1005, 1009–10 (9th Cir. 2000), *citing Martin v. Henley*, 452 F.2d 295, 299 (9th Cir.1971). "It does not imply the ability to alter the substance of that which actually transpired or to backdate events to serve some other purpose." *Id.*, *citing Kusay v. United States*, 62 F.3d 192, 193 (7th Cir.1995).

California law also requires delay by the Court in order to enter a judgment *nunc pro tunc* correcting non-clerical errors. *Cadlo v. Metalclad Insulation Corp.*, 151 Cal. App. 4th 1311,

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1322 (2007).  A court should only enter a *nunc pro tunc* judgment "when it is apparent that the delay in rendering the judgment, or a failure to enter it after its rendition, is the result of some act or delay of the court, and is not owing to any fault of the party making the application." *Williamson v. Plant Insulation Co.*, 23 Cal. App. 4th 1406, 1414 (1994) (articulating policy that an estate should not be enriched by compensation for suffering that was personal to the decedent, and not suffered by the estate or its beneficiaries).  In *Williamson*, the Court of Appeal reversed the trial court's entry of judgment *nunc pro tunc* under circumstances similar to this case, where the plaintiff died during trial. *Id.*

All caselaw is clear that amendment is not permitted *nunc pro tunc* to rectify an error of the parties.  Here, Plaintiff expressly seeks amendment *nunc pro tunc* for the purpose of avoiding the application of California law to strike the award of future damages to Mr. Plasencia due to his death after verdict but prior to entry of judgment.  In her Motion, Plaintiff does not allege delay or other mistake on the part of the Court.  Plaintiff likewise does not address her own fault, and instead  argues that her Motion for Entry of Final Judgment seeking affirmative relief in the form of $1,432,272.22 was "submitted" at the time of Plaintiff's death under *Mitchell*, but fails to disclose the fact that this Motion was actually set for a future hearing at the time of Mr. Plasencia's death and thus was definitively not submitted or under advisement and does not fall within the ambit of *Mitchell*.

The sole reason that judgment was not entered before Plaintiff's death was not due to any delay of the Court.  Plaintiff 's Motion for Entry of Final Judgment would have taken at least 35 days for hearing, and likely substantially longer for decision.  Even assuming the Court ruled from the bench, Plaintiff's Motion could not have been theoretically decided until October 24, 2025 (two weeks after Mr. Plasencia's death), which is the first date it could have been noticed for hearing under the Local Rules.   Mr. Plasencia died two days after the Court set the matter for oral argument for November 19, 2025, over a month after Plaintiff's death.   Accordingly, the Motion had not been argued and had not been taken under advisement at the time of Mr. Plasencia's death, as was the case in *Mitchell*.  Mr. Plasencia died while his Motion to greatly expand his recovery was pending and well before it could have been deemed submitted or taken

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1    under advisement.  *Mitchell* therefore firmly supports American Airlines' position here and does

2    not provide a basis for entry of judgment *nunc pro tunc*.  The Court lacks discretion to enter

3    judgment *nunc pro tunc* to a date before Mr. Plasencia's death.  *See also Zhang v. Holder*, 617

4    F.3d 650, 667 (2d Cir. 2010) (denying *nunc pro tunc* relief where delay was attributed to the

5    petitioner); *Barnes v. District of Columbia*, 924 F. Supp. 2d 103, 110 (D.D.C. 2013) (similar).

6        Here, the delay in entry of judgment was not attributable to the Court, and it would not be

7    a just or permitted exercise of the *nunc pro tunc* power of the Court to force American Airlines

8    rather than Plaintiff to bear the consequences of Mr. Plasencia's death before entry of judgment,

9    where the delay in entry of judgment was solely due to Plaintiff's litigation decision.  Plaintiff

10   made the calculated litigation decision to immediately attempt to enlarge the verdict to include

11   an unprecedented award of prejudgment interest on the entire jury verdict.  Plaintiff deemed this

12   to be more important than ensuring that judgment was timely entered, and all fault for the failure

13   to enter judgment prior to Mr. Plasencia's death lies squarely with Plaintiff and her counsel.  And

14   even though Plaintiff maintains that the timing of the death does not affect the validity of the

15   current verdict, Plaintiff asks this Court to take the extraordinary step of backdating an amended

16   judgment for the sole purpose of insulating the existing judgment from appellate scrutiny.

17   Dkt. 241 at 4.  Such a *nunc pro tunc* judgment would be unlawful, unwarranted, and

18   unprecedented.

19   **II**

20   **IN A MATTER OF FIRST IMPRESSION WITHIN THE NINTH CIRCUIT, THIS**

21   **COURT SHOULD HOLD THAT THE MONTREAL CONVENTION PROHIBITS THE**

22   **RECOVERY OF PREJUDGMENT INTEREST**

23       The parties do not dispute that the Plaintiff's claims are exclusively governed by the

24   Montreal Convention,[2] a treaty of the United States.    The Montreal Convention, adopted at a

25   diplomatic conference held in 1999, was the product of an effort by the International Civil

26

27

28   ———————————
[2] The Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on May 28, 1999 (entered into force on November 4, 2003), reprinted in S. Treaty Doc. 106-45, 1999 WL 33292734 (2000) ("Montreal Convention").

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

Aviation Organization ("ICAO"), a specialized agency of the United Nations, to update and "harmonize the hodgepodge of supplementary amendments and intercarrier agreements" of which its predecessor, the Warsaw Convention[3] system of liability, consisted of. *Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., Ltd.*, 522 F.3d 776, 780 (7th Cir. 2008), *citing Ehrlich v. Am. Airlines*, 360 F.3d 366, 371 n.4 (2d Cir. 2004). The 1929 Warsaw Convention was a treaty that exclusively governed the rights and liabilities of passengers and carriers in "international" transportation by air. *See El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 161 (1999).

The Montreal Convention is the successor treaty to the Warsaw Convention, (*Hosaka v. United Airlines, Inc.*, 305 F.3d 989, 996 (9th Cir. 2002)), and unifies and replaces the system of liability that derives from the Warsaw Convention. *Ehrlich*, 360 F.3d at 371. The Montreal Convention completely replaces the Warsaw Convention system of liability, but retains many of the same provisions and terms as the original Warsaw Convention. *See* Montreal Convention, Art. 55.

Since the Montreal Convention entered into force in the United States on November 4, 2003, U.S. courts have continued to rely on cases interpreting a provision of the earlier Warsaw Convention where the equivalent provision in the Montreal Convention is substantively the same. *See Phifer v. Icelandair*, 652 F.3d 1222, f.n. 1 (9th Cir. 2011).

Here, notwithstanding Plaintiff's attempt to characterize Article 22 of the Montreal Convention as a new and unique article permitting prejudgment interest, neither the Warsaw nor the Montreal Convention references the term "prejudgment interest" or any similar concept. Courts have struggled with determining whether the imposition of prejudgment interest is permitted by the Warsaw Convention for decades and a circuit split exists on the issue of whether the Warsaw Convention permits the recovery of prejudgment interest. *Cf. Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co.*, 522 F.3d 776, 790 (7th Cir. 2008) (prejudgment interest not recoverable under the Warsaw Convention because goal of uniformity inherently

---

[3] The Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11 (1934), *reprinted in note following* 49 U.S.C. § 40105 (1997), commonly and hereinafter referred to as the "Warsaw Convention."

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1    incompatible with awarding prejudgment interest under local law); *O'Rourke v. E. Air Lines,*

2    *Inc.*, 730 F.2d 842, 853 (2d Cir. 1984), *abrogated on other grounds by Salve Regina Coll. v.*

3    *Russell*, 499 U.S. 225 (1991) ("in the absence of any contrary intent on the part of the framers,

4    we may not read into that document a provision that allows the payment of prejudgment

5    interest"); *with Motorola, Inc. v. Fed. Express Corp.*, 308 F.3d 995 (9th Cir. 2002) (permitting

6    prejudgment interest on liquidated damage claims for lost, delayed, or damaged goods on the

7    grounds that award assures that the limited damages available to the successful claimant will not

8    be eroded by the defendant's actions in delaying a prompt resolution of the claim); *Domangue v.*

9    *Eastern Airlines, Inc.*, 722 F.2d 256 (5th Cir. 1984) (holding that prejudgment interest is

10   permissible under Warsaw Convention within discretion of the Court).

11          The Seventh Circuit has twice held that prejudgment interest is not available in suits

12   governed by the Warsaw Convention. *Deere & Co. v. Deutsche Lufthansa Aktiengesellschaft,*

13   855 F.2d 385 (7th Cir.1988); *Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co.*, 522 F.3d

14   776, 789 (7th Cir. 2008). In *Deere*, the Seventh Circuit held that the Warsaw Convention's goal

15   of fixing uniform limits on damages for airlines was "inherently incompatible with full

16   compensation to all customers." *Id.* at 392. Thus, making aggrieved airline customers whole

17   "was not a primary purpose of the Convention." *Id.* By contrast, "[t]he preeminent purpose of

18   the Convention was to fix definite and uniform limits on the cost to airlines," and allowing

19   additional prejudgment interest would contradict this goal. *Id.* at 391. As recently as 2008,

20   nearly a decade after the Montreal Convention was drafted, the Seventh Circuit again held that

21   the overarching goal of the Warsaw Convention, to fix an airline's potential damages at a

22   predictable level, would not be served by allowing discretionary prejudgment interest. *Sompo*

23   *Japan Ins., Inc. v. Nippon Cargo Airlines Co.*, 522 F.3d 776, 790 (7th Cir. 2008).

24          The Second Circuit has reached the same conclusion. In *O'Rourke v. E. Air Lines, Inc.*,

25   730 F.2d 842, 853 (2d Cir. 1984), *abrogated on other grounds by Salve Regina Coll. v. Russell*,

26   499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991), the Second Circuit held that

27   prejudgment interest was not permitted under the Warsaw Convention in a wrongful death case.

28

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1    The English Court of Appeal has also held that prejudgment interest is not permitted

2    under the Warsaw Convention. In *Swiss Bank Corp. v. Brink's–MAT Ltd*., 2 Lloyd's Rep. 79,101

3    (Eng. C.A.) (1986), that court looked to the 1955 Hague Protocol, which amended the Warsaw

4    Convention.  Observing that Article 22 of the Hague Protocol had made explicit that attorney's

5    fees and costs may be awarded in excess of the liability caps, the court reasoned that the absence

6    of similar language permitting prejudgment interest indicated that the award of such interest was

7    not permissible. *Id.*

8    On May 10, 1999, the drafters of the Montreal Convention convened to draft a new

9    treaty.  The  Minutes  of  the  Montreal  Convention  are  accessible  at

10   https://news.ncac.mn/uploads/bookSubject/2022-11/63859a6e8ecb5.pdf (last accessed January

11   29, 2026).  The minutes do not reflect any discussion, whatsoever, regarding amending or

12   changing the text of the Warsaw Convention regarding the recovery of prejudgment interest.

13   The minutes also do not reflect any intent to alter the existing body of jurisprudence governing

14   the recovery of prejudgment interest that had developed in the United States and elsewhere.  To

15   the contrary, it is clear from the minutes of the Montreal Convention that the drafters, including

16   specifically the delegate from the United States, expressed a strong desire to **not** disturb existing

17   jurisprudence from within the United States interpreting the Warsaw Convention, including the

18   *Deere* and *O'Rourke* decisions.  *Id.* at 112, 140, 159, 162, 201, 218[4], 220.

19   Moreover, the Minutes of the Montreal Convention indicate a reluctance to deviate from

20   the liability caps set forth in the Warsaw Convention – the drafters ultimately decided to do so,

21   but formulated a tiered system of liability in order to protect both the interests of both air carriers

22   and  the  traveling  public.   The  document  is  replete  with  concerns  of  the  drafters  regarding

23   balancing the interests of the passengers and those of the carrier.  *See, e.g., id. at* 43, 70, 80, 201-

24   202.   It  is  clear  from  review  of  the  Minutes  that  the  goal  of  achieving  uniformity  in  the

25

26   [4] In which the Delegate of the United States specifically proposed an addition to the Preamble of
     the Montreal Convention stating that the objective of the drafters was to preserve jurisprudence
27   interpreting the Warsaw Convention.  Many other delegates expressed a concern that such a
     finding would subject other nations to the jurisprudence that had developed in the United States.
28   Ultimately, the drafters agree that the preamble conveyed this concept without the need for the
     additional language proposed by the Delegate of the United States.

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1  application of the Convention was a primary goal of the drafters.  *Id.* at 41 – 51, 83, 90, 95.  The

2  drafters addressed the issue of fully compensating injured passengers by removing the caps on

3  liability.  Permitting passengers fortunate enough to reside in jurisdictions where prejudgment

4  interest is permitted would not further the Convention's goal of uniformity in its application, and

5  this Court should not read the Montreal Convention to permit an award of prejudgment interest.

6  To do so would defeat the drafters' goal of uniformity and fail to give any deference to the

7  drafters' goals of ensuring that the airline's interests are balanced with those of the passenger.

8      The drafting history of the Montreal Convention is silent on the issue of the

9  recoverability of interest at all, much less prejudgment interest on unliquidated damages in

10  personal injury lawsuits.  The natural conclusion to draw from this silence is that the drafters had

11  no intention to change the law on this issue, as it had developed at the time of the drafting of the

12  Montreal Convention in 1999.  As of 1999, the clear trend within the United States Circuit

13  Courts on this issue was that prejudgment interest was not permitted in Warsaw Convention

14  cases.  This Court should adopt the holding of the Seventh and Second Circuits in *Deere*, *Sompo*

15  and *O'Rourke*, as these holdings are consistent with the intention of the drafters of the Montreal

16  Convention and specifically, the Delegate from the United States, in not disturbing the settled

17  state of the law on this issue as of the time the Montreal Convention was drafted in 1999, as well

18  as the goals of uniformity and balancing the rights of the passenger with the need to protect the

19  airline industry.

20      Against this backdrop, three years <u>after</u> the Montreal Convention was drafted in 1999, the

21  Ninth Circuit issued an opinion that is at odds with the holdings of the Seventh and Second

22  Circuits in *Motorola, Inc. v. Fed. Exp. Corp.*, 308 F.3d 995, 1004–05 (9th Cir. 2002).  In

23  *Motorola*, a cargo claim in which damages were liquidated, the Ninth Circuit held that "neither

24  the text nor the drafting history of the Warsaw Convention itself addresses prejudgment interest,

25  [so] we must look to other indicators of the Convention's meaning, including its purpose and the

26  postratification understanding of the contracting parties."  *Id.*  The Court noted that the Warsaw

27  Convention was intended to balance the interests of shippers seeking recovery for lost, delayed

28  or damaged goods, and the interests of air carriers seeking to limit potential liability.  *Id.*  The

1    Court held that the  award of prejudgment interest "simply assures that the limited damages

2    available to the successful claimant will not be eroded by the defendant's actions in delaying a

3    prompt resolution of the claim" and that  such interest does not convert a damage award into

4    "full compensation" to the plaintiff, because the carrier's damage liability remains fixed and

5    limited by the Convention's weight-based formula. The Court concluded that "prejudgment

6    interest is a mechanism by which the court, **in an appropriate case**, may assure that the plaintiff

7    receives the full value of his limited damages. *Id.* (*emphasis added*).  Key to the Ninth Circuit's

8    holding was the fact that "[b]ecause the limitation on liability still provides a cap on potential

9    damages regardless of the true value of the cargo lost or destroyed, carriers continue to have a

10   predictable gauge of liability."  *Id.*

11        The Ninth Circuit's holding in *Motorola* is in direct conflict with the Second and Seventh

12   Circuit decisions interpreting the Warsaw Convention.  Moreover, its reasoning does not apply

13   with respect to the Montreal Convention.  The purpose of the Montreal Convention was to ensure

14   uniformity between jurisdictions and to balance the interests of <u>both</u> the passenger and the air

15   carriers.  To accomplish this goal, the drafters established a "tiered" liability system by which the

16   air carrier could limit its liability to a set amount by establishing that it was not negligent.

17   Liability above this cap is unlimited if the airline cannot establish that it was not negligent.  The

18   removal of the liability cap accomplishes the goal of ensuring that passengers are adequately

19   protected.  Imposing prejudgment interest in addition to permitting unlimited liability is contrary

20   to the drafters' goals of uniformity and protection of the airline industry, and this Court should

21   hold that prejudgment interest is not permitted under the Montreal Convention framework,

22   particularly under the facts of this case.

23        This is a personal injury action in which Plaintiff failed to compute past economic

24   damages until the eve of trial, and affirmatively alleged prior to that time that all their damages

25   are impossible to quantify, except by and through the trier of fact.  Prejudgment interest is also

26   not required to make Plaintiff whole here.  Plaintiff has already recovered an amount far in

27   excess of her and Mr. Plasencia's economic damages and far in excess of the liability limits

28   envisioned by the drafters of the Montreal Convention (100,000 Special Drawing Rights, or

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1   approximately $140,000).  There are no applicable liability limits in this case, as there were in

2   *Motorola* and in other cases following its reasoning.  Contrary to the claims in Mr. Singh's

3   Declaration, there can be no claim that American Airlines unduly delayed in failing to settle this

4   lawsuit where liability, comparative negligence and damages were unknown until the time of

5   trial (and in fact, where American Airlines contends that it cannot be liable as a matter of law, as

6   set forth in the currently pending Motion for Judgment as a Matter of Law pursuant to Rule 50(b)

7   of the Federal Rules of Civil Procedure).

8       Plaintiff's Motion claims that Article 22(6) of the Montreal Convention supports their

9   claim for prejudgment interest, including both economic and non-economic damages.  Plaintiffs

10  cite a single case to support this proposition, *In re Air Crash at Lexington, Ky.*, Aug. 27, 2006,

11  No. CIVA 506-CV-316-KSF, 2008 WL 1909007, at *3 (E.D. Ky. Apr. 25, 2008).  The Eastern

12  District of Kentucky's decision is an outlier, and this approach has not been adopted by any other

13  court.  The decision relies solely on the language of Article 22(6) of the Montreal Convention.

14  Article 22 is entitled "Article 22 — Limits of Liability <u>in Relation to Delay, Baggage and

15  Cargo</u>."  Montreal Convention, Art. 22 (*emphasis added*).  The title of Article 22 does not

16  reference personal injury claims.  The language of Article 22(6) references such clams obliquely

17  and provides: "The limits prescribed in Article 21 and in this Article shall not prevent the court

18  from awarding, in accordance with its own law, in addition, <u>the whole or part of the court costs

19  and of the other expenses of the litigation</u> incurred by the plaintiff, <u>including interest</u>."  Montreal

20  Convention, Art. 22(6), (*emphasis added*).  Article 22(6), therefore, permits a plaintiff to recover

21  "court costs" and "other expenses of the litigation", "including interest" <u>on those amounts</u> in

22  accordance with the local law of the jurisdiction.  It does not permit the recovery of prejudgment

23  interest on past economic and non-economic damages as argued by Plaintiffs here.  Court costs

24  and expenses of litigation are procedural considerations that are substantially different from

25  prejudgment interest, which is an element of damages governed by state substantive law, to the

26  extent not preempted by the Convention itself.

27      Courts have routinely resisted efforts by plaintiffs to utilize the language contained in

28  Article 22(6) to expand the relief authorized by the Convention.  For example, although counsel

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1   for American Airlines could not locate any other case where a plaintiff asserted a right to

2   prejudgment interest under Article 22(6), courts have declined to permit plaintiffs to seek

3   attorney's fees under this provision. *Bytska v. Swiss Int'l Air Line, Ltd.*, No. 15-CV-483, 2016

4   WL 6948375, at *3 (N.D. Ill. Nov. 28, 2016) ("The text of the first sentence of Article 22(6)

5   does no more than authorize a court to apply its domestic law as the rule of decision when a

6   party requests costs and fees."); *Dochak v. Polskie Linie Lotnicze LOT S.A.*, No. 15 C 4344, 2017

7   WL 2362570, at *2 (N.D. Ill. May 30, 2017) ("Article 22(6) does nothing more than authorize

8   courts to apply their own domestic law regarding the availability of fees when a party requests

9   costs and fees.").

10         For all the foregoing reasons, this Court should hold, as a matter of first impression in the

11  Ninth Circuit, that the Montreal Convention does not permit the recovery of prejudgment

12  interest.

13                                        **III**

14  **ASSUMING, *ARGUENDO*, THAT THE MONTREAL CONVENTION PERMITS**

15  **RECOVERY OF PREJUDGMENT INTEREST, CALIFORNIA LAW APPLIES TO**

16  **PLAINTIFF'S DAMAGE CLAIMS AND BARS PREJUDGMENT INTEREST HERE**

17         If we assume that the Montreal Convention permits the recovery of prejudgment interest,

18  California law applies to the issue of whether Plaintiff may recover prejudgment interest. The

19  Supreme Court has unequivocally held, in interpreting the Warsaw Convention, that the "drafters

20  intended to resolve whether there is liability, but to leave to domestic law (the local law

21  identified by the forum under its choice-of-law rules or approaches) determination of the

22  compensatory damages available to the suitor." *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*,

23  525 U.S. 155, 170 (1999) (*emphasis added*). The issue of the computation of damages generally

24  is governed by local law, except, of course, where such law conflicts with either Convention.

25  *Harris v. Polskie Linie Lotnicze*, 820 F.2d 1000, 1002 (9th Cir.1987) (permitting damages under

26  Polish law, rather than California law, in suit governed by Warsaw Convention); *In re Aircrash*

27  *in Bali, Indonesia on April 22, 1974*, 684 F.2d 1301, 1315 (9th Cir.1982), later appeal, 871 F.2d

28  812 (9th Cir.1989); *Mertens v. Flying Tiger Line, Inc.*, 341 F.2d 851, 858 (2d Cir. 1965), *cert.*

1   *denied*, 382 U.S. 816, 86 S. Ct. 38, 15 L. Ed. 2d 64 (1965); *Schopp v. Am. Airlines, Inc.*, No. 16-

2   23630-CIV, 2018 WL 11352594, at \*5 (S.D. Fla. Apr. 26, 2018) (applying state law to issue of

3   recovery of prejudgment interest).

4          The only Circuit Court opinion American Airlines could locate on the precise issue

5   presented by this case is *Maddox v. Am. Airlines, Inc.,* 298 F.3d 694, 695 (8th Cir. 2002).  In

6   *Maddox*, a case governed by the Warsaw Convention, following a jury verdict, the plaintiff

7   appealed the district court's decision denying an award of prejudgment interest under Arkansas

8   law.[5]

9          The *Maddox* Court noted that the Supreme Court has indicated that Article 17 of "the

10  Warsaw Convention permit[s] compensation only for legally cognizable harm, but leave[s] the

11  specification of what harm is legally cognizable to the domestic law applicable under the forum's

12  choice of law rules."  *Id.*, *citing Zicherman v. Korean Air Lines Co.,* 516 U.S. 217, 231, (1996).

13  "Thus, Article 17 is a 'pass-through' provision which, absent special federal legislation

14  applicable to Warsaw Convention cases, provides nothing more than an authorization to apply

15  whatever law would govern in the absence of the Warsaw Convention.  *Id.*, *citing  Ins. Co. of N.*

16  *Am. v. Fed. Express Corp.,* 189 F.3d 914, 920 (9th Cir.1999) (declining to apply federal common

17  law and instead applying California law, as opposed to Canadian law, to determine whether

18  airline had engaged in "wilful misconduct").

19         The *Maddox* Court looked to the law of the passenger's domicile, Arkansas, to determine

20  whether the passenger could recover prejudgment interest, and denied the passenger's request.

21  The Eighth Circuit affirmed.  Following *Maddox*, this Court should apply California law to the

22  issue of prejudgment interest, as it is undisputed that Plaintiffs are domiciled in California and

23  there is no other jurisdiction with any relation to Plaintiffs' damage claims.

24  / /

25  / /

26

27  ─────────────────────

28  [5] The *Maddox* decision does not consider the threshold issue of whether prejudgment interest is
    recoverable under the Warsaw Convention, instead applying Arkansas law to bar recovery of
    prejudgment interest.

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

### A. Under California Law, Plaintiff's Prejudgment Interest Claim Was Waived when Not Submitted to the Trier of Fact.

In California, the recovery of prejudgment interest on tort claims is governed by California Civil Code § 3288, which provides: "In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury." CAL. CIV. CODE § 3288 (West 2025).

Here, Plaintiff did not submit a claim for prejudgment interest to the jury and did not allege a claim for prejudgment interest in connection with her Montreal Convention claim in any pleadings, including the operative Second Amended Complaint. Instead, in the Second Amended Complaint, Plaintiff alleged that she was entitled to the recovery of prejudgment interest under Texas law in connection with her breach of contract claim, only, which was dismissed by this Court and not tried to the jury. ECF No. 85, ¶ 146. Plaintiff also failed to make any claim for prejudgment interest in the Final Pretrial Conference Statement or proposed jury instructions. Under California law, the Court does not have discretion to enter prejudgment interest following a jury verdict in a tort case – this discretion lies exclusively with the jury or the trier of fact in a bench trial.

For example, the California Court of Appeal in *Barry v. Raskov*, 232 Cal. App. 3d 447 (1991), held that the trial court improperly granted prejudgment interest after the jury had already awarded damages, noting that "[t]he trial court had no authority to usurp the discretion conferred on the jury." *Id.* at 457; *see also In re Slatkin*, 525 F.3d 805, 820 (9th Cir. 2008) (endorsing the holding in *Barry*). In *King v. S. Pac. Co.*, 109 Cal. 96, 99 (1895), the Supreme Court of California held that a trial court's jury instruction was "clearly erroneous" when it provided guidance to the jury regarding which interest rate to apply and from which dates. *Id.* at 99. The *King* court emphasized that "the question of interest must be left to the discretion of the jury," and further noted that "a modification of the judgment cannot be made" when the jury verdict was for a "lump sum." *Id.* at 99, 100. In both cases, a jury served as the trier of fact, just as in this case.

Citing this California caselaw, federal courts within California have likewise held that

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

they lack the authority to award prejudgment interest under § 3288 where the jury served as trier of fact. *25 W. Air Charter, Inc. v. Schembari*, 2019 WL 6998789, at *4 (C.D. Cal. Mar. 7, 2019) (finding "no authority for the proposition that a court may award prejudgment interest under § 3288 after a jury verdict was returned without such an award" and, therefore, holding "that it may not award prejudgment interest under § 3288") (*internal citations and quotations omitted*); *Softketeers, Inc. v. Regal W. Corp.*, No. 8:19-CV-00519-JWH (JDEX), 2023 WL 2024701, at *4–5 (C.D. Cal. Feb. 7, 2023), *amended*, No. 819CV00519JWHJDEX, 2023 WL 2016926 (C.D. Cal. Feb. 10, 2023), *and amended on denial of reconsideration*, No. 8:19-CV-00519-JWH (JDEX), 2023 WL 9227018 (C.D. Cal. Mar. 14, 2023), *and appeal dismissed*, No. 23-55136, 2023 WL 3475440 (9th Cir. Apr. 6, 2023), *and aff'd*, No. 24-150, 2025 WL 636708 (9th Cir. Feb. 27, 2025) (*same*).  Accordingly, as this case has already been tried by jury to verdict, the Court may not alter that verdict to impose prejudgment interest in response to a post-verdict motion such as this.

### B. Under California Law, The Jury's Determination of Plaintiff's Comparative Negligence Is a Bar to the Recovery of Prejudgment Interest.

Again, assuming *arguendo* that the Court has discretion to enter a post-verdict award of prejudgment interest, the jury finding of comparative negligence on the part of Plaintiff and Mr. Plasencia is a bar to the recovery of prejudgment interest.  Under California law, prejudgment interest cannot be awarded in a case of comparative negligence because the defendant cannot know the amount of damages that will be awarded against the defendant.  *Wisper Corp. v. California Com. Bank*, 49 Cal. App. 4th 948, 960–62 (1996).

In *Wisper*, the Court of Appeal noted that "[t]he policy underlying authorization of an award of prejudgment interest is to compensate the injured party—to make that party whole for the accrual of wealth which could have been produced during the period of loss."  *Id.* at 960.  "The statute does not authorize prejudgment interest where the amount of damage, as opposed to the determination of liability, 'depends upon a judicial determination based upon conflicting evidence and is not ascertainable from truthful data supplied by the claimant to his debtor.'"  *Id.*, citing *Fireman's Fund Insurance Co. v. Allstate Ins. Co.*, 234 Cal. App. 3d 1154, 1173, (1991).

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1    Thus, where the amount of damages cannot be resolved except by verdict or judgment,

2    prejudgment interest is not appropriate. *Id.*

3        The Ninth Circuit Court of Appeals addressed this issue in *National Union Fire Ins. v.*

4    *Showa Shipping Co.*, 47 F.3d 316 (9th Cir.1995). In that case, the court held that prejudgment

5    interest under the Civil Code was not appropriate, stating "[defendant] not only disputed whether

6    it was liable, but also, if liable, its liability in proportion to that of the other settling defendants.

7    While the amount [plaintiff] contributed to the settlement of the underlying action was capable of

8    being made certain as of the date of the settlement, [defendant's] share of that settlement was

9    uncertain. Accordingly, the District Court erred in awarding prejudgment interest to [plaintiff]."

10   *Id.* at 324.  The court found that "an award of prejudgment interest ... was inappropriate as the

11   damages were not capable of being made certain before a trial and a determination of the relative

12   fault of the parties." *Id.* at 325.

13       Applying these principles to the facts of this case, here, Plaintiff never alleged any

14   specific amount of economic damages, either in the original Complaint, the First Amended

15   Complaint, the Second Amended Complaint, initial disclosures pursuant to FED. R. CIV. P. 26, or

16   in any discovery response.  Plaintiff affirmatively alleged that in this case, damages, including

17   economic damages, may only be decided by the trier of fact.  Not only was liability hotly

18   contested, but the relative fault of Plaintiff, Mr. Plasencia, and American Airlines could not be

19   determined until after trial.   The policy underlying the requirement for prejudgment interest

20   where damages are deemed certain is that in situations where the defendant could have timely

21   paid that amount and has thus deprived the plaintiff of the economic benefit of those funds, the

22   defendant should therefore compensate with appropriate interest.  Here, Plaintiff did not provide

23   American Airlines with a computation of damages until approximately one month before trial.

24   Plaintiff and Mr. Plasencia were then apportioned a 27.5% share of comparative fault in

25   connection with this incident, whereas American Airlines was apportioned a 77.5% share of

26   fault.  Accordingly, awarding prejudgment interest here would not serve the underlying public

27   policy.  These facts do not present a case in which American could have paid damages which

28   were certain or capable of being made certain, absent a fully litigated apportionment of fault.

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

### C.   Under California Law, Plaintiff is Entitled Only to Prejudgment Interest on Past Economic Losses.

Under California law, prejudgment interest cannot be awarded on damages for the intangible, noneconomic aspects of mental and emotional injury because they are inherently nonpecuniary, unliquidated, and not readily subject to precise calculation. *Greater Westchester Homeowners Assn v. L.A.*, 26 Cal. 3d 86, 102-103 (1979). Prejudgment interest may only be awarded on past economic damages. *Id.* Interest is not compounded. *Douglas v. Westfall*, 113 Cal. App. 2d 107, 112 (1952). Accordingly, in the highly unlikely event that the Court determines that prejudgment interest may be awarded under California law, simple interest calculated on past economic damages ($699,832), reduced by the comparative negligence finding of 27.5%, is the proper measure. Plaintiff's demand for prejudgment interest on past non-economic damages is without any support in California law.

### IV

### ASSUMING, *ARGUENDO*, THAT FEDERAL LAW APPLIES TO THE ISSUE OF RECOVERABLE DAMAGES, THIS COURT SHOULD NOT EXERCISE ITS DISCRETION TO AWARD PREJUDGMENT INTEREST ON PAST DAMAGES

Turning to federal law, Plaintiff failed to comply with the basic requirement of Rule 26(a)(1)(A)(iii) that a party provide "a computation of each category of damages claimed." FED. R. CIV. P. 26(a)(1)(A)(iii). Prior to filing her Motion for Entry of Final Judgment two days after the jury verdict, Plaintiff never asserted a claim for prejudgment interest on her Montreal Convention claim and never provided a computation of past economic damages in any pleading or discovery response.

Under FED. R. CIV. P. 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). Here, Plaintiff's failure to provide a computation of damages to American Airlines is neither substantially justified nor harmless. The failure is not substantially justified because there can be no reason for Plaintiff to

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

fail to provide a computation of past economic damages in a Rule 26(a)(1)(A) initial disclosure – these amounts would have been known only to Plaintiff, particularly amounts paid out of pocket to Mr. Plasencia's in-home caregivers, which constitute the bulk of Plaintiff's damages and which are not ascertainable by reference to any medical records provided by Plaintiff's counsel. Plaintiff's failure to assert a claim for prejudgment interest until after the jury rendered its verdict is also prejudicial to American Airlines because American Airlines lost the opportunity to argue, before trial, that this claim should have been submitted to the discretion of the jury. Accordingly, under the Federal Rules of Civil Procedure, Plaintiff should be prohibited from seeking prejudgment interest under federal law.

Prejudgment interest is an element of damages, not a penalty. *Schneider v. Cnty. of San Diego*, 285 F.3d 784, 789 (9th Cir. 2002). *Schneider* holds that the purpose of awarding prejudgment interest is "to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *Id.* The Supreme Court has held that in exercising its discretion to award prejudgment interest, a district court should consider "whether prejudgment interest is necessary to compensate the plaintiff fully for his injuries, the degree of personal wrongdoing on the part of the defendant, the availability of alternative investment opportunities to the plaintiff, whether the plaintiff delayed in bringing or prosecuting the action, and other fundamental considerations of fairness." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 176 (1989). Courts within the Ninth Circuits have also taken into consideration the following factors when determining whether to exercise their discretion to award prejudgment interest: (1) the time between the lawsuit's filing and the judgment, (2) whether awarding interest will penalize the defendant for "litigating a bona fide dispute" (3) whether the plaintiff made settlement offers such that the defendant's refusal to settle could be construed as "placing the prejudgment interest amount at risk." *Forouzan v. BMW of N. Am., LLC*, No. CV173875DMGGJSX, 2019 WL 856395, at *3 (C.D. Cal. Jan. 11, 2019).

Here, Plaintiff filed suit nearly two years after this incident, on October 31, 2023. ECF No. 1. The action progressed relatively swiftly to trial, with trial completed within two years of

1    filing.   Awarding interest to the Plaintiff here will penalize American Airlines for litigating a

2    bona fide dispute as to its liability for any of Plaintiffs' injuries and damages, as well as Plaintiff

3    and Mr. Plasencia's own comparative negligence, which was ultimately adjudged to be 27.5% by

4    the jury.    As set forth above, Plaintiff has already been fully compensated in an amount that

5    could only have been decided by a jury.  This Court should not award prejudgment interest on

6    these entirely unliquidated amounts, which were unknowable to American Airlines until the time

7    of trial, which Plaintiff affirmatively conceded in discovery responses.

8         Although  the  federal  standard  permits  the  Court  to  award  prejudgment  interest  on

9    Plaintiffs' past economic and non-economic losses, at its discretion, the Court should not do so

10   here for all of the reasons set forth above.  If the Court does exercise its discretion to award

11   prejudgment interest at the rate requested by Plaintiff (3.64%), the award should be on pre-

12   incident economic damages, only, reduced by 27.5% to reflect the Plaintiffs' comparative fault.

13        Following the Court's decision on whether or not prejudgment interest may be recovered,

14   and if so, by what standard, federal or state, and on what elements of the jury verdict, American

15   Airlines will provide its economist's calculation of the applicable prejudgment interest.

16                                        **CONCLUSION**

17        American Airlines, Inc. respectfully requests that the Court deny Plaintiff's Motion.

18

19   Dated: January 30, 2026                    CONDON & FORSYTH LLP

20

21                                 By: _____

22                                     DAVID J. HARRINGTON

                                       -and-

23                                     IVY L. NOWINSKI
                                       CONDON & FORSYTH LLP
24                                     1610 R Street, Suite 300
                                       Sacramento, CA 95811
25                                     Telephone: (310) 557-2030
                                       Facsimile: (310) 557-1299
26
                                       Attorneys for Defendant
27                                     AMERICAN AIRLINES, INC.

28

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

I hereby certify that on January 30, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.

Sanjiv N. Singh
SANJIV N. SINGH, APLC
1700 South El Camino Real, Suite 503
San Mateo, California 94402
Telephone: (650) 389-2255
E-mail: ssingh@sanjivnsingh.com

Darren P. Nicholson
Hannah M. Crowe
BURNS CHARLES LLP
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
Email: dnicholson@burnscharest.com;
hcrowe@burnscharest.com

*Attorneys for Plaintiff*

_____
Ivy L. Nowinski

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030