**SANJIV N. SINGH, APLC**
Sanjiv N. Singh (State Bar No. 193525)
ssingh@sanjivnsingh.com
1700 South El Camino Real, Suite 503
San Mateo, CA 94402
Telephone: (650) 389-2255

**BURNS CHAREST LLP**
Darren P. Nicholson (*pro hac vice*)
dnicholson@burnscharest.com
Hannah M. Crowe (*pro hac vice*)
hcrowe@burnscharest.com
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA MARIA MARCELA TAVANTZIS, as an individual, and as Legal Guardian of JESUS PLASENCIA, an incapacitated person,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>AMERICAN AIRLINES, INC.,<br><br>　　　　　Defendant. | Case No.: 5:23-cv-05607-NW-SVK<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL**<br><br>Date: April 22, 2026<br>Time: 9 a.m. PT<br>Place: Courtroom 3 – 5th Floor |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................ iii

SUMMARY OF THE EVIDENCE ................................................................................1

LEGAL STANDARD ....................................................................................................1

ARGUMENT ................................................................................................................2

I.    Jury Instruction 29 was an Accurate and Neutral Statement of the Law That Allowed the Jury to Determine the Accident Issue Intelligently. ......................................................................................2

    A. There was no Error in Declining to Include American's Proposed Language in Jury Instruction 29. ..........................................2

    B. Even Assuming Error, Such Error is Harmless. ...............................5

II.    The Clear Weight of the Evidence Supports the Jury's Unanimous Verdict .........................................................................................8

III.    The Judgment is not Affected by Mr. Plasencia's Tragic Death. ....................11

    A. The Court Correctly Included the Jury's Award of Future Damages in its Judgment. ...........................................................12

      1.    Under Federal Law, Mr. Plasencia's Damages Award Survives his Death. ......................................................................12

      2.    California Law does not Mandate Striking Mr. Plasencia's Award of Future Damages. .................................................14

    B. American Fails to Establish any Other Grounds for Altering the Judgment. ....................................................................15

CONCLUSION ...........................................................................................................17

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL
CASE NO.: 5:23-cv-05607-NW-SVK

# TABLE OF AUTHORITIES

**Cases**

*Air France v. Saks*,
  470 U.S. 392 (1985) ...................................................................................... 3, 4

*Allstate Ins. Co. v. Herron*,
  634 F.3d 1101 (9th Cir. 2011) ........................................................................ 11

*Arzu v. American Airlines, Inc.*,
  782 F. Supp. 3d 361 (N.D. Tex. 2025) ............................................................. 4

*Aziz v. Air India Ltd.*,
  658 F. Supp. 2d 1144 (C.D. Cal. 2009) ........................................................... 4

*Baxter Healthcare Corp. v. Fresenius Medical Care Holdings, Inc.*,
  2011 WL 672640 (N.D. Cal. Feb. 17, 2011) .................................................... 2

*Boyd v. Bulala*,
  905 F.2d 764 (4th Cir. 1990) .......................................................................... 16

*Bracken v. Harris & Zide, L.L.P.*,
  219 F.R.D. 481 (N.D. Cal. 2004) ................................................................... 13

*Brooks v. Cook*,
  938 F.2d 1048 (9th Cir. 1991) .......................................................................... 2

*Cadlo v. Metalclad Insulation Corp.*,
  151 Cal. App. 4th 1311 (2007) ................................................................. 14, 15

*Carino v. Garland*,
  997 F.3d 1053 (9th Cir. 2021) ........................................................................ 14

*Castellar v. Mayorkas*,
  2021 WL 3856488 (S.D. Cal. Aug. 30, 2021) ................................................ 17

*Catlin v. U.S.*,
  324 U.S. 229 (1945) ........................................................................................ 12

*Chopra v. Gen. Elec. Co.*,
  527 F. Supp. 2d 230 (D. Conn. 2007) ............................................................ 12

*Corex Corp. v. U.S.*,
  638 F.2d 119 (9th Cir. 1981) .......................................................................... 15

*Davis by Davis v. Jellico Cmty. Hosp. Inc.*,
  912 F.2d 129 (6th Cir. 1990) .......................................................................... 16

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL
CASE NO.: 5:23-cv-05607-NW-SVK

*Fiorito Bros., Inc. v. Fruehauf Corp.*,
   747 F.2d 1309 (9th Cir. 1984) ...................................................................... 1

*Gantt v. City of Los Angeles*,
   717 F.3d 702 (9th Cir. 2013) ........................................................................ 2

*James v. Home Construction Co. of Mobile, Inc.*,
   621 F.2d 727 (5th Cir. 1980) ...................................................................... 13

*Jazzabi v. Allstate Ins. Co.*,
   278 F.3d 979 (9th Cir. 2002) ........................................................................ 2

*Kaufmann v. Kijakazi*,
   32 F.4th 843 (9th Cir. 2022) ...................................................................... 15

*Klestadt & Winters, LLP v. Cangelosi*,
   672 F.3d 809 (9th Cir. 2012) ...................................................................... 12

*Kode v. Carlson*,
   596 F.3d 608 (9th Cir. 2010) ........................................................................ 1

*Landes Constr. Co. v. Royal Bank of Can.*,
   833 F.2d 1365 (9th Cir. 1987) ...................................................................... 1

*Le v. U.S.*,
   138 F.4th 264 (5th Cir. 2025) .................................................................... 16

*Lewis v. Tesla, Inc.*,
   2026 WL 16882 (N.D. Cal. Jan. 2, 2026) ...................................... 11, 12, 17

*Lopez v. Regents of Univ. of Cal.*,
   5 F. Supp. 3d 1106 (N.D. Cal. 2013) .......................................................... 13

*Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*,
   726 F.2d 1381 (9th Cir. 1984) ...................................................................... 2

*Madrigal v. Allstate Ins. Co.*,
   215 F. Supp. 3d 870 (C.D. Cal. 2016) ...................................................... 2, 3

*Mathew Enterprise, Inc. v. Chrysler Group LLC*,
   250 F. Supp. 3d 409 (N.D. Cal. 2017) .......................................................... 2

*McDonald v. Maxwell*,
   274 U.S. 91 (1927) .................................................................................... 15

*McDowell v. Calderon*,
   197 F.3d 1253 (9th Cir. 1999) ................................................................ 11, 12

*Miller v. Rykoff-Sexton, Inc.*,
   845 F.2d 209 (9th Cir. 1988) ........................................................................ 1

iv

*Nunez v. Santos,*
    427 F. Supp. 3d 1165 (N.D. Cal. 2019) .......................................................... 1

*Olympic Airways v. Husain,*
    540 U.S. 644 (2004) ......................................................................................... 3

*Perazza v. Delameter,*
    722 F.2d 1455 (9th Cir. 1984) ......................................................................... 2

*Roberston v. Wegmann,*
    436 U.S. 584 (1991) ....................................................................................... 14

*Sessa v. Ancestry.com Operations Inc.,*
    713 F. Supp. 3d 997 (D. Nev. 2024) ............................................................. 17

*Soto v. Am. Honda Motor Co., Inc.,*
    2012 WL 5877476 (N.D. Cal. Nov. 20, 2012) ............................................. 17

*Venable v. Meyers,*
    500 F.2d 1215 (9th Cir. 1974) ....................................................................... 14

*Wallace v. Korean Air,*
    214 F.3d 292 (2d Cir. 2000) ............................................................................ 3

*Weatherford U.S., L.P. v. U.S. Dep't of Labor, Admin. Bd.,*
    68 F.4th 1030 (6th Cir. 2023) ....................................................................... 13

*Wheeler v. City of Santa Clara,*
    894 F.3d 1046 (9th Cir. 2018) ................................................................. 13, 14

*White v. Emirates Airlines, Inc.,*
    493 F. App'x 526 (5th Cir. 2012) .................................................................... 4

**Statutes**

42 U.S.C. § 1988(a) ............................................................................................ 14

**Other Authorities**

1 AM. JUR. 2d *Abatement, Survival, and Revival* § 58 .................................... 12

WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2808 (3d ed. 2025)
    ....................................................................................................................... 16

No amount of obfuscating the law and facts will save American from the truth: Plaintiff presented sufficient evidence at trial of multiple Montreal Convention accidents on Flight 68, the Court provided the jury with an accurate, neutral statement of Montreal Convention law, and the jury returned a unanimous verdict in favor of Plaintiff. Accordingly, Plaintiff opposes Defendant American Airlines, Inc.'s ("American") Motion for New Trial and respectfully shows the Court as follows:

## SUMMARY OF THE EVIDENCE

The Court is intimately familiar with the evidence presented at trial, including the factual testimony of American's three fact witnesses (who contradicted and pointed the finger at each other at trial), the expert testimony of a former American Airlines pilot and a former American Airlines flight attendant about the failures of the flight crew on Flight 68, and the expert testimony of Plaintiff's numerous medical experts on causation and damages. Plaintiff respectfully incorporates the evidence and argument presented in her Opposition to American's Renewed Motion for Judgment as a Matter of Law and supporting declaration of Hannah M. Crowe and exhibits (Dkts. 248, 249) as if stated herein.

## LEGAL STANDARD

"The decision to grant a new trial falls within the sound discretion of the trial court." *Nunez v. Santos*, 427 F. Supp. 3d 1165, 1189 (N.D. Cal. 2019) (citing *Kode v. Carlson*, 596 F.3d 608, 611 (9th Cir. 2010)). The court "should not grant a new trial unless it is 'left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1372 (9th Cir. 1987)).

"A party is not entitled to a jury instruction phrased exactly as it desires; rather, an instruction is proper if it adequately allows the party to argue its theory of the case to the jury." *Fiorito Bros., Inc. v. Fruehauf Corp.*, 747 F.2d 1309, 1316 (9th Cir. 1984); *see also Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 212 (9th Cir. 1988) ("The jury instruction is adequate if it enables the jury to determine the issue intelligently."). "If a party claims that an erroneous jury instruction was given, the erroneous instruction is not grounds for

1

granting a new trial unless the error affects the essential fairness of the trial and a new trial is necessary to achieve substantial justice." *Baxter Healthcare Corp. v. Fresenius Medical Care Holdings, Inc.*, 2011 WL 672640, at *3 (N.D. Cal. Feb. 17, 2011) (citing *Jazzabi v. Allstate Ins. Co.*, 278 F.3d 979, 985 n.24 (9th Cir. 2002)).

## ARGUMENT

### I. Jury Instruction 29 was an Accurate and Neutral Statement of the Law That Allowed the Jury to Determine the Accident Issue Intelligently.

"The Ninth Circuit instructs that 'jury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading.'" *Madrigal v. Allstate Ins. Co.*, 215 F. Supp. 3d 870, 909 (C.D. Cal. 2016) (cleaned up) (quoting *Gantt v. City of Los Angeles*, 717 F.3d 702, 706 (9th Cir. 2013)) (assuming contested jury instruction was erroneous and finding any error was harmless). Jury Instruction 29 fairly and adequately articulated the definition of "accident" under the Montreal Convention, correctly stated controlling Supreme Court precedent, and did not mislead the jury by including unnecessary and one-sided interpretations of Montreal Convention case law requested by American.

### A. There was no Error in Declining to Include American's Proposed Language in Jury Instruction 29.

American admits Jury Instruction 29 does not "affirmatively misstate the law," yet frames the Court's rejection of its desired language as "erroneous." Both cannot be true. American "is not entitled to have the jury instructed in the particular language of [its] choice." *Brooks v. Cook*, 938 F.2d 1048, 1053 (9th Cir. 1991) (emphasis added) (citing *Perazza v. Delameter*, 722 F.2d 1455, 1457 (9th Cir. 1984)). Indeed, the Court was "not required to use the exact words proposed by [American], incorporate every proposition of law suggested by counsel [for American,] or amplify an instruction if the instruction as given allowed the jury to determine intelligently the issues presented.'" *Id.* (cleaned up) (quoting *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 726 F.2d 1381, 1398 (9th Cir. 1984)); *see also Mathew Enterprise, Inc. v. Chrysler Group LLC*, 250 F. Supp. 3d 409, 422 (N.D. Cal. 2017) (finding that jury instruction offered accurate

2

1  statement of the law "even it did not provide all of the detail [the moving party] desired");

2  *Madrigal v. Allstate Ins. Co.*, 215 F. Supp. 3d 870, 911 (C.D. Cal. 2016) (rejecting

3  defendant's argument that instruction was not specific enough and finding no error where

4  instruction "was consistent with the law and the evidence in the present case"). Here,

5  American's desired language was both inaccurate and duplicative, and incorporating the

6  airline's proposed language into Jury Instruction 29 would have created a misleading

7  interpretation of the relevant law.

8    The Montreal Convention provides:

9      The carrier is liable for damage sustained in case of death or bodily
       injury of a passenger upon condition only that the accident which
10      caused the death or injury took place on board the aircraft or in the
       course of any of the operations of embarking or disembarking.
11

12  Montreal Convention, art. 17(1). The Supreme Court defines "accident" under Article 17

13  as an "'unexpected or unusual event or happening that is external to the passenger.'"

14  *Olympic Airways v. Husain*, 540 U.S. 644, 651 (2004) (quoting *Air France v. Saks*, 470

15  U.S. 392, 405 (1985)). Because "any injury is the product of a chain of causes," the

16  Supreme Court emphasized that "a plaintiff need only be able to prove that 'some link in

17  the chain was an unusual or unexpected event external to the passenger." *Id.* at 652

18  (cleaned up) (quoting *Saks*, 470 U.S. at 406). This "accident" definition "should be

19  flexibly applied after assessment of all the circumstances surrounding a passenger's

20  injuries." *Husain*, 540 U.S. at 651 (quoting *Saks*, 470 U.S. at 405). Notably, this flexible

21  definition "did <u>not</u> [t]hereby authorize courts to <u>add more hurdles</u> for a plaintiff to

22  overcome." *Wallace v. Korean Air*, 214 F.3d 292, 300 (2d Cir. 2000) (Pooler, J.

23  concurring) (emphasis added).

24    American's proposed language for Jury Instruction 29 added these impermissible

25  hurdles and would have created an impossible standard for proving accident: "Plaintiffs

26  must show, at minimum, that the airline's actions constitute a <u>significant deviation</u> from

27  recognized practices and procedures to meet the threshold of 'unusual or unexpected.'"

28  Dkt. 243 at 3 (emphasis added). While American boldly claims that there is "persuasive if

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL
CASE NO.: 5:23-cv-05607-NW-SVK

not binding" case law supporting its desired definition (Dkt. 243 at 13), American does not cite to <u>any</u> controlling case from the Ninth Circuit, much less a case that incorporated this definition in a jury instruction. Instead, American warps the holdings in various orders to suit its proposed jury instruction here. Tellingly, <u>none</u> of the cases cited by American use the phrase "significant deviation" or otherwise limit the "flexible" definition of accident in this way. *See, e.g.*, *Aziz v. Air India Ltd.*, 658 F. Supp. 2d 1144, 1148 (C.D. Cal. 2009) (quoting *Saks*' mandate that "'this definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries'" (quoting *Saks*, 470 U.S. at 405)); *White v. Emirates Airlines, Inc.*, 493 F. App'x 526, 534 (5th Cir. 2012) (per curiam) ("Under *Saks*, courts must apply the definition of "accident" "flexibly . . . after assessment of all the circumstances surrounding a passenger's injuries." (quoting *Saks*, 470 U.S. at 405)); *see also Arzu v. American Airlines, Inc.*,[1] 782 F. Supp. 3d 361, 367 (N.D. Tex. 2025) ("Again, the unusual and unexpected inquiry must be applied 'flexibly' after 'assessment of all the circumstances surrounding a passenger's injuries." (quoting *Saks*, 470 U.S. at 405)).

Despite American's insistence of error, Jury Instruction 29 did not foreclose American's theories of the case. Jury Instruction 29 reads in part: "The acts or omissions of airline personnel, including an employee's failure to follow airline policy or procedure, may be an unexpected or unusual event or happening." Dkt. 240-8, 135:16–18. The "may" necessarily indicates that <u>not all acts or omissions are unexpected or unusual events or happenings</u>.

The instruction given to the jury accurately, fairly, and adequately covered the very proposition American sought to include, and American's proposed language was needlessly duplicative. For example, American requested the Court instruct the jury that "[a]n imperfect response by the flight or cabin crew to a passenger's medical emergency does not necessarily constitute an accident." *See* Dkt. 243 at 3. But as the Court

---

[1] The district court's decision in *Arzu v. American Airlines, Inc.* is on appeal in the Fifth Circuit, with oral argument scheduled for March 4, 2026.

recognized, the "may" language in Jury Instruction 29 addressed this very scenario. *See* Dkt. 249, Ex. 1, Hearing Tr. 42:16–19 (Sept. 4, 2025) ("[S]ome of what [American was] asking for were slight variations on what the Court had already included that's clear law that does apply here."). In summary, Jury Instruction 29 was not given in error simply because it did not include all of American's desired wording.

## B.    Even Assuming Error, Such Error is Harmless.

Even if the Court were to assume that Jury Instruction 29 was erroneous (it was not), that error is harmless. Even with the addition of American's one-sided and duplicative language, it is more probable than not that the jury would have reached the same unanimous verdict. American cannot avoid the fact that the jury heard ample testimony and saw numerous pieces of evidence of specific, "significant" policy violations by the Flight 68 crew, while American's crew contradicted and pointed the finger at each other.

The jury learned that American's "[f]light attendants are "trained to detect symptoms of sick passengers." Dkt. 249, Ex. 5, Trial Ex. 19, AA_000147. The jury also heard that American's Inflight Manual includes a variety of the signs and symptoms that flight attendants are trained to detect in passengers, such as: "inability to move muscles in extremities, falling suddenly/ one-sided weakness or loss of movement;" "Slurred speech, difficulty talking or being understood, an inability to communicate, or confusion;" and "Unconsciousness." *Id.* at AA_000484–85. The Inflight Manual further mandates how American crew members must respond to these symptoms:

- Rule out other causes
- Deliver Medical Assistance PA for physician or medical personnel on board
- Notify captain of the need to contact the Physician on Call
- Contact the Physician on Call (POC)

*Id.* at AA_000485. Consistent with the Inflight Manual's mandate, Plaintiff's air cabin safety expert, former American Airlines flight attendant and purser Kathleen Lord-Jones,

5

confirmed that crewmembers must communicate with one another regarding a passenger's symptoms:

> Q: Ms. Lord-Jones, are flight attendants expected to communicate with the rest of the cabin crew when one of these stroke symptoms is identified?
>
> A: Yes.
>
> Q: And if a flight attendant fails to communicate that, would that be an unexpected event?
>
> A: Yes.
>
> Q: Would it be an unusual event?
>
> A: Yes.

Dkt. 249, Ex. 2, Trial Tr. vol. 2, 332:12–20. And Ms. Lord-Jones did not, as American claims, testify that a policy was not violated. Dkt. 243 at 13; *see* Trial Tr. vol. 2, 360:24–25 (Q: "So in this case on the ground, Flight Attendant Eccles did notify the purser, correct?"). As Ms. Lord-Jones made clear, merely speaking to one another about a passenger is <u>not</u> abiding by American's policies and procedures. Rather, crewmembers must notify one another about a passenger's symptoms. Dk. 249, Ex. 2, Trial Tr. vol. 2, 332:12–20.

American claims that the jury instruction "error" was not harmless because no "policy violation [was] identified by Plaintiffs in their <u>closing argument</u>." Dkt. 243 at 2 (emphasis added). Putting aside that closing arguments <u>are not evidence</u>, American's argument that the policies in evidence "provided nothing that mandated a different course of action than the one taken by the American Airlines crew" is wrong and was contradicted by the evidence at trial. *See id.* at 13. The jury heard evidence that despite the Inflight Manual's explicit instructions to "Rule out other causes;" Deliver Medical Assistance PA for physician or medical personnel on board; "Notify the captain of the need to contact the Physician on Call;" and "Contact the Physician on Call (POC)," <u>FA Eccles did none of these things when faced with Mr. Plasencia's symptoms—preflight or inflight</u>. Dkt. 249, Ex. 9, Trial Ex. 9, Inflight Manual, AA_000485.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL
CASE NO.: 5:23-cv-05607-NW-SVK

FA Eccles testified that while Flight 68 was on the ground in Miami, he notified both Captain Occhino and Purser Gambello about all the critical details he had been told regarding Mr. Plasencia's pre-flight episode. Trial Tr. vol. 4, at 774:10–775:18; 779:1–14. But Captain Occhino and Purser Gambello flatly <u>denied</u> that FA Eccles had reported this information to them, which Captain Occhino testified <u>would have made a difference</u>:

> Q: Did David Eccles tell you that he had a passenger that had dropped his phone?
>
> A: No.
>
> Q: Did David Eccles tell you that he had a passenger that had blacked out?
>
> A: No.
>
> Q: Did David Eccles tell you that this particular passenger did not remember where he was?
>
> A: No.
>
> . . .
>
> Q: Would it be fair to say that it would be your expectation, as the pilot, that if you are going back to talk to these passengers who you were told were disoriented, that you would want to be told these things?
>
> A: It would have made a difference.
>
> Q: Okay. Why would it have made a difference?
>
> A: Well, I mean, if I had known all that, we might have – I still would have come back, but I might have gotten someone else involved and asked more questions, because I didn't really ask questions like, oh, I heard you blacked out, I heard you did this. I didn't ask any of that because I didn't know any of it.

Trial Tr. vol. 4, 859:1–9; 860:4–15. Purser Gambello likewise confirmed that FA Eccles did <u>not</u> tell her about the circumstances surrounding Mr. Plasencia's condition. *Id.* at 843:11–13.

And Purser Gambello and Captain Occhino both testified that FA Eccles unexpectedly erred in his handling of Mr. Plasencia's medical emergency during the flight:

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL
CASE NO.: 5:23-cv-05607-NW-SVK

Q: Were you aware that Mr. Eccles observed Mr. Plasencia losing balance on his right side about an hour and a half into the flight?

A: No.

Q: Is that something you would have expected to be made aware of as the purser?

A: I would say yes.

Dkt. 249, Ex. 10, Gambello Dep. 39:04–09 (Sept. 11, 2024); *see also* Dkt. 249, Ex. 2, Trial Tr. vol. 2, 317:2–3 ("[T]he video deposition of Kelly Gambello was played in open court.").

Q: Were you informed of this incident approximately one and a half hours or thereafter into the flight?

A: No.

. . .

Q: … [W]ere you aware at the time you were flying the plane, that the situation was so serious that they were checking on him every five minutes after that?

A: <u>No. He should have told me</u>.

Dkt. 249, Ex. 6, Occhino Dep. 140:12–15; 141:07–12 (emphasis added). Simply put, this (and other) evidence presented to the jury belies American's nonsensical argument that "nothing . . . mandated a different course of action than the one taken by the American Airlines crew." *See* Dkt. 243 at 13.

## II.    The Clear Weight of the Evidence Supports the Jury's Unanimous Verdict.

The jury's unanimous verdict in favor of Plaintiff is supported by the clear weight of the evidence. The evidence presented at trial established that shortly after boarding Flight 68 in Miami, Mr. Plasencia dropped his phone, could not pick it back up, and spoke in "gibberish." Dkt. 249, Ex. 2, Trial Tr. vol. 2, 233:9–13. Ms. Tavantzis reported these symptoms to FA Eccles. *Id.* at 234:16–17, 234:25–235:1. In his American Airlines CERS report, FA Eccles reported that Ms. Tavantzis told him her husband had just "block [sic] out and couldn't remember where he was." Dkt. 249, Ex. 8, Trial Ex. 8, Eccles CERS Report, AA_000104. But according to Purser Gambello's CERS report, FA Eccles failed

8

to report these symptoms, telling her only that a passenger "seemed confused." Dk. 249, Ex. 11, Trial Ex. 11, Gambello CERS Report, AA_000110. Notably, Captain Occhino testified at trial that knowing Mr. Plasencia had dropped his phone and blacked out would have made a difference in how he responded to the situation preflight. Dkt. 249, Ex. 4, Trial Tr. vol. 4, 859:1–9; 860:4–15.

The evidence also established that FA Eccles witnessed Mr. Plasencia losing balance on the right side of his body—another possible stroke symptom—approximately 1.5 hours into the flight. *See id.* American attempts to explain this away as Mr. Plasencia simply having "difficulty walking," but FA Eccles' CERS report made clear that Mr. Plasencia kept losing his balance on the right side of his body. *See* Dkt. 249, Ex. 8, Trial Ex. 8, Eccles CERS Report, AA_000104. And both Purser Gambello and Captain Occhino confirmed that this information—that Mr. Plasencia "kept losing his balance on the right side of his body"—was something they expected FA Eccles to report. Dkt. 249, Ex. 10, Gambello Dep. 39:04–09; Dk. 249, Ex. 6, Occhino Dep. 140:12–15; 141:07–12.

Kathleen Lord-Jones, Plaintiff's flight attendant expert and former American Airlines purser, testified that FA Eccles "failed to again identify someone exhibiting stroke-like symptoms" and "failed to communicate his observations and concerns with other flight attendants and the captain." Dkt. 249, Ex. 2, Trial Tr. vol. 2, 333:5–8. Ms. Lord-Jones confirmed that this, too, was a violation of the Inflight Manual, the crew resource management policy, and industry standards. *Id.* at 333:9–15. And Ms. Lord-Jones confirmed that these failures were both "unusual" and "unexpected." *Id.* at 343:19–25.

Considering the symptoms observed by FA Eccles "about an hour and a half into the flight[,]" Dr. Jack Schim, M.D., Plaintiff's neurology expert, testified that Mr. Plasencia was "likely" "already having a stroke at that point" and that a reasonable physician or medically trained person—including a licensed "Physician On Call"—would have recognized the medical emergency and the need to land as soon as possible. Dkt. 249, Ex. 3, Trial Tr. vol. 3, 505:3–5; Nicholson Decl., Ex. 1, Trial Tr. vol. 3, 490:24–492:2.

9

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL
CASE NO.: 5:23-cv-05607-NW-SVK

Finally, the evidence presented at trial established that these accidents caused a significant delay in Mr. Plasencia receiving ameliorative stroke treatment, leaving him with a much more severe stroke deficit than he otherwise would have suffered. Dr. Schim testified that the delay in treatment caused by the Flight 68 crew resulted in Mr. Plasencia's severe deficits. Dkt. 249, Ex. 3, Trial Tr. vol. 3, 486:20–487:2. Dr. Schim confirmed that if a patient in Mr. Plasencia's position had been transported to an appropriate medical facility in Miami after exhibiting stroke symptoms during a TIA, they would likely be administered tPA and experience a far better outcome. *Id.* at 495:1–16. Dr. Schim also confirmed that diversion either to Miami or Bermuda within Captain Levy's estimated timeframes would have allowed for the timely administration of tPA. *Id.* at 490:12–17. According to Dr. Schim, a patient in Mr. Plasencia's position would have, in all likelihood, experienced a better outcome with the administration of tPA. *Id.* at 490:18–20.

American again attempts to inject additional hurdles into the definition of accident by claiming that "[w]ithout evidence that flight and cabin crew had specific actionable knowledge of Mr. Plasencia's pressing health need, the verdict rendered by the jury was against the clear weight of the evidence." Dkt. 243 at 2; *see also id.* at 15 (arguing that there was no evidence that Plaintiff or Mr. Plasencia made an "overt health related request" and did not show "overt signs of a serious health emergency"). As discussed above, this new standard flies in the face of controlling Supreme Court precedent and the "flexible" definition of what constitutes an accident. American cannot retrofit the evidence presented at trial into a new, invented standard argued for the first time after trial. The clear weight of the evidence supports the jury's verdict that at least one Montreal Convention accident occurred on Flight 68, causing Mr. Plasencia to suffer an extended delay in treatment and a severe stroke deficit as a result.

Nor is the jury's verdict a "miscarriage of justice," and American's imaginative reframing of the evidence presented at trial falls flat. American wishes that because of "what was objectively known to the cabin and flight crew at all relevant moments in time, there should be no liability here." Dkt. 243 at 16. But "what was objectively known to the

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL
CASE NO.: 5:23-cv-05607-NW-SVK

1  cabin and flight crew" is central to the accidents on Flight 68: it was unexpected and
2  unusual that FA Eccles <u>knew</u> that Mr. Plasencia had lost consciousness, dropped his
3  phone, spoke in gibberish, and was repeatedly losing balance on one side, but chose to tell
4  no one. There is simply no escaping that FA Eccles is **<u>the reason</u>** "the cabin and flight
5  crew" did not know (1) the full knowledge of Mr. Plasencia's stroke symptoms on the
6  ground (assuming Purser Gambello and Captain Occhino did not commit perjury); or (2)
7  the additional emergency symptoms Ms. Plasencia experienced 1.5 hours into the flight.

8      American wrings its hands that the jury's verdict will set a "bad precedent," but the
9  truly dangerous precedent would be the one where an airline cannot be held liable if a
10  crew member keeps their knowledge of a passenger's medical emergency to themselves,
11  or a jury's unanimous verdict is vacated simply because the culpable defendant does not
12  like it.

13  **III.   The Judgment is not Affected by Mr. Plasencia's Tragic Death.**

14      A motion brought under Federal Rule of Civil Procedure 59(e) is "not a vehicle to
15  relitigate issues." *Lewis v. Tesla, Inc.*, 2026 WL 16882, at *1 (N.D. Cal. Jan. 2, 2026).
16  Nevertheless, American's request to amend the judgment to strike the jury's award of
17  future damages to Mr. Plasencia does just that. It is a blatant, improper attempt to relitigate
18  its Opposition to Plaintiff's Motion for Substitution. *See* Dkt. 233. The Court has already
19  addressed this issue in its order granting substitution, and American's further arguments
20  here should be disregarded. *See* Dkt. 236. Moreover, American still fails to establish any
21  of the necessary grounds upon which a Rule 59(e) motion may be granted: "(1) if such
22  motion is necessary to correct manifest errors of law or fact upon which the judgment
23  rests; (2) if such motion is necessary to present newly discovered or previously unavailable
24  evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the
25  amendment is justified by an intervening change in controlling law." *Allstate Ins. Co. v.
26  Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citing *McDowell v. Calderon*, 197 F.3d
27  1253, 1255 n.1 (9th Cir. 1999)) ("But amending a judgment after its entry remains 'an

28

extraordinary remedy which should be used sparingly.'" (quoting *McDowell*, 197 F.3d at 1255 n.1)).

### A. The Court Correctly Included the Jury's Award of Future Damages in its Judgment.

American claims that the judgment rests upon the "manifestly erroneous assumption that Mr. Plasencia's death prior to judgment did not extinguish his claims for future damages." Dkt. 243 at 18. The Court has already ruled that Mr. Plasencia's death did not affect the jury's verdict. *See* Dkt. 236. Again, this is an improper bid by American to relitigate an issue already decided by the Court. *See Lewis*, 2026 WL 16882, at *1. But even if American brought this argument properly, it would still fail. That is because there is <u>no</u> "manifest error of law" in the Court's finding that Mr. Plasencia's damages award was not affected by his death.

As an initial matter, American still incorrectly relies on inapposite case law that addresses the survivability of pending <u>claims</u>. *See* Dkt. 243 at 18. As detailed in Plaintiff's Amended Motion for Substitution and Reply in support, the relevant cases in this instance are ones that address the effect of a party's death on a <u>verdict</u>, not on a pending cause of action. *See* Dkt. 234 at 3. "It is well established that, in general, 'an action is not abated by the death of a party after the cause has reached a verdict or final judgment[.]'" *Chopra v. Gen. Elec. Co.*, 527 F. Supp. 2d 230, 239–40 (D. Conn. 2007) (emphasis added) (quoting 1 AM. JUR. 2d *Abatement, Survival, and Revival* § 58). Crucially, "all effectual questions ha[d] been resolved" before Mr. Plasencia's death. See 1 AM. JUR. 2d *Abatement, Survival, and Revival* § 58; *Klestadt & Winters, LLP v. Cangelosi*, 672 F.3d 809, 813 (9th Cir. 2012) (recognizing that jury's verdict is final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" (quoting *Catlin v. U.S.*, 324 U.S. 229, 233 (1945))).

### 1. Under Federal Law, Mr. Plasencia's Damages Award Survives his Death.

American is incorrect in stating that "federal common law . . . dictates that Mr. Plasencia's award should be stricken." *See* Dkt. 243 at 18. Rather, "[c]ourts have

consistently applied a uniform federal law to the survival of various federal claims." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1056 (9th Cir. 2018). "[U]nder federal common law, claims typically survive a decedent's death if they are remedial in nature and not penal." *Id.* at 1056–57; *see also Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1119 (N.D. Cal. 2013) (finding federal common law test, not California Code of Civil Procedure § 377.34, applied to survival of claims under Title VI and Title IX). When applying this test, a court must consider: (1) "whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public;" (2) "whether recovery under the statute runs to the harmed individual or to the public;" and (3) "whether the recovery authorized by the statute is wholly disproportionate to the harm suffered." *Bracken v. Harris & Zide, L.L.P.*, 219 F.R.D. 481, 484 (N.D. Cal. 2004) (quoting *James v. Home Construction Co. of Mobile, Inc.*, 621 F.2d 727, 730 (5th Cir. 1980)). The Sixth Circuit has applied this framework to the survivability of an award of damages. *See Weatherford U.S., L.P. v. U.S. Dep't of Labor, Admin. Bd.*, 68 F.4th 1030, 1036 (6th Cir. 2023).

Under this test, Mr. Plasencia's future damages award survives. <u>First</u>, the purpose of the Montreal Convention is to redress individual wrongs, which means it is 'more likely to have a remedial purpose.'" *See Bracken*, 219 F.R.D. at 484. <u>Second</u>, recovery under the Montreal Convention runs to the harmed individual, not to the public. *See* Montreal Convention art. 17. <u>Third</u>, the recovery authorized by the Montreal Convention is not wholly—or remotely—disproportionate to the catastrophic harm suffered by Mr. Plasencia. The Montreal Convention only allows for compensatory damages and specifically excludes punitive damages. *Id.* art. 29. Because Mr. Plasencia's damages award is remedial and compensatory in nature, it survives his death after the verdict.

Despite this clear federal law governing the survivability of Mr. Plasencia's damages award, American persists in misdirecting the Court to follow inapplicable § 1983 law instead. But the Supreme Court explicitly stated that the holding in *Roberston v. Wegmann* "<u>is a narrow one, limited to situations in which no claim is made that state law</u>

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL
CASE NO.: 5:23-cv-05607-NW-SVK

generally is inhospitable to survival of § 1983 actions and in which the particular application of state survivorship law, while it may cause abatement of the action, has no independent adverse effects on the policies of § 1983." 436 U.S. 584, 594 (1991) (emphasis added). Accordingly, the Ninth Circuit holds that § 1988(a) does "not extend to laws unenumerated in its text." *Wheeler*, 894 F.3d at 1055 (emphasis added); *see also* 42 U.S.C. § 1988(a) (enumerating three civil rights titles: 13, 24, and 70). Simply put, American's insistence that *Robertson* governs the applicable law of survivability defies controlling Supreme Court and Ninth Circuit precedent and is frivolous.

### 2. California Law does not Mandate Striking Mr. Plasencia's Award of Future Damages.

As detailed above, federal law applies to the survivability of Mr. Plasencia's damages, and the Supreme Court makes it clear that the § 1983 rule presented by American does <u>not</u> apply, foreclosing an application of state law. However, even if California law were to apply, California law permits entry of judgment *nunc pro tunc* to a date preceding the death of a party. *See Cadlo v. Metalclad Insulation Corp.*, 151 Cal. App. 4th 1311, 1323 (2007)). This is consistent with the federal courts' "inherent power" to enter judgment *nunc pro tunc* "where necessary to correct a clear mistake and prevent injustice." *Carino v. Garland*, 997 F.3d 1053, 1058 (9th Cir. 2021).

As requested in Plaintiff's Motion to Amend the Judgment (Dkt. 241), the Court should exercise its inherent power and amend the judgment *nunc pro tunc* to October 10, 2025, the date on which Plaintiff's Motion for Entry of Judgment was fully submitted to the Court. *See Venable v. Meyers*, 500 F.2d 1215, 1216 (9th Cir. 1974). The jury returned a unanimous verdict in favor of Ms. Tavantzis and Mr. Plasencia on September 17, 2025. Dkt. 201. Plaintiffs promptly moved for entry of judgment and for prejudgment interest on September 19, 2025 (Dkt. 209), and the motion was fully submitted and ripe for decision on October 10, 2025. Dkt. 218. Only after this final submission, on October 11,

2025, did Mr. Plasencia pass away. Dkt. 222-1.[2] Accordingly, on October 10, 2025, the issue of prejudgment interest was fully submitted to the Court, and a final appealable judgment could have been entered at that time.

American claims, without any support, that the Court should not amend the judgment *nunc pro tunc* "because it is only permitted in situations where the Court's own delay caused entry of judgment to be delayed." Dkt. 243 at 22. This is incorrect. If a party dies after their case is submitted to the court, the court may enter judgment *nunc pro tunc*. *See, e.g.*, *McDonald v. Maxwell*, 274 U.S. 91, 99 (1927) ("[T]he court being advised that respondent . . . has died since . . . the day on which this case was argued and submitted, the judgment here will be entered nunc pro tunc as of that day."). And even under California law, the fact that Plaintiff's Motion for Entry of Judgment was pending at the time of Mr. Plasencia's death does not foreclose entering judgment *nunc pro tunc*. The *Cadlo* court rejected a similar argument that the trial court could not have rendered judgment in the time between the submission of posttrial motions and the plaintiff's death, instead writing that "Even without resolution of these posttrial motions, following the jury's verdict and before [plaintiff's] death the case was in a posture that a final, appealable judgment could have been entered." *Cadlo*, 151 Cal. App. 4th at 1323.

## B. American Fails to Establish any Other Grounds for Altering the Judgment.

American does not present any other reason to alter or amend the judgment under Rule 59(e). First, American completely misunderstands what constitutes "newly discovered or previously unavailable evidence." Such a fact must have existed at the <u>time of trial</u>. *See Corex Corp. v. U.S.*, 638 F.2d 119, 121 (9th Cir. 1981) ("Cases construing

---

[2] American's framing of Plaintiff's Motion for Entry of Judgment as anything other than a standard post-trial motion should be ignored. Plaintiff filed her Motion for Entry of Judgment on September 19, two days after the jury returned its verdict. Plaintiff's motion was entirely consistent with the jury's award because prejudgment interest lies within the discretion of the court, not the jury. *See Kaufmann v. Kijakazi*, 32 F.4th 843, 850 (9th Cir. 2022).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL
CASE NO.: 5:23-cv-05607-NW-SVK

'newly discovered evidence,' . . . uniformly hold that evidence of events occurring after the trial is not newly discovered evidence within the meaning of the rules."); WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2808 (3d ed. 2025). As American recognizes, Mr. Plasencia's death did not occur until after trial, which means that this "evidence" was not in existence at the time of trial and does not constitute "newly discovered evidence."

Next, American fails to demonstrate how altering the judgment or granting a new trial would "prevent manifest injustice." American suggests that it is against public policy to uphold the jury's award of future damages, citing only to a California state court case. *See* Dkt. 243 at 23. But federal courts that have addressed the issue of a party's death after a verdict or judgment emphasize the importance of avoiding arbitrariness and unending litigation. *See, e.g.*, *Boyd v. Bulala*, 905 F.2d 764, 769 (4th Cir. 1990) (finding "the circumstance of [the plaintiff's] early death [after verdict and before judgment] not an exceptional one warranting relief from that judgment" under Rule 59 and Rule 60). "To hold that a plaintiff's death following a jury verdict is the sort of 'substantial injustice' requiring the reopening of cases or award of new trials under the Federal Rules of Civil Procedure would be to invite a morass of appeals[.]" *Davis by Davis v. Jellico Cmty. Hosp. Inc.*, 912 F.2d 129, 135 (6th Cir. 1990). "Conversely, such a rule would require reopening cases where a plaintiff's life span exceeded the expectation presented to the jury." *Id.* As the Sixth Circuit noted, "[a]ny judicial rule establishing contingencies on the enjoyment of damages awards would necessarily be arbitrary." *Id.*

American's myopic focus on the threat of a "windfall" or "unjust enrichment" ignores the fact that it "know[s] that a plaintiff may not survive to fully enjoy an award of damages." *Id.* at 136. The Fifth Circuit cited to *Davis* when it "reject[ed] the assertion that a plaintiff's post-judgment death alone affects the damages award, even when death cuts a life short compared to the calculated life expectancy." *Le v. U.S.*, 138 F.4th 264, 281 (5th Cir. 2025). "To rule otherwise would manufacture inequity, uncertainty, and

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL
CASE NO.: 5:23-cv-05607-NW-SVK

arbitrariness." *Id.* Granting a new trial or amending the judgment to strip the jury's future damages award to Mr. Plasencia would only create inequity, uncertainty, and arbitrariness.

Finally, American does not and cannot identify any "intervening change in controlling law" that would justify amending the judgment. An "intervening change in controlling law is found where the reasoning or theory of a case is 'clearly irreconcilable with the reasoning or theory of intervening higher authority,' or where 'a subsequent decision creates a significant shift in a court's analysis.'" *Sessa v. Ancestry.com Operations Inc.*, 713 F. Supp. 3d 997, 1002 (D. Nev. 2024) (cleaned up) (quoting *Castellar v. Mayorkas*, 2021 WL 3856488, at *4 (S.D. Cal. Aug. 30, 2021)). American's argument that Mr. Plasencia's death triggered a "change in <u>applicable</u> law" does not constitute an intervening change in <u>controlling</u> law. *See* Dkt. 243 at 18. A Rule 59(e) motion is "not a vehicle to relitigate" this argument that the Court has previously rejected. *See Lewis*, 2026 WL 16882, at *1; *see also Soto v. Am. Honda Motor Co., Inc.*, 2012 WL 5877476, at *3 (N.D. Cal. Nov. 20, 2012) (finding no intervening change in controlling law when moving party presented "the same theory initially presented to the Court" because "the Court has already rejected this interpretation of the law"). American cannot escape the Court's prior determination that Mr. Plasencia's death did not affect the jury's verdict.

## CONCLUSION

American's Rule 59 motion misstates the law and the facts. Jury Instruction 29 was an accurate and measured interpretation of controlling Montreal Convention precedent. The jury sat through seven days of trial and returned a unanimous verdict in favor of Plaintiff. The jury's verdict is supported by the clear weight of the evidence. Finally, American fails to present any legitimate grounds for a new trial or an altered judgment, instead wrongly focusing on relitigating the settled matter of Mr. Plasencia's damages award. The Court should deny American's motion in full.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL
CASE NO.: 5:23-cv-05607-NW-SVK

Dated: February 2, 2026          Respectfully submitted,

                                 */s/ Darren P. Nicholson*
                                 Darren P. Nicholson (*pro hac vice*)
                                 dnicholson@burnscharest.com
                                 Hannah M. Crowe (*pro hac vice*)
                                 hcrowe@burnscharest.com
                                 Anna K. Benedict (*pro hac vice*)
                                 abenedict@burnscahrest.com
                                 **BURNS CHAREST LLP**
                                 900 Jackson Street, Suite 500
                                 Dallas, TX 75202
                                 Telephone: (469) 904-4550

                                 Sanjiv N. Singh (State Bar No. 193525)
                                 ssingh@sanjivnsingh.com
                                 **SANJIV N. SINGH, APLC**
                                 1700 South El Camino Real, Suite 503
                                 San Mateo, CA 94402
                                 Telephone: (650) 389-2255

                                 *Attorneys for Plaintiff*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL
CASE NO.: 5:23-cv-05607-NW-SVK

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 2, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.

Ivy L. Nowinski (State Bar No.: 268564)
Email: inowinski@condonlaw.com
CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030
Facsimile: (310) 557-1299

David J. Harrington (*pro hac vice*)
Email: dharrington@condonlaw.com
William deWolff (*pro hac vice*)
Email: wdewolff@condonlaw.com
CONDON & FORSYTH LLP
7 Times Square, 18th Floor
New York, New York 10036
Telephone: (212) 490-9100
Facsimile: (212) 370-4453

Attorneys for Defendant
AMERICAN AIRLINES, INC.

/s/ Darren P. Nicholson
Darren P. Nicholson

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL
CASE NO.: 5:23-cv-05607-NW-SVK