Ivy L. Nowinski (State Bar No.: 268564)
Email: inowinski@condonlaw.com
CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030
Facsimile:  (310) 557-1299

- and -

David J. Harrington (*Pro Hac Vice*)
Email: dharrington@condonlaw.com
CONDON & FORSYTH LLP
7 Times Square, 18th Floor
New York, New York 10036
Telephone: (212) 490-9100
Facsimile:  (212) 370-4453

- and -

Julian W. Poon
Patrick J. Fuster
Allison Roy Kawachi
Email: jpoon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

Attorneys for Defendant
AMERICAN AIRLINES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA MARIA MARCELA TAVANTZIS, as an individual, and as Legal Guardian of JESUS PLASENCIA, an incapacitated person,<br><br>   Plaintiff,<br><br>  vs<br><br>AMERICAN AIRLINES, INC.,<br><br>   Defendant. | Case No. 5:23-cv-05607-NW-SVK<br><br>**REPLY IN SUPPORT OF MOTION OF DEFENDANT AMERICAN AIRLINES, INC. FOR NEW TRIAL (FED. R. CIV. P. 59)**<br><br>Date:  April 22, 2026<br>Time:  9:00 a.m.<br>Place:  Courtroom 3 – 5th Floor |

1         Defendant American Airlines, Inc. ("American Airlines" or "American"), by and through

2    its attorneys of record, Condon & Forsyth LLP and its appellate counsel, Gibson, Dunn &

3    Crutcher LLP, respectfully submits this Reply in support of its motion for a new trial pursuant to

4    Rule 59 of the Federal Rules of Civil Procedure.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

REPLY IN SUPPORT OF MOTION FOR NEW TRIAL
(FED. R. CIV. P. 59)
CASE NO.: 5:23-cv-05607-NW-SVK

- 2 -

1

# TABLE OF CONTENTS

2

3    TABLE OF AUTHORITIES ...............................................................................ii-iv

4    I.    INTRODUCTION ....................................................................................1

5    II.   THE JURY INSTRUCTION WAS INCOMPLETE AND FAILED TO
          ACCURATELY INFORM THE JURY OF THE LEGAL MEANING OF
6         AN "ACCIDENT" UNDER THE CONVENTION .................................................2

7    III.  THE JURY'S VERDICT WAS AGAINST THE CLEAR WEIGHT OF THE
          EVIDENCE...............................................................................................7
8
          A.    The Incident at Boarding Was Not an "Accident" Within the Meaning
9                of the Convention, and Did Not Cause Mr. Plasencia's Injuries.................7

10         B.    The Incident Approximately 1.5 Hours Into the Flight Was Not an
                "Accident" Within the Meaning of the Convention, and Did Not Cause
11               Mr. Plasencia's Injuries ................................................................8

12   IV.   THE AWARD OF FUTURE DAMAGES IS INVALID ...................................10

13         A.    California Law Governs Available Damages Under the Montreal
                Convention............................................................................10
14
          B.    Under California Law, The Judgment May Not Award Plaintiff Damages
15               That Mr. Plasencia Did Not Sustain Or Incur Before His Death...............12

16   V.    CONCLUSION..........................................................................................14

17

18

19

20

21

22

23

24

25

26

27

28

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*In re Air Crash at Taipei, Taiwan, on October 31, 2000,*
5
    219 F. Supp. 2d 1069 (C.D. Cal. 2002) ......................................................................11

6

*Air France v. Saks,*
    470 U.S. 392 (1985)................................................................................................1, 3, 4, 7
7

*Blansett v. Cont'l Airlines, Inc.,*
8
    379 F.3d 177 (5th Cir. 2004) ..............................................................................................3, 4

9

*Cadlo v. Metalclad Insulation Corp.,*
    151 Cal. App. 4th 1311 (2007) ..........................................................................................13
10

*Caman v. Cont'l Airlines, Inc.,*
11
    455 F.3d 1087 (9th Cir. 2006) ....................................................................................3, 4, 5

12

*Clem v. Lomeli,*
13
    566 F.3d 1177 (9th Cir. 2009) ............................................................................................6

14

*Dang v. Cross,*
    422 F.3d 800 (9th Cir. 2005) .........................................................................................4, 6
15

*Doe v. Etihad Airways,*
16
    870 F.3d 406 (6th Cir. 2017) ............................................................................................11

17

*Engilis v. Monsanto Co.,*
18
    151 F.4th 1040 (9th Cir. 2025) .......................................................................................9, 10

19

*Erie R.R. Co. v. Tompkins,*
    304 U.S. 64 (1938).............................................................................................................14
20

*Gagnon v. United States,*
21
    193 U.S. 451 (1904)...........................................................................................................13

22

*Gantt v. City of Los Angeles,*
23
    717 F.3d 702 (9th Cir. 2013) ..............................................................................................5

24

*Ins. Co. of N.A. v. Fed. Express Corp.,*
    189 F.3d 914 (9th Cir. 1999) .......................................................................................11, 12
25

*Kamen v. Kemper Fin. Servs., Inc.,*
26
    500 U.S. 90 (1991).............................................................................................................11

27

*Kellogg v. Asbestos Corp. Ltd.,*
28
    41 Cal. App. 4th 1397 (1996) .....................................................................................12, 13

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

*Lopez v. Regents of Univ. of Cal.*,
    5 F. Supp. 3d 1106 (N.D. Cal. 2013) ........................................................................11

*Mitchell v. Overman*,
    103 U.S. 62 (1880) ........................................................................................................13

*Narayanan v. British Airways*,
    747 F.3d 1125 (9th Cir. 2014) .................................................................................11, 12

*Olympic Airways v. Husain*,
    540 U.S. 644 (2004) ....................................................................................................3, 4

*Pescatore v. Pan Am. World Airways, Inc.*,
    97 F.3d 1 (2d Cir. 1996) ..............................................................................................11

*Robertson v. Wegmann*,
    436 U.S. 584 (1978) ......................................................................................................11

*Rodriguez v. Ansett Australia Ltd.*,
    383 F.3d 914 (9th Cir. 2004) ........................................................................................4

*Sanders v. City of Newport*,
    657 F.3d 772 (9th Cir. 2011) ........................................................................................6

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*,
    251 F.3d 814 (9th Cir. 2001) ........................................................................................7

*Swinton v. Potomac Corp.*,
    270 F.3d 794 (9th Cir. 2001) ........................................................................................4

*Watson v. City of San Jose*,
    800 F.3d 1135 (9th Cir. 2015) ......................................................................................5

*Weatherford U.S., L.P. v. U.S. Dep't of Labor, Admin. Bd.*,
    68 F.4th 1030 (6th Cir. 2023) ......................................................................................11

*Weisgram v. Marley Co.*,
    528 U.S. 440 (2000) ......................................................................................................10

*Wilkerson v. Wheeler*,
    772 F.3d 834 (9th Cir. 2014) ........................................................................................6

*Williams v. The Pep Boys Manny Moe & Jack of Cal.*,
    27 Cal. App. 5th 225 (2018) ........................................................................................12

*Williamson v. Plant Insulation Co.*,
    23 Cal. App. 4th 1406 (1994) .................................................................................12, 13

*Zicherman v. Korean Air Lines Co.*,
    516 U.S. 217 (1996) .............................................................................................10, 11, 12

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1

**Statutes and Treaties**

The Convention for the Unification of Certain Rules for International Carriage by Air, done at
    Montreal on May 28, 1999, ICAO Doc. No. 9740 (entered into force on November 4, 2003),
    reprinted in Treaty Doc. 106-45, 1999 WL 33292734 (2000)
    ("Montreal Convention") ................................................................................................... *passim*

42 U.S.C. § 1988(a) ...................................................................................................................11

FED. R. CIV. P. 51(d)(1)(A)–(B) (West 2026) ............................................................................6

CAL. CIV. PROC. CODE § 377.34(a) (West 2026) ................................................................12, 13

CAL. CIV. PROC. CODE § 669 (West 2026) ...............................................................................12

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1

## I.    INTRODUCTION

If this Court does not grant American Airlines judgment as a matter of law, it should at least grant a new trial or amend the judgment by striking the awards of future damages. Plaintiff's Opposition cannot obscure three simple truths:  (1) the jury instruction on the definition of "accident" was incomplete and misleading, (2) the great weight of the evidence cuts against the verdict, and (3) Mr. Plasencia's pre-judgment death extinguished his successor's ability to recover future damages.  These errors should be corrected now—not later.

Even though the record could not, as a matter of law, support imposing liability on American, something explains why the jury might have been led so far astray:  the guidance the jurors received in Jury Instruction 29, concerning the meaning of the term "accident" under the Montreal Convention.  Applying text and common sense, the Supreme Court has recognized certain limits on what can qualify as an accident under the Convention—the plaintiff must prove at least "an *unexpected or unusual* event or happening that is *external* to the passenger."  *Air France v. Saks*, 470 U.S. 392, 395, 405-06 (1985) (emphasis added).  This key Convention term draws its meaning from a rich body of precedent explaining when an unexpected or unusual event is truly external to a passenger, such that the harm from a passenger's internal medical condition can fairly be attributed to the airline's actions or some other external force.  But Jury Instruction 29 cribbed the *Saks* standard while stripping it of context and exacerbated its misleading effect by providing *some* examples of what doesn't qualify as an "accident" while refusing to inform the jury of American's defense for why the supposed failures to follow policy alleged by Plaintiffs here, even if unexpected or unusual, were not external events under Supreme Court and Ninth Circuit precedent.  The prejudice also is plain:  The jury could not have reached its verdict if Instruction 29 had not given the jury a free hand to extend the definition of "accident" far beyond what the law allows.

Aside from the instructional error, a new trial is also warranted because the clear weight of the evidence cuts against the verdict here.  No "accident" kept Plaintiff and Mr. Plasencia on the aircraft before take-off—they spoke with Captain Occhino but turned down multiple offers to

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

deplane.   Nor did any "accident" occur when Flight Attendant ("FA") Eccles assisted Mr. Plasencia to the lavatory when Mr. Plasencia had trouble walking.   Instead, Plaintiff posits that the "accident" was the failure of others to infer that Mr. Plasencia's condition was more serious than he and Plaintiff were willing to tell others—and that, had American employees had the extraordinary foresight to detect a forthcoming stroke, he might have been an outlier case— not only among the 10% minority to receive a certain stroke treatment, but also among the 35% who benefit from the treatment (so 3.5% in total), even though the treatment hurts many patients with Mr. Plasencia's demographic profile.   Plaintiff piled one inferential leap upon another on the way to the jury's verdict here.   But when the dust settled, the clear weight of the evidence still favors American.

   If this Court does not grant a new trial, the law requires the judgment to be reduced by more than $7 million.   Mr. Plasencia died during an interlude between the jury's verdict and the Court's entry of judgment that was caused by one thing alone:   Plaintiff counsel's demand for more money (specifically, prejudgment interest).   Because the Convention does not address what damages may be recovered, ordinary choice-of-law principles fill that gap with state law.   The applicable California statute extinguished Plaintiff's ability to recover future damages on behalf of Mr. Plasencia when he died before judgment was entered.   And as American has explained elsewhere, this Court months later cannot properly salvage an invalid judgment by backdating a judgment that was already entered months after Mr. Plasencia's death as though it had been entered before his passing.

## II.   THE JURY INSTRUCTION WAS INCOMPLETE AND FAILED TO ACCURATELY INFORM THE JURY OF THE LEGAL MEANING OF AN "ACCIDENT" UNDER THE CONVENTION.

   This Court should grant a new trial because Jury Instruction 29 erroneously implied to the jury that *any* deviation from airline policy, procedure, or industry standards could constitute an "accident" under Article 17 of the Montreal Convention, contrary to binding Supreme Court and Ninth Circuit precedent, not to mention the plain meaning of the term "accident."   Because the jury instruction did not fairly and accurately explain what the legal meaning of an "accident" is,

- 2 -

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1    providing that instruction to the jury was an error of law that should be corrected at the earliest

2    opportunity.  That error prejudiced American Airlines, as evidenced by the jury's significant

3    damages award despite the lack of evidence that any purported policy violation was an *unusual

4    or unexpected* event <u>*external*</u> to Mr. Plasencia's internal health condition.  Plaintiff's Opposition

5    attacks American Airlines' *proposed* instruction but fails to justify the *given* instruction.

6        The Convention does not impose liability for any and all deviations from airline policies.

7    Instead, Article 17 hinges liability on an "accident."  Convention for the Unification of Certain

8    Rules for International Carriage by Air, S. Treaty Doc. 106-45, 1999 WL 33292734, at *33

9    (2000) ("Montreal Convention").  An "accident is "an unexpected or unusual event or happening

10   that is external to the passenger" and "caused the death or" "bodily injury of a passenger," not

11   "the passenger's own internal reaction to the usual, normal, and expected operation of the

12   aircraft."  *Air France v. Saks*, 470 U.S. 392, 395, 405-06 (1985).  That definition of "accident"

13   must be "flexibly applied after assessment of *all* the circumstances surrounding a passenger's

14   injuries."  *Id.* at 405 (emphasis added).  And that flexibility means that the focus must remain on

15   whether the act truly was *external* to the passenger <u>and</u> *unexpected or unusual*.  The Ninth

16   Circuit has thus "carefully abstained from creating a *per se* rule that any departure from an

17   industry standard constitutes an Article 17 "'accident.'"  *Caman v. Cont'l Airlines, Inc.*, 455 F.3d

18   1087, 1091 (9th Cir. 2006) (citing *Blansett v. Cont'l Airlines, Inc.*, 379 F.3d 177, 181-82 (5th

19   Cir. 2004)).  In fact, the Ninth Circuit expressly reserved the question "whether an air carrier's

20   departure from an industry standard or its own company policy" could alone qualify as an

21   "unexpected" event—or whether such deviations could even qualify as "appropriate

22   benchmarks" for purposes of defining what counts as an "accident" under the Convention.  *Id.* at

23   1091 & n.4; *see also Olympic Airways v. Husain*, 540 U.S. 644, 652–53 (2004) (assuming

24   without deciding that flight attendant's conduct "was unusual or unexpected in light of the

25   relevant industry standard or [the airline's] own company policy").

26       To the extent that a deviation from an airline policy, procedure, or industry standard

27   could constitute such an "accident," plaintiffs must show that the defendant air carrier's conduct

28

---

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1   "rose to the level of an *unexpected or unusual* event." *Rodriguez v. Ansett Australia Ltd*.*,* 383

2   F.3d 914, 919 (9th Cir. 2004) (passenger who developed deep vein thrombosis after the flight

3   failed to establish both a "departure from industry standard," and an "unusual or unexpected

4   event") (emphasis added).

5       Such an "event" must be an act of "commission (inaction that produces an effect, result

6   or consequence)" to be truly *external* to the passenger as *opposed* to "an act of *omission* (inaction

7   that idly allows an unfolding series of events to reach their natural conclusion). *Caman*, 455

8   F.3d at 1092 (emphasis added). For that reason, certain failures to act—even if a departure from

9   airline policy, procedure, or industry standards——do not qualify as a truly external "'event' as

10  that term is discussed in *Saks* and *Husain*.'" *Id.* (citing *Blansett*, 379 F.3d at 181-82). But acts

11  of *commission*, like "*Husain's* rejection of a direct plea for help' and effectively keeping a

12  passenger exposed to life-threatening external fumes on the plane, do. *Id.* The Ninth Circuit

13  also "carefully abstained from creating a *per se* rule that any departure from an industry standard

14  constitutes an Article 17 "'accident.'" *Id.* at 1091 (citing *Blansett v. Cont'l Airlines, Inc.*, 379

15  F.3d 177, 181 –82 (5th Cir. 2004)). To the extent a deviation from an airline policy could

16  constitute an "accident," plaintiffs must show that the defendant airline's conduct "rose to the

17  level of an unexpected or unusual event." *Rodriguez v. Ansett Australia Ltd.*, 383 F.3d 914, 919

18  (9th Cir. 2004) (noting courts have assumed "departure from industry standard" does not alone

19  result in an "unusual or unexpected event").

20      The instruction the Court gave (over American's objection) did not accurately reflect this

21  binding caselaw setting the outer limits of the meaning of an "accident" under the Convention.

22  Courts must evaluate the "jury instruction[s] . . . as a whole" to determine whether the substance

23  of the applicable law was . . . fairly and correctly covered." *Dang v. Cross*, 422 F.3d 800, 805

24  (9th Cir. 2005) (quoting *Swinton v. Potomac Corp.*, 270 F.3d 794, 802 (9th Cir. 2001)). As

25  relevant, Jury Instruction 29 stated:

26          Various events on a flight might be unexpected or unusual. The acts or omissions
            of airline personnel, including an employee[']s failure to follow airline policy or
27          procedure, may be an unexpected or unusual event or happening.

28

---

1    ECF No 240-8 at 5.  The instruction next highlighted two specific exceptions about what *does*

2    *not* qualify as an "unexpected or unusual event or happening":

> An event or happening is not unexpected or unusual when it is part of the usual,
> normal and expected operation of the aircraft.  An event is not an accident if it
> results solely from the state of the passenger's own health and is unconnected
> with the flight.

6    ECF No. 240-8 at 5.

7         Plaintiff highlights the "may" language in the instruction that a "failure to follow airline

8    policy or procedure[] *may* be an unexpected or unusual event or happening."  ECF No. 240-8 at

9    5; *see* ECF No. 250 at 5.  But no juror could reasonably be expected to glean from the word

10   "may" that it should ask the critical question mandated here by binding precedent and treaty

11   text—*when* a failure to follow airline policy qualifies as an unexpected or unusual act of

12   commission, rather than simply an "omission[]." ECF No. 240-8 at 5.  Again, an accident

13   requires an "event" beyond the mere failure to act in response to the "natural conclusion" of the

14   "passenger's own internal reaction" to the flight.  *Caman*, 455 F.3d at 1092.  Yet the instruction

15   plainly implied that *any* failure to follow policy or *any* deviation from a flight manual or

16   procedure could qualify as an accident (assuming that such deviation also caused plaintiff's

17   harm)—particularly because the next sentence juxtaposed the failure to act under a policy with

18   the "usual, normal and expected operation of the aircraft."  ECF No. 240-8 at 5.  And that has

19   never been the law, nor could it be, or it would impose impossible, airline-travel-halting, and

20   passenger-autonomy-overriding burdens and liabilities on airlines to effectively serve as the

21   guarantors of their passengers' health.

22        Plaintiff falters in suggesting that Jury Instruction 29 must "affirmatively misstate the

23   law" to amount to reversible legal error.  ECF No. 250 at 2.  That, too, has never been the law.

24   As the authorities cited by Plaintiff herself acknowledge, "jury instructions *must fairly and*

25   *adequately cover the issues presented*, must correctly state the law, and *must not be misleading.*"

26   *Id.* (emphasis added) (citing *Gantt v. City of Los Angeles*, 717 F.3d 702, 706 (9th Cir. 2013)).

27   Courts consistently grant new trials when (as here) instructions fail to "adequately convey" the

28   governing legal principles to the jury.  *Watson v. City of San Jose*, 800 F.3d 1135, 1141 (9th Cir.

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1  2015) (affirming grant of new trial); *see*, *e.g.*, *Wilkerson v. Wheeler*, 772 F.3d 834, 841 (9th Cir.

2  2014) (remanding for new trial after concluding that jury instructions were "misleading and

3  therefore error").  And unless the "error in instructing the jury" is harmless, it "requires

4  reversal." *Sanders v. City of Newport*, 657 F.3d 772, 781 (9th Cir. 2011) (quoting *Dang*, 422

5  F.3d at 811).

6  Tellingly, Plaintiff does not argue that Jury Instruction 29 comports with Supreme Court

7  or Ninth Circuit precedent—she can't.  Plaintiff claims that Circuit precedent did not *require* the

8  giving of American's proposed instruction.  ECF No. 250 at 4.  Yet Plaintiff overlooks the fact

9  that instructional error can arise either from "an instruction actually given" *or the "failure to give*

10 *an instruction*." Fed. R. Civ. P. 51(d)(1)(A)–(B) (emphasis added).  Either way, the Court erred

11 as a matter of law here.  That error never would have occurred to begin with had the Court used

12 American's proposed instruction, which clarified that "not every failure to act is an 'accident'"

13 and that "Plaintiffs must show, at minimum, that the airline's actions constitute a significant

14 deviation from recognized practices and procedures to meet the threshold of 'unusual or

15 unexpected.'" ECF No. 240-6 at 12.  American further objected to the Court's final instruction

16 at the pretrial conference, noting its concern "that a jury could potentially think that any

17 deviation from policy or procedure[] [or] industry standard can be an accident while the cases

18 definitely say that that is not so." ECF No. 240-7 at 42.

19 What Plaintiff says in her Opposition also confirms the undeniable prejudice to American

20 from the instruction the Court gave the jury.  "Prejudice is also generally more likely than not if

21 'nothing about th[e jury's] verdict indicates that the result would have been the same without the

22 error.'" *Sanders*, 657 F.3d at 781 (quoting *Clem v. Lomeli*, 566 F.3d 1177, 1183 (9th Cir.

23 2009)).  In attempting to show lack of harm, Plaintiff instead summarizes all the many purported

24 policy violations that occurred—any one of which a jury could have concluded amounted to an

25 accident even when those purported violations neither concerned an act of *commission* (as

26 opposed to omission) truly external to Mr. Plasencia, nor were unusual or unexpected.  ECF No.

27 243 at 5-8.  Plaintiff's own recitation of the evidence the jury heard at trial demonstrates that it

28

1    was more likely than not that the jury—if properly instructed—would not have reached the same

2    verdict it did here.

3    **III.    THE JURY'S VERDICT WAS AGAINST THE CLEAR WEIGHT OF THE
      EVIDENCE.**

5        A new trial is also warranted because the jury's finding that one or both of the incidents at

6    issue amount to an "accident" under the Convention "is contrary to the clear weight of the

7    evidence." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir.

8    2001).  Plaintiff criticizes American for imposing a "new standard" for "accident."  ECF No. 250

9    at 10.  But it is Plaintiff, not American, who seeks to stretch binding precedent past the breaking

10   point allowed for by any precedent interpreting Article 17, let alone the plain meaning of an

11   "accident."  Neither the incident pre-flight in Miami nor the incident approximately 1.5 hours

12   into the flight could be reasonably described as "an unexpected or unusual event or happening

13   that is external to the passenger," even under the most liberal possible reading of the Supreme

14   Court's construction of "accident."  *Saks*, 470 U.S. at 405.  And even if the evidence could

15   support finding an "accident" occurred here (it cannot), the clear weight of the evidence at trial

16   demonstrates that neither incident could have caused Mr. Plasencia's injuries.

17       **A.    The Incident at Boarding Was Not an "Accident" Within the Meaning of the
         Convention, and Did Not Cause Mr. Plasencia's Injuries.**

19       It is undisputed that shortly after boarding the plane, Mr. Plasencia dropped his phone,

20   had difficulty picking it up, and spoke in "gibberish."  ECF No. 240-1 at 233:7-13.  This episode

21   was brief, lasting just a few seconds.  *Id.* at 294:1-13.  There is nothing unusual or unexpected

22   about American's response—a flight attendant (FA Eccles) alerted the captain, who met and

23   spoke with Plaintiff and Mr. Plasencia.  The plane took off only after Mr. Plasencia refused

24   several offers to disembark, told the crew that he was "fine" or "okay," and insisted on

25   continuing with his travels.  ECF No. 240-1 at 231:2-5, 235:23-236:18, 240-3, 528:2-9, 652:11-
     22, 653:3-654:21.

27       Plaintiff contends that the disparity between what FA Eccles verbally reported to Captain

28   Occhino—that Mr. Plasencia was "disoriented"—and Eccles's written report—that Mr. Plasencia

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1  "block out," amounts to an "accident" because Occhino would have reacted differently had he

2  been informed that a passenger lost consciousness.  ECF No. 250 at 9.  But under this theory, the

3  communication between Eccles and other crew members could have amounted to an accident

4  only if Mr. Plasencia did indeed lose consciousness, or at least if any crew member had been told

5  that.  But even according to Plaintiff herself, Mr. Plasencia was awake and "speaking gibberish"

6  for the entirety of the seconds-long pre-flight episode.  There is therefore nothing even remotely

7  unusual or unexpected about Eccles's communications to Occhino—Eccles accurately conveyed

8  Mr. Plasencia's symptoms.  That communication prompted the crew to investigate further and

9  offer Plaintiff and Mr. Plasencia the opportunity to deplane—an opportunity they specifically

10  declined.  ECF No. 240-3 at 528:2-9, 652:11-22, 653:3-654:21.

11      Even if the crew's reaction to the boarding incident could be characterized as an accident,

12  concluding that it caused or worsened Mr. Plasencia's symptoms is against the clear weight of

13  the evidence.  Mr. Plasencia refused multiple offers to deplane and told the crew he was "fine" or

14  "okay."  *Id.*  In short, Mr. Plasencia could not be persuaded to abandon his travel plans and

15  would have been on an airplane somewhere over the Atlantic Ocean when his stroke occurred,

16  *regardless* of what information Eccles had shared with the other members of the crew.

17  **B.    The Incident Approximately 1.5 Hours Into the Flight Was Not an**
18  **"Accident" Within the Meaning of the Convention, and Did Not Cause**
       **Mr. Plasencia's Injuries.**

19      The other "accident" Plaintiff posits also cannot qualify as an "accident" within the

20  meaning of the Convention.  According to Plaintiff, Eccles's failure to communicate with other

21  crew members that Mr. Plasencia was having difficulty walking to the lavatory amounted to an

22  accident.  ECF No. 250 at 10–11.  But finding anything "unusual" or "unexpected" about

23  Eccles's actions is against the clear weight of the evidence, if not beyond what any reasonable

24  jury could have found.

25      It is undisputed that after Eccles observed Mr. Plasencia's difficulty walking, he checked

26  on Plaintiff and Mr. Plasencia every few minutes.  And it is undisputed that until about 1.5 hours

27  before landing—*seven hours* after take-off—Mr. Plasencia repeatedly communicated to Eccles

28

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1    that he was fine.  ECF No. 256-3 at 550:20-555:3.  Even assuming arguendo that Eccles's

2    actions could somehow be regarded as a deviation from airline policy, procedure, or industry

3    standards, they were far from "unusual" or "unexpected," let alone truly "*external*" to

4    Mr. Plasencia.

5          Even assuming arguendo there was sufficient evidence to show that Eccles's reaction to

6    Mr. Plasencia's difficulty walking could qualify as an "accident" under the Convention, the

7    evidence at trial didn't come anywhere close to showing that Mr. Plasencia had a greater-than-

8    50% chance of any better outcome.  All agree that the only possible treatment option that might

9    have resulted in a better outcome for Mr. Plasencia would have been the administration of tissue

10   plasminogen activator (tPA).  But the jury was presented with uncontroverted expert testimony

11   from *Plaintiff's* medical expert, Dr. Schim, that 90% of stroke patients do not receive tPA.  ECF

12   No. 240-2 at 313:16-314:4.  The jury also heard testimony from American's medical expert, Dr.

13   Suite, that only 35% of patients who are administered tPA have improved symptoms.  ECF No.

14   240-5 at 1033:20-1042:9; *see also* Trial Exhibit 112.  The only reasonable inference to draw

15   from this evidence is that tPA improves the outcomes of, at most, 3.5% of stroke patients, if that.

16   And here, the jury could have reasonably concluded that those odds were even lower for Mr.

17   Plasencia based on Dr. Suite's uncontroverted testimony about a clinical trial that linked tPA to

18   *worse* outcomes for Latino men of Mr. Plasencia's age who, like Mr. Plasencia, have

19   hypertension and diabetes.  ECF No. 240-5 at 1038:1-1040:19.

20         Plaintiff attempts to counter this case-dispositive evidence with testimony from Dr.

21   Schim, who testified that Mr. Plasencia "most probably" would have had an improved outcome

22   had he been administered tPA.  ECF No. 240-2 at 287:24-288:2. But no reasonable jury could

23   have reasonably credited Dr. Schim's testimony, based only on Schim's own personal

24   experience, over Dr. Suite's testimony, which was corroborated by empirical studies about

25   stroke, a "common disease for which there exists a substantial body of medical literature."

26   *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1054 (9th Cir. 2025).  At least the great weight of the

27   evidence would not have allowed a jury to have properly done so.  When compared to Suite's

28

1   testimony, Schim's "mere talismanic invocation of 'clinical experience'" does not pass muster.

2   *Id.*; *see also* ECF No. 145 at 7–10; ECF No. 158; ECF No. 166 (American's MIL VI and

3   supplemental briefing thereon).  This evidence warranted exclusion, should be excised from the

4   record, and thus warrants judgment as a matter of law for American, or at least a new trial.  *See*

5   *Weisgram v. Marley Co.*, 528 U.S. 440, 457 (2000).

6         Even if Schim's testimony is not excised from the record, the fact remains that he never

7   meaningfully called the studies Suite relied on into question.  Given this uncontroverted

8   evidence, concluding that there was a better-than-50% chance of an improved outcome for

9   Mr. Plasencia demonstrably runs counter to the clear weight of the evidence.

10  **IV.    THE AWARD OF FUTURE DAMAGES IS INVALID.**

11        If this Court does not grant a new trial as to liability, it should at least amend the

12  judgment to strike the invalid awards of future damages.  The Montreal Convention does not

13  prescribe any rules for available damages and thus acts as a pass-through for local law—here,

14  California law.  And by California statute, Mr. Plasencia's pre-judgment death extinguished his

15  successor's ability to recover future damages.

16        **A.    California Law Governs Available Damages Under the Montreal**
              **Convention.**

17

18        Plaintiff asks this Court to scrap California law and replace it with judge-made federal

19  common law.  ECF No. 250 at 12-13.  That request violates first principles undergirding the

20  Montreal Convention.  In *Zicherman v. Korean Air Lines Co.*, 516 U.S. 217 (1996), the plaintiff

21  there, as here, urged "courts to pursue uniformity in derogation of otherwise applicable law"

22  under materially identical provisions of the predecessor Warsaw Convention.  *Id.* at 231.  The

23  Supreme Court was unmoved:  The Convention does not "empower" federal courts "to develop

24  some common-law rule" and instead is "nothing more than a pass-through" for "the law that

25  would govern in the absence of the Warsaw Convention."  *Id.* at 229.  And the Court applied that

26  rule specifically in the context of damages—"what harm is legally cognizable"—and instructed

27  courts to apply "the forum's choice-of-law rules."  *Id.* at 231.

28        *Zicherman* routinely requires application of state law to "issues pertaining to

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1    compensatory damages."  *Narayanan v. British Airways*, 747 F.3d 1125, 1130 (9th Cir. 2014).

2    Although *Zicherman* involved a federal statute limiting damages (the Death on the High Seas

3    Act), federal courts should "*incorporate state law* as the federal rule of decision" to fill gaps in

4    the Montreal Convention where (as here) no federal statute applies.  *Pescatore v. Pan Am. World*

5    *Airways, Inc.*, 97 F.3d 1, 9 (2d Cir. 1996) (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S.

6    90, 98 (1991)); *accord, e.g.*, *Ins. Co. of N.A. v. Fed. Express Corp.*, 189 F.3d 914, 920-21 (9th

7    Cir. 1999).   The Second Circuit in *Pescatore*, for example, applied Ohio law to determine

8    whether a Warsaw Convention plaintiff could recover damages for loss of society.  97 F.3d at 14.

9    And in *Doe v. Etihad Airways*, 870 F.3d 406 (6th Cir. 2017), the Sixth Circuit determined the

10   available damages under Michigan law because the Montreal Convention "provides rules for

11   *liability* but looks to local law for the *measure* of damages."  *Id.* at 411; *see also, e.g.*, *In re Air*

12   *Crash at Taipei, Taiwan, on October 31, 2000*, 219 F. Supp. 2d 1069, 1069 (C.D. Cal. 2002)

13   (reasoning that "local law provides the substantive rule" for questions regarding entitlement to

14   compensatory damages).

15        Plaintiff misses the point in insisting that American cited "inapplicable § 1983 law."

16   ECF No. 250 at 13.   American never argued that 42 U.S.C. § 1988(a)—the provision that

17   incorporates state law in § 1983 actions—directly applies in Montreal Convention cases.

18   Instead, American cited cases like *Robertson v. Wegmann*, 436 U.S. 584 (1978), as an example

19   of how state-law survivorship rules often "fill the gaps" in other federal schemes.  ECF No. 243

20   at 19.  Plaintiff is the only one who has "misdirect[ed]" the Court in relying on cases applying

21   Title VI, Title IX, and the Surface Transportation Assistance Act while neglecting the choice-of-

22   law principles that the Supreme Court in *Zicherman* already adopted for Convention cases.  ECF

23   No. 250 at 13 (citing *Weatherford U.S., L.P. v. U.S. Dep't of Labor, Admin. Bd.*, 68 F.4th 1030,

24   1036 (6th Cir. 2023); *Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1119 (N.D. Cal.

25   2013)).

26        Plaintiff also does not (and cannot) argue that this Court can dispense with a choice-of-

27   law analysis on the theory that the Montreal Convention directly resolves whether claims for

28

1    future damages survive the plaintiff's death. *Narayanan*, 747 F.3d at 1129 (explaining that

2    *Zicherman* does not require a choice-of-law analysis when the Convention already "specif[ies]"

3    applicable rule). As the Supreme Court held in *Zicherman*, the Warsaw Convention does not

4    directly answer "who may recover and what compensatory damages are available to them"—

5    issues "left to domestic law." 516 U.S. at 225. The Montreal Convention does not resolve those

6    issues either. Montreal Convention arts. 17.1, 21. Because there is no survivorship provision in

7    the Montreal Convention, this Court is "duty-bound" to fill this gap by "apply[ing] the law of

8    California." *Ins. Co.*, 189 F.3d at 919.

9        **B.    Under California Law, The Judgment May Not Award Plaintiff Damages
          That Mr. Plasencia Did Not Sustain Or Incur Before His Death.**

10

11       California law limits a decedent's representative or successor in interest to recovering

12   damages "sustained or incurred before death," and—with the narrow exception of cases filed

13   between 2022 and 2026, prohibits the recovery of "damages for pain, suffering, or

14   disfigurement." Cal. Civ. Proc. Code § 377.34(a). The judgment that this Court entered on

15   December 22, 2025, impermissibly awards Plaintiffs $7,092,429.95 in damages that purport to

16   compensate Mr. Plasencia for harm that he did not sustain or incur before his death.

17       California courts have often recognized that a plaintiff's death extinguishes future

18   damages (and, in appropriate cases, recovery for pain and suffering). In *Kellogg v. Asbestos*

19   *Corp. Ltd.*, 41 Cal. App. 4th 1397 (1996), the plaintiff died between the submission of the case to

20   the court in a bench trial and the entry of judgment. *Id.* at 1402. The California Court of Appeal

21   held that California allowed the entry of judgment, notwithstanding the plaintiff's death. *Id.* at

22   1404 (citing Cal. Civ. Proc. Code § 669). But even though the trial court could enter a judgment,

23   "the *scope* of that judgment [could] not include damages for pain and suffering" under

24   § 377.34(a)—then codified at § 573(c)—because the plaintiff died before entry of judgment. *Id.*

25   at 1404-08. Similarly, in *Williamson v. Plant Insulation Co.*, 23 Cal. App. 4th 1406 (1994), the

26   plaintiff died during trial and the Court of Appeal held that the plaintiff's survivor could not

27   recover damages for pain and suffering. *Id.* at 1412, 1414; *see also Williams v. The Pep Boys*

28   *Manny Moe & Jack of Cal.*, 27 Cal. App. 5th 225, 238 (2018) ("In survival actions . . . [,]

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1    damages are narrowly limited to 'the loss or damages that the decedent sustained or incurred

2    before death' (§ 377.34) which by definition *excludes* future damages.").

3           The judgment here is legally invalid for the same reasons as the judgments in *Kellogg*

4    and *Williamson* were.   Mr. Plasencia died on October 11, 2025.   ECF No. 221.   This Court

5    entered judgment on December 22, 2025.   ECF No. 237.   Because October 11 is before

6    December 22, the judgment should have been "limited to the loss or damage that the decedent

7    sustained or incurred before death."   Cal. Civ. Proc. Code § 377.34(a).   The legal error in the

8    judgment really is as simple as that.

9           Plaintiff does not address either *Kellogg* or *Williamson* in her Opposition, even though

10   American has previously briefed both cases on multiple occasions.   ECF No. 233 at 11-12; ECF

11   No. 243 at 20-21; ECF No. 247 at 7.   In fact, Plaintiff does not even dispute that the existing

12   judgment is invalid.   ECF No. 250 at 14-15.   She argues only that this Court should attempt to fix

13   the invalid judgment by entering a *new* judgment that is *backdated* to October 10, the day before

14   Mr. Plasencia's death.   *Id.* at 14.   But as American has already explained in opposing Plaintiff's

15   motion to amend the judgment, that request fits into neither limited category in which a judgment

16   may be entered *nunc pro tunc*:   (1) to remedy delays attributable to the Court, *Mitchell v.*

17   *Overman*, 103 U.S. 62, 64-65 (1880) or (2) to correct "some clerical error or mistake, or the

18   omission of some entry which should have been made during the progress of the case, or by the

19   loss of some document originally filed therein," *Gagnon v. United States*, 193 U.S. 451, 456

20   (1904); *see* ECF No. 247 at 7-11.

21          Plaintiff's reliance on *Cadlo v. Metalclad Insulation Corp.*, 151 Cal. App. 4th 1311

22   (2007), backfires.   The trial court there entered judgment *nunc pro tunc* when the plaintiff died

23   shortly after he "submitted a proposed judgment to defendants approximately two days after the

24   jury's verdict."   *Id.* at 1324.   By contrast, Plaintiff made the strategic decision to file a motion to

25   add prejudgment interest to the judgment, which significantly delayed its entry.   ECF No. 247 at

26   10-11.   This delay is attributable to Plaintiff—not the Court—and therefore cannot justify back-

27   dating the judgment.   The procedural device of entering a judgment *nunc pro tunc* may not be

28

used to relieve plaintiffs from the consequences of tactical decisions their counsel made that, in hindsight, they now regret, nor a way to reach a result diametrically at odds with the result that would be reached by a state court applying the same body of (state) law.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  For that reason, the Court should reject Plaintiff's improper attempts to rewrite history here and evade the substantive limits on damages prescribed by California law.

## V.    CONCLUSION

The jury instruction on the definition of "accident"—which departed from text, common sense, and precedent—was incomplete and misleading, the great weight of the evidence cuts against the verdict, and Mr. Plasencia's pre-judgment death extinguished his successor's ability to recover future damages.  For these reasons, the Court should grant a new trial or amend the judgment by striking the award for future damages.

Dated: February 9, 2026                    CONDON & FORSYTH LLP


By: /s/ *Ivy L. Nowinski*
IVY L. NOWINSKI

-and-

DAVID J. HARRINGTON
CONDON & FORSYTH LLP
7 Times Square, 18th Floor
New York, NY 10036
Telephone: (212) 490-9100
Facsimile: (212) 370-4453

JULIAN W. POON
PATRICK J. FUSTER
ALLISON ROY KAWACHI
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

Attorneys for Defendant
AMERICAN AIRLINES, INC.

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030

**CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.

Sanjiv N. Singh
SANJIV N. SINGH, APLC
1700 South El Camino Real, Suite 503
San Mateo, California 94402
Telephone: (650) 389-2255
E-mail: ssingh@sanjivnsingh.com

Darren P. Nicholson
Hannah M. Crowe
BURNS CHARLES LLP
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
Email: dnicholson@burnscharest.com;
hcrowe@burnscharest.com

*Attorneys for Plaintiff*

/s/ *Ivy L. Nowinski*