# AMERICAN'S MOTION FOR NEW TRIAL OR TO AMEND THE JUDGMENT

*ANA MARIA MARCELA TAVANTZIS et al. v. AMERICAN AIRLINES, INC.*

CASE NO.: 5:23-cv-05607-NW-SVK

April 22, 2026

# Jury Instruction – 29

# The Montreal Convention — Accident

## JURY INSTRUCTION 29

You must decide whether Jesus Plasencia suffered a bodily injury as a result of an "accident" as defined by the Montreal Convention. Not every incident or occurrence during air travel qualifies as an "accident" under the Montreal Convention, even if a passenger is injured.

To establish American Airlines' liability under the Montreal Convention, Plaintiffs must prove by a preponderance of the evidence that:

(1) there was an "accident," meaning an unexpected or unusual event or happening;

(2) that was external to Plaintiffs, and,

(3) that "accident" caused Jesus Plasencia's injuries.

The definition of "accident" should be flexibly applied after assessing the context and circumstances of a passenger's injuries.

## JURY INSTRUCTION 29

Various events on a flight might be unexpected or unusual. The acts or omissions of airline personnel, including an employee's failure to follow airline policy or procedure, may be an unexpected or unusual event or happening. An event or happening is not "unexpected or unusual" when it is part of the usual, normal, and expected operation of the aircraft.

An event is not an "accident" if it results solely from the state of the passenger's own health and is unconnected with the flight. A passenger's worsening condition caused by their own internal reaction to normal flight operations is not external to the Plaintiff and is therefore not an "accident" under the Montreal Convention.

# JURY INSTRUCTION 29

Finally, for American Airlines to be liable to Plaintiffs, the "accident," (the unexpected or unusual event or happening, that was external to Plaintiffs) must have *caused* Jesus Plasencia's injuries. Under the Montreal Convention, the words "accident" and "injury" do not mean the same thing. Any injury is the product of a chain of causes. Plaintiffs have the burden of proving by a preponderance of the evidence that the "accident" was a link in the chain that caused Jesus Plasencia's injuries.

# JURY INSTRUCTION 29

Plaintiffs assert that, pursuant to the Montreal Convention, there were two "accidents" during their flight that caused Jesus Plasencia's injuries:

(1) American Airlines' failure to follow industry standards or American Airlines' written policies and procedures in its flight operations manual and inflight manual with respect to Plaintiffs prior to the departure of Flight 68 from Miami, Florida, to Madrid, Spain, on November 8, 2021; and,

(2) American Airlines' failure to follow industry standards or American Airlines' written policies and procedures in its flight operations manual and inflight manual with respect to Plaintiffs approximately an hour and a half into Flight 68 that departed from Miami, Florida, on November 8, 2021.

If Plaintiffs do not prove by a preponderance of the evidence that at least one of these two events was an "accident" that caused Jesus Plasencia's injuries, then you must find that American Airlines is not liable to Plaintiffs.

**AMERICAN'S PROPOSED LANGUAGE**

Instruction 2. Accident under the Montreal

Plaintiffs must prove by a preponderance of the evidence that the airline's conduct amounted to an "accident," as defined by Article 17 of the Montreal Convention. Questions of

An "accident" can include actions or failures to act by cabin crew or flight crew if those actions or failures to act were (1) unexpected or unusual and (2) caused the passenger's injury. However, not every failure to act is an "accident." An imperfect response by the flight or cabin crew to a passenger's medical emergency does not necessarily constitute an accident.[4] An airline's departure from its own policies or procedures or relevant industry standards is not, on its own, "unusual or unexpected;" Plaintiffs must show, at minimum, that the airline's actions constitute a significant deviation from recognized practices and procedures to meet the threshold of "unusual or unexpected."[5] If the failure simply allowed events to occur naturally, it is not an "accident." But if the failure itself caused Plaintiffs' harm, it may be considered an "accident."

[2] *Aziz v. Air India Ltd.*, 658 F. Supp. 2d 1144, 1148 (C.D. Cal. 2009), citing *Saks*.
[3] *Id.*
[4] *Id.* (citing *White v. Emirates Airlines, Inc.*, 493 F. App'x 526, 531 [5th Cir. 2012]); *see eg. Sook Jung Lee v. Korean Air Lines Co., LTD*, No. SACV 10-01709-JVS, 2012 WL 1076269, at *5 (C.D. Cal. Mar. 21, 2012); *see also Aziz v. Air India Ltd.*, 658 F. Supp. 2d 1144, 1146 (C.D. Cal. 2009).

12

**AMERICAN'S PROPOSED LANGUAGE**

nstruction 2. Accident under the Montreal

Plaintiffs must prove by a preponderance of the evidence that the airline's conduct amounted to an "accident," as defined by Article 17 of the Montreal Convention. Questions of negligence are not implicated or even relevant to the "accident" determination. Instead, the focus of the inquiry is on the nature of the event which caused the injury rather than the care taken by

[2] *Aziz v. Air India Ltd.*, 658 F. Supp. 2d 1144, 1148 (C.D. Cal. 2009), citing *Saks*.

[3] *Id.*

[4] *Id.* (citing *White v. Emirates Airlines, Inc.*, 493 F. App'x 526, 531 [5th Cir. 2012]); *see eg. Sook Jung Lee v. Korean Air Lines Co., LTD*, No. SACV 10-01709-JVS, 2012 WL 1076269, at *5 (C.D. Cal. Mar. 21, 2012); *see also Aziz v. Air India Ltd.*, 658 F. Supp. 2d 1144, 1146 (C.D. Cal. 2009).

12

However, not every failure to act is an "accident." An imperfect response by the flight or cabin crew to a passenger's medical emergency does not necessarily constitute an accident.[4] An airline's departure from its own policies or procedures or relevant industry standards is not, on its own,

[2] *Aziz v. Air India Ltd.*, 658 F. Supp. 2d 1144, 1148 (C.D. Cal. 2009), citing *Saks*.

[3] *Id.*

[4] *Id.* (citing *White v. Emirates Airlines, Inc.*, 493 F. App'x 526, 531 [5th Cir. 2012]); *see eg. Sook Jung Lee v. Korean Air Lines Co., LTD*, No. SACV 10-01709-JVS, 2012 WL 1076269, at *5 (C.D. Cal. Mar. 21, 2012); *see also Aziz v. Air India Ltd.*, 658 F. Supp. 2d 1144, 1146 (C.D. Cal. 2009).

12

## AMERICAN'S PROPOSED LANGUAGE

Our conclusion is consistent with the decisions of other circuits, which have reasoned that even a flight crew's **arguably imperfect response to a passenger's medical emergency does not necessarily constitute an Article 17 "accident."**
**\*\*\***
Even in the midst of an imminent landing, the flight crew here did far more in response to Wilson's incident than did many of the crews confronted with medical emergencies in the cases we have reviewed. **While <u>different circumstances might have required the Emirates crew to take further steps to assist Wilson,</u> under the circumstances presented in this case, the magistrate judge properly concluded that the crew's actions were not so unexpected or unusual as to constitute an "accident" under Article 17.**

*White v. Emirates Airlines, Inc.,* 493 F. App'x 526, 531-32 (5th Cir. 2012)

IT WOULD NOT HAVE MATTERED





*Accident 1*



**David Eccles**



**Anthony Occhino**



**Kelly Gambello**

*Accident 1*

Q: Would it be fair to say that it would be your *expectation*, as a pilot, that if you are going back to talk to these passengers who you were told were disoriented, that you would want to be told these things?

A: *It would have made a difference.*

Q: Okay.   Why would it have made a difference?

A:  Well, I mean, if I had known all that, we might have – I still would have come back, but *I might have gotten someone else involved* and asked more questions, because I didn't really ask questions like oh, I heard you blacked out, I heard you did this. I didn't ask any of that *because I didn't know any of that.*



**Anthony Occhino**

Trial Tr. vol. 4, 859:1-9; 860:4-15



*Accident 2*



**Treatment**

- Check other causes, e.g., diabetic coma that can cause unconsciousness
- Deliver Medical Assistance PA for physician or medical personnel on board
    - if physician available offer the IMK

- Notify captain of the need to contact the Physician on Call
- Contact the Physician on Call (POC)
- If person is unconscious, see AED Use
- If breathing stops, see Cardiopulmonary Resuscitation (CPR)
- If person is conscious, or after regaining consciousness:
    - place person in recovery position
    - administer oxygen, continue to monitor for changes in condition

- Do not give anything to eat or drink
- Do not confuse with alcohol or drug intoxication



Onboard Emergency Checklist
Effective Date: 01NOV21

0005

EXHIBIT
14

American Airlines Inflight Manual, Trial Exhibit 9

*Accident 2*

Q: Were you aware that Mr. Eccles observed Mr. Plasencia losing balance on his right side about an hour and a half into the flight?

A: No.

Q: Is that something you would have **expected** to be made aware of as the purser?

A: I would say **yes**.



**Kelly Gambello**

Trial Tr. vol. 2, 317:2-3

*Accident 2*

Q:  Were you informed of this incident approximately one and a half hours or thereafter into the flight?

A:  No.

. . .

Q:  [W]ere you aware at the time you were flying the plane, that the situation was so serious that they were checking on him every five minutes?

A:  No.  *He should have told me.*



**Anthony Occhino**

Exhibit 6, Occhino Dep. 140:12-15; 141:07-12

**Tavantzis v. American Airlines, Case No. 23-cv-05607**

**VERDICT FORM**

1. Did Plaintiffs prove by a preponderance of the evidence that either of the following was an accident (meaning an unexpected or unusual event or happening, that was external to Plaintiffs) that caused Jesus Plasencia's injuries?

   (A)   American Airlines' failure to follow industry standards or American Airlines' written policies and procedures in its flight operations manual and inflight manual with respect to Plaintiffs prior to the departure of Flight 68 from Miami, Florida, to Madrid, Spain, on November 8, 2021; or,

   (B)   American Airlines' failure to follow industry standards or American Airlines' written policies and procedures in its flight operations manual and inflight manual with respect to Plaintiffs approximately an hour and a half into Flight 68 that departed from Miami, Florida, on November 8, 2021.

YES ___✓___          NO _____

If you answered **YES, GO TO** Question 2.

If you answered **NO, STOP**. Answer no further questions. Date and sign the Verdict Form.

Tavantzis v. American Airlines, Case No. 23-cv-05607

**VERDICT FORM**

2. Did American Airlines prove by a preponderance of the evidence that Plaintiffs' negligence, or other wrongful act or omission, wholly caused Jesus Plasencia's injuries?

YES _____          NO \_\_✓\_\_\_\_

If you answered **NO, GO TO** Question 3.

If you answered **YES, STOP**. Answer no further questions. Date and sign the Verdict Form.

Tavantzis v. American Airlines, Case No. 23-cv-05607

**VERDICT FORM**

3. Did American Airlines prove by a preponderance of the evidence that Plaintiffs' negligence, or other wrongful act or omission, contributed to Jesus Plasencia's injuries?

YES ___✓___          NO _____

If you answered **YES, GO TO** Question 4.

If you answered **NO, GO TO** Question 5.

4. What percentage of responsibility for Jesus Plasencia's injuries do you assign to Plaintiffs? Your number must be more than 0 and less than 100%.

___27.5___ %

**GO TO** Question 5.

Tavantzis v. American Airlines, Case No. 23-cv-05607

**VERDICT FORM**

5. Did American Airlines prove by a preponderance of the evidence that Jesus Plasencia's injuries were not caused by the negligence, or other wrongful act or omission, of American Airlines, its servants or agents?

YES _____          NO ___✓____

**GO TO** Question 6.

6. Did American Airlines prove by a preponderance of the evidence that Jesus Plasencia's injuries were solely caused by the negligence or other wrongful act or omission of a third party, meaning someone other than Plaintiffs or American Airlines?

YES _____          NO ___✓____

**GO TO** Question 7.

Tavantzis v. American Airlines, Case No. 23-cv-05607

**VERDICT FORM**

7. What are Jesus Plasencia's damages?

| | |
|---|---|
| Past medical and caregiving expenses from the November 8, 2021 Flight to the date of the verdict: | $ 699,861.51 |
| Future medical and caregiving expenses from the date of the verdict: | $ 6,582,662 |
| Past mental anguish, suffering, and emotional distress from the November 8, 2021 Flight to the date of the verdict: | $ 800,000 |
| Future mental anguish, suffering, and emotional distress from the date of the verdict: | $ 3,200,000 |

8. What are Marcela Tavantzis's damages?

| | |
|---|---|
| Loss of Jesus Plasencia's love, companionship, comfort, care, assistance, protection, affection, society, moral support, and intimate relations from the November 8, 2021 Flight to the date of the verdict: | $ 400,000 |
| Loss of Jesus Plasencia's love, companionship, comfort, care, assistance, protection, affection, society, moral support, and intimate relations from the date of the verdict: | $ 1,600,000 |

Date and sign the Verdict Form.

Date: Sept. 17, 2025          Sign: _____
                                        Jury Foreperson